## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

INTERNATIONAL PAINTERS AND           )
ALLIED TRADES INDUSTRY               )
PENSION FUND, et al.,                )
                                     )
                Plaintiffs,          )      Case: 1:07-cv-01070
                                     )      Urbina, Ricardo M.
        v.                           )
                                     )      **ORAL HEARING REQUESTED**
THE PAINTING COMPANY,                )
                                     )
                Defendant.           )
                                     )
                                     )
_____)

## DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT OR, IN THE ALTERNATIVE, TRANSFER OR STAY THE PROCEEDINGS

Now comes Defendant, The Painting Company ("Painting Co."), by and through counsel, and moves to dismiss Plaintiffs' Amended Complaint under federal comity and the first to file rule or, in the alternative, transfer this action to the Southern District of Ohio pursuant to 28 U.S.C. § 1404(a) or stay this proceeding pending resolution of the first-filed action in the Southern District of Ohio. The grounds for this motion are more fully explained in the attached Memorandum in Support and evidentiary materials submitted therewith.

    Dated: September 27, 2007

                            Respectfully submitted

                            _____
                            Tess J. Ferrera, (D.C. 435469)
                            Thompson Hine, LLP
                            1920 N Street, N.W., Suite 800
                            Washington, D.C. 20036
                            (202) 973-2763 Direct line
                            (202) 478-2588 Fax

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND, et al., | ) ) ) ) | |
| Plaintiffs, | ) ) | Case: 1:07-cv-01070 |
| v. | ) ) | Urbina, Ricardo M. |
| THE PAINTING COMPANY, | ) ) | |
| Defendant. | ) ) ) | |
| _____ | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO
DISMISS AMENDED COMPLAINT OR, IN THE ALTERNATIVE,
TRANSFER OR STAY THE PROCEEDINGS**

## I.    STATEMENT OF FACTS

This dispute arises from alleged obligations contained in three pre-hire agreements (the "Independent Trade Agreements") The Painting Company ("Painting Co.") executed in order to perform painting work in the New York Metro Area, New Jersey, and Nevada. Plaintiff International Painters and Allied Trades Industry Pension Fund (the "Fund") claims to be a trust fund established under 29 U.S.C. § 186(c)(5) and a "multiemployer plan" within the meaning of 29 U.S.C. § 1002(37), (2) and (3). (Amd. Compl., ¶ 4.) The Fund further alleges that it maintains its principal place of business in the District of Columbia. (Amd. Compl., ¶ 4.) Plaintiff Gary J. Meyers alleges that he is the Fund's Administrator and fiduciary charged with collection responsibility on behalf of the Fund. (Amd. Compl., ¶ 5.)

The Painting Co. is a non-union employer engaged in the business of commercial painting. (Affidavit of Jeffrey Asman, ¶ 2, Ex. A.) Painting Co.'s headquarters and principal place of business is located in Plain City, Ohio (just outside of Columbus). (Affidavit of Jeffrey

Asman, ¶ 3.)  Painting Co. is a small, family-owned business.  (Affidavit of Jeffrey Asman, ¶ 4.)
Outside of its trade employees, Painting Co.'s workforce consists only of a President, Vice-
President, Office Manager, and a Receptionist/Secretary.  (Affidavit of Jeffrey Asman, ¶ 5.)  For
the year 2006, Painting Co.'s gross sales were approximately $5.8 Million.  (Affidavit of Jeffrey
Asman, ¶ 6.)

     **A.**     **Painting Co. enters into three separate pre-hire agreements with
local unions to perform painting work in New York, Nevada, and New
Jersey.**

     Abercrombie & Fitch Co. ("Abercrombie") selected Painting Co. to paint its corporate
headquarters in New Albany, Ohio.  (Affidavit of Jeffrey Asman, ¶ 7.)    Abercrombie was so
pleased with Painting Co.'s work that it asked Painting Co. to also do the painting work on its
three U.S. flagship stores.  (Affidavit of Jeffrey Asman, ¶ 8.)  Those stores are located in the
New York Metro Area, Nevada, and New Jersey.  (Affidavit of Jeffrey Asman, ¶ 9.) At the
request of Abercrombie and the General Contractor, Painting Co. agreed to use employees
represented by the local union (D.C. 9) to perform the painting work on the Abercrombie New
York Area flagship store and to make arrangements with D.C. 9 to that end.  (Affidavit of Jeffrey
Asman, ¶ 10.)  Painting Co. agreed to do so because it had no employees in the area to perform
the contemplated work.  (Affidavit of Jeffrey Asman, ¶ 11.)  Painting Co. understood that D.C. 9
requires employers to execute a standard form independent trade agreement.  (Affidavit of
Jeffrey Asman, ¶ 12.)

     Thus, from Painting Co.'s offices located in Ohio, Painting Co. President Jeffrey Asman
spoke with an officer/agent of D.C. 9 and Painting Co. subsequently executed the Independent
Trade Agreement, which became effective May 1, 2005.  (Affidavit of Jeffrey Asman, ¶ 13.)
(*See* Trade Agreement, Ex. B.)

D.C. 9, through its officers, agents and/or employees, made representations to Painting Co. to the effect that Painting Co. need only be concerned about payment of union wages and benefits for work done by Painting Co. employees within the geographic area covered by D.C. 9 (the New York Metro Area), that D.C. 9 understood that Painting Co. was otherwise a non-union employer, and that Painting Co's agreement with D.C. 9 would not alter Painting Co.'s non-union status outside the New York Metro Area. (Affidavit of Jeffrey Asman, ¶ 14.) Painting Co. entered into the Independent Trade Agreement in reliance upon D.C. 9's representations. (Affidavit of Jeffrey Asman, ¶ 15.)

At the request of Abercrombie and the General Contractor, Painting Co. agreed to use employees represented by the local union (D.C. 15) to perform the painting work on the Abercrombie Nevada flagship store and to make arrangements with D.C. 15 to that end. (Affidavit of David Asman, ¶ 2.) Painting Co. agreed to do so because it had no employees in the area to perform the contemplated work. (Affidavit of David Asman, ¶ 3.) Painting Co. understood that D.C. 15 requires employers to execute a standard form independent trade agreement. (Affidavit of David Asman, ¶ 4.) Thus, from Painting Co.'s office in Ohio, Painting Company Vice-President David Asman communicated with D.C. 15 and in or about September, 2006 Painting Co. ultimately entered into an Independent Trade Agreement with D.C. 15. (Affidavit of David Asman, ¶ 5.) (*See* Trade Agreement with D.C. 15, Exhibit D.)

D.C. 15, through its officers, agents and/or employees, made representations to Painting Co. to the effect that Painting Co. need only be concerned about payment of union wages and benefits for work done by Painting Co. employees within the geographic area covered by D.C. 15 (Nevada), that D.C. 15 understood that Painting Co. was otherwise a non-union employer, and that Painting Co's agreement with D.C. 15 would not alter Painting Co.'s non-union status

outside Nevada.    (Affidavit of David Asman, ¶ 6.)  Painting Co. entered into the Independent Trade Agreement in reliance upon D.C. 15's representations.  (Affidavit of David Asman, ¶ 7.)

At the request of Abercrombie and the General Contractor, Painting Co. agreed to use employees represented by the local union (D.C. 711) to perform the painting work on the Abercrombie New Jersey flagship store and to make arrangements with D.C. 711 to that end. (Affidavit of David Asman, ¶ 8.)  Painting Co. agreed to do so because it had no employees in the area to perform the contemplated work.  (Affidavit of David Asman, ¶ 9.)  Painting Co. understood that D.C. 711 requires employers to execute a standard form independent trade agreement.    (Affidavit of David Asman, ¶ 10.)    Thus, from Painting Co.'s office in Ohio, Painting Co. Vice-President David Asman communicated with D.C. 711 and Painting Co. ultimately entered into an Independent Trade Agreement with D.C. 711.    (Affidavit of David Asman, ¶ 11.) (*See* Trade Agreement with D.C. 711, Exhibit E.)

In addition to other terms and conditions, the Independent Trade Agreements with D.C. 9, D.C. 15, and D.C. 711 (the "Local Unions") obligated Painting Co. to make contributions towards certain benefit funds for work performed in each Local Union's jurisdiction during the term of each respective Agreement.    Painting Co. fulfilled all of its obligations under the Independent Trade Agreements with the Local Unions by making the required fund contributions for work performed in the New York Metro Area, Nevada, and New Jersey.  (Affidavit of Jeffrey Asman, ¶ 16.)  Since concluding its work for Abercrombie in the New York Metro Area, Nevada, and New Jersey, Painting Co. has performed no work and has employed no bargaining unit employees in those jurisdictions.  (Affidavit of Jeffrey Asman, ¶ 17.)  Moreover, other than for the work in the New York Metro Area, Nevada, and New Jersey on behalf of Abercrombie,

Painting Co. has not entered into any collective bargaining or independent trade agreements with any union.  (Affidavit of Jeffrey Asman, ¶ 18.)

> **B.**     **The Independent Trade Agreements contain clauses concerning out of jurisdiction work, the interpretation of which is at the heart of this dispute.**

Each Independent Trade Agreement contains a clause which purports to require the employer to, under certain circumstances, make wage and benefit payments for work performed outside the respective jurisdiction.  For instance, the relevant clause in the New York and Nevada Independent Trade Agreements each provide:

> The Employer party hereto shall, when engaged in work outside the geographic jurisdiction of the Union party to the Agreement, comply with all the lawful clauses of the Collective Bargaining Agreement in effect in said other geographic jurisdiction and executed by the Employers of this industry and the affiliated Local Unions in that jurisdiction, including but not limited to, the wages, hours, working conditions, fringe benefits and procedure for settlement of grievances set forth therein; provided, however, that as to employees employed by such Employer from within the geographic jurisdiction of the Union Party to this agreement and who are brought into an outside jurisdiction, such employees shall be entitled to receive the wages and conditions effective in either the home or outside jurisdiction, whichever are more favorable to such employees, and fringe benefit contributions on behalf of such employees shall be made solely to their home funds in accordance with their governing documents.

(Ex. B, at Article VI, § 1.) (Ex. D, at Article IV.)  With respect to the New Jersey Independent Trade Agreement, it provides:

> Any employer engaged in work outside the geographical jurisdiction of the union shall: ... (B) Comply with lawful clauses of the collective bargaining agreement in effect in the other jurisdiction including, but not limited to, wages, hours of work, working conditions, fringe benefits and procedure for settlement of grievances; provided, however, employees brought into an outside jurisdiction by employers shall be entitled to receive wages, fringe benefits, and conditions effective in either the home or outside jurisdiction, whichever are more favorable to such employees.

(Ex. E, at § 1.7.)

**C.    The Fund informs Painting Co. of its position that Painting Co. owes unpaid union pension fund contributions.**

Well after Painting Co. had fulfilled all obligations under each Independent Trade Agreement, the Fund notified Painting Co. of its position that the clauses quoted above require payment into union pension funds for worked performed by non-union employees in jurisdictions in which Painting Co. is not a party to a collective bargaining agreement or independent trade agreement with the local union. (Affidavit of Jeffrey Asman, ¶ 19.) Painting Co. never even contemplated such an interpretation or position, particularly in light of the representations made to Painting Co. by the Local Unions. (Affidavit of Jeffrey Asman, ¶ 20.) On May 30, 2007, Plaintiff, on its own behalf and on behalf of the Local Unions and other funds for whom it purports to be the "authorized collection agent," sent Painting Co. a letter demanding payment of $669,631.82 under the Independent Trade Agreements. Plaintiff asserted that Painting Co. owes $527,587.35 for past-due contributions to the Funds for work performed in jurisdictions other than D.C. 9's, D.C. 15's, and D.C. 711's and $142,044.47 for liquidated damages, interest, attorney's fees, and audit costs. (*See* May 30, 2007 Ltr., attached as Exhibit A to the Affidavit of Jeffrey Asman.)

Plaintiff claims that the Independent Trade Agreements require Painting Co. to abide by any obligation contained in countless unidentified collective bargaining agreements throughout the United States which Painting Co. is not a party to because it is otherwise a non-union contractor. Plaintiff further contends that the Independent Trade Agreements require Painting Co. to make contributions to the Funds for any work it performs throughout the United States whether or not Painting Co. uses members of the Local Unions or any other labor union for such work.

Painting Co. disagrees with the Plaintiff's interpretation of the Independent Trade Agreements. Based on the aforementioned representations made by the Local Unions and a reasonable reading of the out of jurisdiction work clauses, Painting Co. interprets these clauses as not requiring fund payments for work performed in other jurisdictions (like Ohio) in which Painting Co. is not a party to a collective bargaining agreement or independent trade agreement and Painting Co. used non-union employees.

Painting Co. also contends that to the extent these clauses can be interpreted otherwise (1) they violate federal labor laws, including but not limited to 29 U.S.C. § 158, and are therefore void and unenforceable; and (2) D.C. 9 and D.C. 15 are liable to make any required payments due to their material misrepresentations. Finally, Painting Co. has in many instances paid similar benefits to its non-union workforce in Ohio as required under projects incorporating state prevailing wage laws. (Affidavit of Jeffrey Asman, ¶ 21.) Therefore, even if the Fund's interpretation were correct, it seeks an illegal double recovery on work performed by many of Painting Co.'s Ohio employees. These contract interpretation questions must be answered before The Fund's collection action becomes ripe for adjudication.

**D.      Painting Co. sues the Fund, the Local Unions, and various other funds seeking a declaration of Painting Co.'s rights and obligations under the Independent Trade Agreement.**

On or about June 8, 2006, Painting Co. filed a Complaint for Declaratory Judgment in the United States District Court for the Southern District of Ohio against the Fund, the Local Unions, and four funds for which the Fund claims to be the collection agent (the "Ohio Action"). (*See* the June 8, 2007 Complaint, attached hereto as Exhibit F.) Painting Co. then filed its Amended Complaint on August 15, 2007. (*See* the August 15, 2007 Amended Complaint, attached hereto as Exhibit G.)

The Amended Complaint seeks a declaration that the Independent Trade Agreements do not require the payments to the Fund as alleged in its May 30, 2007 letter and, to the extent they are interpreted otherwise, they are void and/or unenforceable. (Ex. G., at ¶ 58). It also seeks an accounting of the parties' rights and obligations and, to the extent that the Independent Trade Agreements require any additional payments from Painting Co., an order requiring D.C. 9 and D.C. 15 to make such payments based on their fraudulent inducements. (Ex. G., at ¶¶ 58, 59).

Thus, the Ohio Action not only encompasses the subject matter of this lawsuit (the "D.C. Action"), but it also has as parties all of the Local Unions involved in the New York, Nevada, and New Jersey Independent Trade Agreements and addresses the underlying contract dispute. The presence of the Local Unions will afford an opportunity for the federal district court in Ohio to determine the contractual rights of all parties to this dispute. That determination is a condition precedent to Painting Co. having any liability to any party (including the Fund).

### E.    Six days after being sued in Ohio, the Fund files this collection action in the District of Columbia without joining the Local Unions or addressing the underlying contract dispute.

On June 14, 2007, six days after the Painting Co. filed the Ohio Action naming the Fund as a party defendant, the Fund filed this collection action. The original Complaint asserted subject matter jurisdiction under the section 502(e)(1) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(e)(1), and alleged standing under ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3). Defendant also asserted venue under ERISA section 502(e)(2), 29 U.S.C. § 1132(e)(2) and the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). The sole Plaintiff in the original Complaint was the International Painters and Allied Trades Industry Pension Fund (the "Pension Fund").

After Painting Co. moved to dismiss the Fund's ERISA claims because the Fund lacked standing and subject matter jurisdiction to bring them without including the Trustee as a party, on September 17, 2007 the Fund filed an amended complaint, adding the Trustee as a party plaintiff and dropping its contract claims and jurisdictional allegations under Section 301 of the Labor Management Relations Act.

The Amended Complaint states nothing about the underlying contract dispute between Painting Co. and the Local Unions. Rather, it brings a pure collection action without reference to the required condition precedent—Painting Co.'s contractual liability under the Independent Trade Agreements. The Fund has filed the D.C. Action despite the fact that Painting Co. has never done business here, the underlying contracts allegedly giving rise to the delinquent contribution obligations were not executed here, upon information and belief the contracting Unions are not located here, and the breach of contract, if any, could not have occurred here.

## II.     POINTS OF LAW AND AUTHORITY

Two federal court actions are now filed on matters that arise from the same transaction – Painting Co.'s alleged obligations under the Independent Trade Agreements. For reasons related to the orderly disposition of the dispute and for the purpose of preserving the litigants' and judicial resources, as well as the convenience of the witnesses, Defendant requests that the D.C. Action be dismissed, stayed or transferred.

### 1.     Under principles of federal comity, this Court should dismiss or stay any remaining claims in the D.C. Action.

On June 8, 2007, the Painting Co. filed the Ohio Action seeking a declaration of its rights and obligations under the Independent Trade Agreements. Six days later, The Fund filed the D.C. Action demanding payment for delinquent contributions. The D.C. Action should be dismissed under the first to file rule.

The first to file rule provides that, "[w]here two cases between the same parties on the same cause of action are commenced in two different Federal courts, the one which is commenced first is to be allowed to proceed to its conclusion first." *Washington Metro. Area Transit Auth. v. Ragonese,* 617 F.2d 828, 830 (D.C. Cir. 1980) (alteration in original) *quoting Speed Prods. Co. v. Tinnerman*, 171 F.2d 727, 729 (D.C. Cir. 1948). This Circuit has noted that equitable considerations should guide a court's discretion when deciding which case to allow to proceed. *Columbia Plaza Corp. v. Security Nati'l Bank,* 525 F.2d 620, 628 (D.C. Cir. 1975).

The first-filed Ohio Action seeks a ruling on the underlying contractual obligation. The D.C. Action was filed later and assumes that the contractual obligation exists. The Fund makes that assumption while on notice that the Painting Co. disputed the contractual obligation in the Ohio Action. It nevertheless attempts to by-pass the question of contractual obligation altogether.

The Ohio Action more completely addresses the issues underlying the alleged delinquent contributions and already includes all necessary parties (some of which are not present in the D.C. Action). As the first filed action and the action that more completely addresses the issues, the Ohio Action should be allowed to proceed on that basis. Therefore, in the Court's discretion and under the equitable considerations of the first to file rule, this Court should dismiss the D.C. Action and allow the Ohio Action to proceed.

**2.    Alternatively, the Court should transfer this case to the Southern District of Ohio pursuant to 28 U.S.C. § 1404(a).**

The crux of this case concerns the interpretation of, and representations made pursuant to, three separate Independent Trade Agreements. The parties to those agreements are located in Ohio, New York, Nevada, and New Jersey. Thus, Ohio and the states of the relevant Local Unions are the states connected to this dispute. Any breach of those Agreements must have

occurred in Ohio since the vast majority of payments allegedly owed was for work performed in Ohio and an Ohio Company has failed to make payments allegedly due.

Ohio is Painting Co.'s principal place of business.  (Affidavit of Jeffrey Asman, ¶ 22.) Painting Co.'s records are located in Ohio.  (Affidavit of Jeffrey Asman, ¶ 23.)  Painting Co's key witnesses concerning the contractual dispute reside in Ohio.  (Affidavit of Jeffrey Asman, ¶ 24.)   Upon information and belief, the Union witnesses concerning the contractual dispute reside in New York, New Jersey and Nevada.  Other than being the Fund's place of residence, this dispute has no connection to the District of Columbia.  Thus, Painting Co. respectfully submits that a transfer is warranted.

### a.    The legal standard governing a motion to transfer.

28 U.S.C. § 1404(a) gives federal courts broad discretion to transfer a civil action to another federal district court in which the case could have been brought for the convenience of parties and witnesses and in the interest of justice.  28 U.S.C. § 1404(a).  In deciding a motion for transfer of venue, courts "may consider matters outside the pleadings."  *Thomas v. Rehabilitation Servs. of Columbus, Inc.*, 45 F. Supp. 2d 1375, 1377 (M.D. Ga. 1999).

As this Court recently noted, 28 U.S.C. § 1404(a) "vests discretion in the district court to adjudicate motions to transfer according to [an] individualized, case-by-case consideration of convenience and fairness." *Barham v. UBS Fin. Servs.*, 2007 U.S. Dist. LEXIS 55908, *3 (D. D.C. Aug. 2, 2007).   The moving party bears the burden to justify transfer and demonstrate that (1) the case could have been originally brought in the transferee district and (2) "considerations of convenience and the interest of justice weigh in favor of transfer to that district." *Barham* at *3.  With respect to the second showing, this court recently stated that:

> the statute calls on the court to weigh a number of case-specific private and
> public-interest factors. The private-interest consideration include: (1) the

plaintiff's choice of forum, unless the balance of convenience is strongly in favor of the defendant; (2) the defendant's choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the ease of access to sources of proof. . . . The public-interest considerations include: (1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home."

*Barham*. at *4. (citations omitted). Application of *Barham* test to the facts of this dispute compels the conclusion that this case should be transferred to Ohio.

> **b.     This action could have been originally brought in the Southern District of Ohio.**

As noted earlier, the D.C. Action is strictly a collection action against Painting Co. allegedly for contributions owed to a pension fund and certain other fringe benefit plans. This action could have been brought in the Southern District of Ohio. ERISA's venue provision allows an action to be brought in a district where the "plan is administered, where the breach took place, or where any defendant resides or may be found, and process may be served in any other district where the a defendant resides or may be found." ERISA § 502(e)(2). ERISA's federal jurisdiction provision also allows actions by a participant, beneficiary, or fiduciary to obtain equitable and other relief available under ERISA § 409, 29 U.S.C. § 1109. Thus, Plaintiffs could have brought this case in the Southern District of Ohio. The Painting Co. resides in the Southern District of Ohio so that Court has venue and personal jurisdiction over it. Therefore, the action could have originally been brought in the Southern District of Ohio.

> **c.     The private interest factors favor a transfer.**

As noted above, the private-interest consideration includes: (1) the plaintiff's choice of forum, unless the balance of convenience is strongly in favor of the defendant; (2) the

defendant's choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the ease of access to sources of proof. *Barham*. at *3.

The Ohio forum will be more convenient for the parties and witnesses than the District of Columbia. Painting Co.'s primary witnesses, Jeffrey and David Asman, as well as any other necessary Company witnesses all reside in the Southern District of Ohio. (Affidavit of Jeffrey Asman, ¶ 25.) Upon Painting Co.'s information and belief, none of the Union witnesses reside in the District of Columbia. (Affidavit of Jeffrey Asman, ¶ 26.)

The Fund's claim did not arise in the District of Columbia, as the Independent Trade Agreements were executed, fulfilled, and allegedly breached elsewhere. Not only did this transaction and occurrence not arise in the District of Columbia, but Painting Co. also has not conducted any general business in the District of Columbia. (Affidavit of Jeffrey Asman, ¶ 27.) It is a small, family owned company operating primarily in Ohio. (Affidavit of Jeffrey Asman, ¶¶ 3, 4.) It has never performed or contracted to perform painting or any other type of work in the District of Columbia. (Affidavit of Jeffrey Asman, ¶ 28.) It does not solicit business in the District of Columbia. (Affidavit of Jeffrey Asman, ¶ 29.) It does not employ lobbyists or other agents to act on its behalf in the District of Columbia. (Affidavit of Jeffrey Asman, ¶ 30.)

All of Painting Co.'s records are located and stored in Ohio. (Affidavit of Jeffrey Asman, ¶ 31.) All time records, personnel files, and other documents reflecting the identity of potential beneficiaries and the amount of time they worked (necessary evidence in an action for delinquent contributions) are located in the Southern District of Ohio. (Affidavit of Jeffrey Asman, ¶ 32.) Additionally, all records and other necessary information required to determine any alleged

liability after January 1, 2007 are in Painting Co.'s exclusive possession and control in Ohio (*see* Amd. Compl., ¶ 18). Finally, all Painting Co. payroll records evidencing the amount and type of benefits already paid to Painting Co. employees are stored in the Southern District of Ohio. (Affidavit of Jeffrey Asman, ¶ 33.) All of this evidence is essential to a court's determination of liability and/or damages in this dispute. Thus, the dispute can be litigated more efficiently and expeditiously in Ohio.

This dispute also involves three Local Unions who have their principal places of business in New York, New Jersey, and Nevada respectively.[1] Upon Painting Co.'s information and belief, all or a substantial majority of the Local Union witnesses and any relevant documentary evidence are located in New York, Nevada, and New Jersey, not the District of Columbia. (Affidavit of Jeffrey Asman, ¶ 34.) Thus, it cannot be reasonably argued that the District of Columbia is a materially more convenient forum for the Local Unions than the Southern District of Ohio.

Painting Co. is unaware of any involvement by the Fund in the underlying contractual dispute. (Affidavit of Jeffrey Asman, ¶ 35.) Therefore, the Fund will simply not have a substantial number of witnesses or documentary evidence relevant to the fundamental dispute in this case: the validity of the contractual obligation. Additionally, when compared to the contract dispute, the Fund's collection claim is much less fact, document, and witness intensive than the claims identified in the Ohio Action. Any inconvenience to the Fund in litigating this dispute in Ohio pales in comparison to Painting Co.'s inconvenience in litigating this dispute in the District of Columbia. *See Ruppert v. Principal Life Ins. Co.*, 2007 U.S. Dist. LEXIS 49294 (S.D. Ill.

---

[1] The fact that the Local Unions are not current parties to the D.C. Action does not alter the fact that the Local Unions are intimately involved in this dispute.

2007) ("a plaintiff's choice of forum is given 'virtually no weight' when the forum lacks 'a significant relationship with the underlying dispute'.").

Finally, the Ohio Action was the first filed action raising the fundamental question of the contractual obligation. A related civil action between the same parties pending in the transferee court is a weighty factor recommending transfer. "Litigation of related claims in the same tribunal is favored . . . ." *Cambridge Filter Corp. v. International Filter Co.*, 548 F. Supp. 1308, 1310 (D. Nev. 1982). Painting Co. chose the Southern District of Ohio and filed first. This case can be entirely resolved in Ohio. Painting Co.'s choice of forum is therefore entitled to some weight in determining whether to transfer this action. *Barham.* at *4.

Other than being the principal place of business of the Fund, which is attempting to put the cart before the horse and collect payments prior to a determination as to underlying validity of the payment obligations, the District of Columbia has absolutely no connection to this dispute. Thus, the private interest favors a transfer to Ohio.

### d.    The public interest factors also favor a transfer.

The public-interest factors include: (1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home." *Barham.* at *4. Because this lawsuit concerns federal law, the Southern District of Ohio is presumed to be as competent as this Court. *Barham.* at *4.

As to the relative docket congestion, the Court should have no reason to believe that the Southern District of Ohio's docket cannot accommodate this case. *Barham.* at *13. In fact, there is already a case pending in the Southern District of Ohio concerning this dispute. Thus, denying

a transfer will not relieve any docket congestion in the Southern District of Ohio. Rather, it will only serve to further congest this Court's docket.

The Southern District of Ohio has an interest in deciding this controversy. Upon information and belief, none of the relevant parties to the underlying contractual dispute are residents of the District of Columbia. (Affidavit of Jeffrey Asman, ¶ 36.) The alleged fund payments due concern work performed primarily in Ohio by the employees of an Ohio company. All of those facts point to Ohio's strong interest in adjudicating this dispute. Finally, as in *Barham*, the public "interests of justice are better served when a case is transferred to the district where related actions are pending." *Barham*. at *14.

Federal Courts also have utilized 28 U.S.C. § 1404(a) to transfer ERISA actions. For instance, in *Lupiani v. Wal-Mart Stores, Inc.*, 2003 U.S. Dist. LEXIS 18804 (N.D. Cal. 2003), plaintiff employees sued defendants, arguing that amendments to certain benefit plans violated ERISA. Defendants moved to transfer the action to Arkansas Federal Court. Because each defendant and every primary witness identified by the defendants resided in Arkansas, the Court determined that the convenience of the parties and witnesses favored a transfer to Arkansas. *Id.* at *6-*9. In analyzing the interests of justice, the Court found the convenience of plaintiffs' counsel should not be a factor in its decision and that plaintiffs' choice of forum "is entitled to only minimal consideration" because "the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter." *Id.* at *11.

The plaintiffs' final argument in opposition to the transfer motion in *Lupiani* was "that the venue choice of ERISA participants and beneficiaries commands special deference." *Id.* at *12. The Court was not convinced and ordered that the case be transferred to Arkansas, reasoning "there is little evidence before the Court that counsels against transferring this action,

other than Plaintiffs' decision to file in this Court. Plaintiffs' choice alone simply does not outweigh the factors that strongly weigh in favor of transferring their cases." *Id.* at *14.

Thus, because the Painting Co. has met all requirements for a transfer and a transfer will be more convenient for the parties and witnesses and in the public interest, the Court should transfer this case to the Southern District of Ohio.

> **3.  Even if the Court declines to dismiss or transfer this case, it should enter an order staying the case pending the Southern District of Ohio's decision on the contractual dispute.**

The Fund's Complaint does not specify on whose behalf the contributions are delinquent, it does not identify the collective bargaining agreements allegedly giving rise to the obligations, it does not break out the amounts to which the Fund and the so-called "Ancillary Funds" are allegedly entitled, and it does not identify the rates upon which the Fund's calculations are based. In short, the D.C. Action is nothing more than a demand for money under ERISA § 515.

ERISA § 515, however, requires contributions only in accordance with the terms and conditions of a labor agreement. *Trustees of the Bricklayers and Allied Craftworkers, Local 5, v. Driscoll*, 165 F.Supp.2d 502, 509-10 (S.D.N.Y. 2001). It provides that

> [e]very employer who is obligated to make contributions to a multi-
> employer plan under the terms of the plan or under that terms of a
> collectively bargained agreement shall to the extent not inconsistent with
> law, make such contributions in accordance with the terms and conditions
> of such plan or such agreement.

ERISA § 515. It therefore follows that until a court of competent jurisdiction rules that Painting Co. has a not met its contractual obligations under the Independent Trade Agreements, the D.C. Action for collection is premature.

As this Court has recognized, federal district courts have broad discretion to stay a proceeding pending the resolution of proceedings elsewhere.

> A trial court has broad discretion to stay all proceedings in an action pending the resolution of independent proceedings elsewhere … "The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Indeed, "[a] trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case."

*Hisler v. Gallaudet Univ.*, 344 F. Supp. 2d 29, 35 (D. D.C. 2004) (citations omitted) *see also Barcardi & Co. v. Empresa Cubana Exportadora De Alimentos Y Productos Varios, Inc.*, 2007 U.S. Dist. LEXIS 37716 (D. D.C. 2007).

A stay will conserve judicial resources because the Fund's collection action is premised upon an underlying contractual obligation that has not been established.  If this case is stayed and the Ohio Court ultimately finds contractual liability, then a stay will allow this Court to rule upon and oversee the collection component of this dispute.  Conversely, if the Ohio Court ultimately finds no contractual liability, then this action would be moot and a stay would have prevented the Court and the litigants from wasting their time in the interim.

Accordingly, while Painting Co. respectfully submits that a dismissal or transfer is warranted, if the Court disagrees, it should at the very least exercise its discretion to stay this action pending resolution of the Ohio Action on the contract liability component of this dispute.

### III.    CONCLUSION

For the foregoing reasons, Painting Co. respectfully requests that this Court dismiss this case, transfer this proceeding to the Southern District of Ohio, or stay this proceeding pending the outcome of the Ohio Action.

Respectfully submitted

Tess J. Ferrera, (D.C. 435469)
Thompson Hine LLP
1920 N Street, N.W., Suite 800
Washington, D.C. 20036
(202) 973-2763 Direct line
(202) 478-2588 Fax

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND | ) ) ) | |
| Plaintiff, | ) ) | Case: 1:07-cv-01070 Urbina, Ricardo M. |
| v. | ) ) | |
| THE PAINTING COMPANY, Defendant. | ) ) ) ) ) | |

**AFFIDAVIT OF JEFFREY ASMAN**

| | |
|---|---|
| **STATE OF OHIO** | ) ) |
| **COUNTY OF MADISON** | ) |

Jeffrey Asman, being first duly cautioned and sworn, and based on his own personal knowledge, states as follows:

1.     I am the President of The Painting Company ("Painting Co.") and I have personal knowledge regarding the subject matter of this dispute.

2.     Painting Co. is a non-union employer engaged in the business of commercial painting.

3.     Painting Co.'s headquarters and principal place of business is located in Plain City, Ohio (just outside of Columbus).

4.     Painting Co. is a small, family-owned business.

5.     Outside of its trade employees, Painting Co.'s workforce consists only of a President, Vice-President, Office Manager, and a Receptionist/Secretary.

6.     For the year 2006, Painting Co.'s gross sales were approximately $5.8 Million.

1

7.    Abercrombie & Fitch Co. ("Abercrombie") selected Painting Co. to paint its corporate headquarters in New Albany, Ohio.

8.    Abercrombie was so pleased with Painting Co.'s work that it asked Painting Co. to also do the painting work on its three U.S. flagship stores.

9.    Abercrombie's three U.S. flagship stores are located in the New York Metro Area, Nevada, and New Jersey.

10.    At the request of Abercrombie and the General Contractor, Painting Co. agreed to use employees represented by the local union (D.C. 9) to perform the painting work on the Abercrombie New York Area flagship store and to make arrangements with D.C. 9 to that end.

11.    Painting Co. agreed to do so because had it no employees in the area to perform the contemplated work.

12.    Painting Co. understood that D.C. 9 requires employers to execute a standard form independent trade agreement.

13.    From Painting Co.'s offices located in Ohio, I spoke with an officer/agent of D.C. 9 and Painting Co. subsequently executed the Independent Trade Agreement, which became effective May 1, 2005.

14.    D.C. 9, through its officers, agents and/or employees, made representations to Painting Co. to the effect that Painting Co. need only be concerned about payment of union wages and benefits for work done by Painting Co. employees within the geographic area covered by D.C. 9 (the New York Metro Area), that D.C. 9 understood that Painting Co. was otherwise a non-union employer, and that Painting Co's agreement with D.C. 9 would not alter Painting Co.'s non-union status outside the New York Metro Area.

2

15.     Painting Co. entered into the Independent Trade Agreement in reliance upon D.C. 9's representations.

16.     Painting Co. fulfilled all of its obligations under the Independent Trade Agreements with District Counsels 9, 15, and 771 (the "Local Unions") by making the required fund contributions for work performed in the New York Metro Area, Nevada, and New Jersey.

17.     Since concluding its work for Abercrombie in the New York Metro Area, Nevada, and New Jersey, Painting Co. has performed no work and has employed no bargaining unit employees in those jurisdictions.

18.     Other than for the work in the New York Metro Area, Nevada, and New Jersey on behalf of Abercrombie, Painting Co. has not entered into any collective bargaining or independent trade agreements with any union.

19.     Well after Painting Co. had fulfilled all obligations under each Independent Trade Agreement, Plaintiff notified Painting Co. of its position that the out of jurisdiction work clauses require additional payment. (*See* May 30, 2007 Ltr., attached hereto as Exhibit A.)

20.     Painting Co. never even contemplated such an interpretation or position, particularly in light of the representations made to Painting Co. by the Local Unions.

21.     Painting Co. has in many instances paid similar benefits to those sought by the Plaintiff to its non-union workforce in Ohio as required under projects incorporating state prevailing wage laws.

22. Ohio is Painting Co.'s principal place of business.

23. Painting Co.'s records are located in Ohio.

24. Painting Co's key witnesses concerning the contractual dispute reside in Ohio.

25. Painting Co.'s primary witnesses, Jeffrey and David Asman, as well as any other necessary Company witnesses all reside in Ohio.

26. Painting Co. is unaware of any Local Union witness involved in negotiating the Independent Trade Agreements who resides in the District of Columbia.

27. Painting Co. also has not conducted any general business in the District of Columbia.

28. Painting Co. has never performed or contracted to perform painting or any other type of work in the District of Columbia.

29. Painting Co. does not solicit business in the District of Columbia.

30. Painting Co. does not employ lobbyists or other agents to act on its behalf in the District of Columbia.

31. All of Painting Co.'s records are located and stored in Ohio.

32. All time records, personnel files, and other documents reflecting the identity of potential beneficiaries and the amount of time they worked are located in Ohio.

33. All Painting Co. payroll records evidencing the amount and type of benefits already paid to Painting Co. employees are stored in Ohio.

34. To the best of my knowledge and based upon my information and belief, all or a substantial majority of the Local Union witnesses and any relevant documentary evidence from the Local Unions would be located in New York, Nevada, and New Jersey, and not the District of Columbia.

4

35.    I am unaware of any involvement by Plaintiff in the underlying contractual dispute.

36.    I am aware of no relevant party to the underlying contractual dispute who is a resident of the District of Columbia.

FURTHER AFFIANT SAYETH NAUGHT.

Jeffrey Asman

Sworn to and subscribed before me, this _10_ day of September, 2007.

554597.1

NOTARIAL SEAL
Notary Public
STATE OF OHIO

SANDRA R. CONTORNO-MILNE
Notary Public, State of Ohio
My Commission Expires 12-17-07

5

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND <br>         Plaintiff, <br><br>     v. <br><br> THE PAINTING COMPANY, <br>        Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )    Case: 1:07-cv-01070 <br> Urbina, Ricardo M. |

**AFFIDAVIT OF DAVID ASMAN**

| | |
|---|---|
| **STATE OF OHIO** | ) <br> ) |
| **COUNTY OF MADISON** | ) |

David Asman, being first duly cautioned and sworn, and based on his own personal knowledge, states as follows:

    1.     I am the Vice-President of The Painting Company ("Painting Co.") and I have personal knowledge regarding the subject matter of this dispute.

    2.     At the request of Abercrombie & Fitch Co. ("Abercrombie") and the General Contractor, Painting Co. agreed to use employees represented by the local union (D.C. 15) to perform the painting work on the Abercrombie Nevada flagship store and to make arrangements with D.C. 15 to that end.

    3.     Painting Co. agreed to do so because had it no employees in the area to perform the contemplated work.

    4.     Painting Co. understood that D.C. 15 requires employers to execute a standard form independent trade agreement.

5.      From Painting Co.'s office in Ohio, I communicated with D.C. 15 and in or about September, 2006 Painting Co. ultimately entered into an Independent Trade Agreement with D.C. 15.

6.      D.C. 15, through its officers, agents and/or employees, made representations to Painting Co. to the effect that Painting Co. need only be concerned about payment of union wages and benefits for work done by Painting Co. employees within the geographic area covered by D.C. 15 (Nevada), that D.C. 15 understood that Painting Co. was otherwise a non-union employer, and that Painting Co's agreement with D.C. 15 would not alter Painting Co.'s non-union status outside Nevada.

7.      Painting Co. entered into the Independent Trade Agreement in reliance upon D.C. 15's representations.

8.      At the request of Abercrombie and the General Contractor, Painting Co. agreed to use employees represented by the local union (D.C. 711) to perform the painting work on the Abercrombie New Jersey flagship store and to make arrangements with D.C. 711 to that end.

9.      Painting Co. agreed to do so because had it no employees in the area to perform the contemplated work.

10.     Painting Co. understood that D.C. 711 requires employers to execute a standard form independent trade agreement.

11.     From Painting Co.'s office in Ohio, I communicated with D.C. 711 and Painting Co. ultimately entered into an Independent Trade Agreement with D.C. 711.

FURTHER AFFIANT SAYETH NAUGHT.

David Asman

Sworn to and subscribed before me, this _10_ day of September, 2007.

Notary Public

SANDRA R. CONTORNO-MILNE
Notary Public, State of Ohio
My Commission Expires 12-17-07

554598.1

3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

INTERNATIONAL PAINTERS AND )
ALLIED TRADES INDUSTRY )
PENSION FUND )
        Plaintiff, )
                            )
     v. )
                            )
THE PAINTING COMPANY, )
        Defendant. )
                            )
_____ )

Case: 1:07-cv-01070
Urbina, Ricardo M.

**PROPOSED ORDER**

     This matter is before the Court on Defendant's, The Painting Company's Motion to Dismiss Amended Complaint or, in the Alternative, Transfer or Stay the Proceedings under principles of federal comity and/or 28 U.S.C. § 1404.

     **FOR GOOD CAUSE SHOWN,** Defendant's Motion is granted and this case is transferred to the Southern District of Ohio Defendant has filed a case raising factual issues with a nexus to the case filed in this Court..

     SIGNED this _____ day of _____, 2007

                                  _____
                                  Judge Ricardo Urbina