**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

INTERNATIONAL PAINTERS AND ALLIED          )
TRADES INDUSTRY PENSION FUND, *et al.*      )
                                           )
                          Plaintiffs,      )          CIVIL ACTION
              v.                           )          NO. 07-01070(RMU)
                                           )
THE PAINTING COMPANY                       )
                                           )
                          Defendant.       )


**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S**
**MOTION TO DISMISS AMENDED COMPLAINT OR, IN THE ALTERNATIVE,**
**TRANSFER OR STAY THE PROCEEDINGS**


JENNINGS SIGMOND, P.C.
RICHARD B. SIGMOND
Bar No. 446969
SANFORD G. ROSENTHAL
Bar No. 478737
ELIZABETH A. COLEMAN*
The Penn Mutual Towers, 16th Floor
510 Walnut Street, Independence Square
Philadelphia, PA 19106-3683
(215) 351-0609/0611/0644
Attorneys for the Fund


*Application for Pro Hac Admission of Elizabeth A. Coleman shall be made at the appropriate time.

## TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES CITED ............................................................................ ii

INTRODUCTION ......................................................................................................... 1

STATEMENT OF FACTS............................................................................................. 2

ARGUMENT.................................................................................................................. 5

I.     Defendant's Motion to Dismiss Should be Denied Because the First To File Rule Has Been Rejected Where the First Filed Action Was Anticipatory in Nature And Was a Tactical Maneuver to Obtain a More Favorable Forum ............................................................................................ 5

II.    The Fund's Choice of Venue is Entitled to Deference Because the Venue Provision Of ERISA Reflects a Congressional Intent That Pension Fund Collection Efforts Be Efficient For the Fund ...................................... 8

III.   Defendant Has Not Bourne Its Burden of Showing That Transfer of Venue is Warranted................................................................................ 11

       a.    Convenience Of The Parties................................................. 13

       b.    Convenience Of The Witnesses.............................................. 14

       c.    The Interest of Justice .......................................................... 17

IV.   A Stay Would Only Serve to Postpone An Inevitable Resolution of This Case ......................................................................................... 19

CONCLUSION ........................................................................................................... 20

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Bausch & Lomb Inc. v. Alcide Corp.*, 684 F.Supp. 1155 (W.D.N.Y. 1987).................................5

*\*Board of Trustees, Sheet Metal Workers' National Fund v. Baylor Heating & Air Conditioning, Inc.*, 702 F.Supp. 1253 (E.D. Va 1988)..........................................................11, 13, 14, 18, 19

*Carpenters Amended & Restated Health Benefit Fund v. John W. Ryan Const. Co.*, 767 F.2d 1170 (5th Cir. 1985) ................................................................................9

*Central Pa. Teamsters Pension Fund v. McCormick Dray*, 85 F3d 1098 (3rd Cir. 1996).............17

*Charles Schwab & Co., Inc. v. Duffy*, 1998 WL 879659 (N.D.Cal. Dec. 8, 1998).. .......................5

*Chicago Insurance Co. v. Holzer*, 2000 WL 777907 (S.D.N.Y.2000).............................................5

*Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) Pension Fund v. Brotherhood Labor Leasing*, No. 93 C 1803, 1993 WL 385133, (N.D. Ill. Sept. 27, 1993)...10

*Chung v. Chrysler Corp.*, 903 F.Supp. 106 (D.D.C. 1995) ...........................................................12

*Columbia Plaza Corp. v. Security National Bank*, 525 F.2d 620 (D.C.C. 1975).…........................8

*Consolidated Rail Corp. v. Grand Truck Western R. Co.*, 592 F.Supp. 562 (C.D.Pa.1984)...........6

*Daily Express, Inc. v. Northern Neck Transfer Corp.*, 483 F.Supp. 916 (M.D. Pa. 1979)….........17

*Dugan v. M & W Dozing & Trucking, Inc.*, 727 F. Supp. 417 (N.D. Ill 1989)..............................10

*Employees Savings Plan of Mobil Oil Corp. v. Vickery*, 99 F.R.D. 138 (S.D.N.Y. 1983)...........9

*FMC Corp. v. AMVAC Chemical Corp.*, 379 F.Supp.2d 733 (E.D.Pa. 2005).................................5

*Factors, Etc. v. Pro Arts, Inc.*, 579 F.2d 215 (2d Cir. 1978) .........................................................5

*\*Federation Internatioale De Football Ass'n v. Nike Inc.*, 285  F.Supp.2d. 64 (D.D.C. 2003) ....................................................................................................................5, 6, 7

*\*Flynn et al. v. Veazey Construction Corp.*, 310 F. Supp. 2d 186 (D.D.C. 2004)............11, 12, 16

*Hanson PLC v. Metro-Goldwyn-Mayer, Inc.*, 932 F.Supp. 104 (S.D.N.Y. 1996)……………....…5

*International Brotherhood of Painters v. Johnson Brothers Corp.,* No. 94-0806, 1994 WL 808069, (D.D.C. Aug. 18, 1994)......................................................................................10, 18

*International Brotherhood of Painters and Allied Trades Union v. Best Painting And Sandblasting Co., Inc.,* 621 F. Supp. 906 (D.D.C. 1985)..........................9, 12, 15, 16, 19

*International Painters and Allied Trades Industry Pension Fund v. Tri-State Interiors, Inc.,* 357 F. Supp 2d 54 (D.D.C. 2004)..............................................................10, 12, 15, 16, 18

*Kansas City Bricklayers Employees Pension Fund v. Jerry Bennett Masonry Contractor, Inc.,* 703 F. Supp. 883 (D. Kan. 1988).............................................................................12

*Lewis v. National Football League, et al.,* 813 F.Supp 1 (D.D.C., 1992)...............................6, 19

*Lupiani v. Wal-Mart Stores, Inc.,* 2003 WL 22416414 (N.D.Cal)(No. C-03-2614 SC) ...............13

*Mitchell v. Gundlach,* 136 F. Supp. 169 (D.C.Md.1955)...............................................................12

*NSI Corp. v. Showco, Inc.,* 843 F.Supp. 642 (D.Or.1994)..............................................................5

*Solomon v. Continental American Life Insurance Co.,* 472 F.2d 1043 (3d Cir. 1973) .................12

*Southeast and Southwest Areas Health and Welfare Fund v. Pathology Laboratories,* No. 92 C. 4141, 1992 WL 396294 (N.D. Ill. Dec. 24, 1992)...................................................10

*Thayer/Patricof Education Funding L.L.C., et al. v. Pryor Resources, Inc. et al.,* 196 F.Supp.2d 21 (D.D.C. 2002).......................................................................................6

*Thomas & Betts Corp., v. Hayes,* 222 F.Supp.2d 994 (W.D.Tenn.2002).......................................5

*Trustees of Hotel Employees v. Amivest Corp.,* 733 F.Supp, 1180 (N.D. Ill. 1990).......10, 12, 16

*Trustees of Nat'l Asbestos Workers Pension Fund and Medical Fund v. Lake Erie Insulation Co.,* 688 F. Supp 1059 (D.Md. 1988)...........................................................................11

*Trustees of Nat'l Automatic Sprinkler Industry Pension Fund v. Best Automatic Fire Protection, Inc.,* 578 F. Supp. 94 (D. Md. 1983).............................................................11

*Ven-Fuel, Inc. v. Department of the Treasury,* 673 F.2d 194 (11th Cir.1982)................................5

*Yoder v. Heinold Commodities, Inc.,* 630 F. Supp. 756 (E.D.Va. 1986).........................................6

*Z-Line Designs, Inc. v. Bell'O International LLC,* 218 F.R.D. 663 (N.D.Cal. 2003)......................5

## FEDERAL STATUTES

28 U.S.C. §1404(a) ...............................................................................................12

29 U.S.C. §1132(e)(2)...........................................................................................8

## MISCELLANEOUS

H.R. Rep. No. 533, 93d Cong., 1st Sess. (1973), reprinted in 1974 U.S. Code Cong. & Admin. News 4639...............................................................................................9

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

INTERNATIONAL PAINTERS AND ALLIED      )
TRADES INDUSTRY PENSION FUND, *et al.*  )
                                        )
                    Plaintiffs,         )        CIVIL ACTION
        v.                              )        NO. 07-01070(RMU)
                                        )
THE PAINTING COMPANY                    )
                                        )
                    Defendant.          )

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S**
**MOTION TO DISMISS AMENDED COMPLAINT OR, IN THE ALTERNATIVE,**
**TRANSFER OR STAY THE PROCEEDINGS**

**INTRODUCTION**

Plaintiffs, International Painters and Allied Trades Industry Pension Fund ("Fund") and

Gary J. Meyers, a fiduciary, ("Mr. Meyers" and together with Fund "Plaintiffs") by and through

their legal counsel, Jennings Sigmond, P.C., submit this Memorandum of Law In Opposition To

Defendant's Motion to Dismiss Amended Complaint Or, In The Alternative, Transfer Or Stay

The Proceedings. [1]

The Fund filed this action pursuant to the Employee Retirement Income Security Act of

1974 ("ERISA"), 29 U.S.C. 1001, et seq., to collect delinquent contributions from the defendant,

The Painting Company ("TPC" or "Defendant"), an Ohio employer. TPC subsequently moved to

dismiss the ERISA claims for lack of subject matter jurisdiction and standing, and to dismiss,

transfer or stay any remaining claims.   The Plaintiffs then filed an Amended Complaint which

added Mr. Meyers, the Fund's Administrator, as a plaintiff and removed the breach of contract

claims initially brought under the Labor Management Relations Act ("LMRA"), 29 U.S.C. §

---

[1] For simplicity, the Defendant's Motion to Dismiss Amended Complaint Or, In The Alternative, Transfer Or Stay
The Proceedings is referred to as "Motion to Dismiss".

301.    In response, TPC moved to dismiss the Amended Complaint, or in the alternative, to transfer or stay the proceedings.  TPC seeks to transfer this matter to the United States District Court for the Southern District of Ohio, where it has filed a declaratory judgment action which seeks to decide some, but not all, of the issues before this court ("Ohio Action").

Defendant's motion should be denied.  This matter should not be dismissed because the "first to file" rule is inapplicable where the first filed action is nothing more than a tactical maneuver to obtain a favorable forum. This action should not be transferred because the Fund's choice of venue is entitled to substantial deference in view of Congressional intent that collection efforts be efficient and convenient for the Fund.  Additionally, Defendant has failed to satisfy its burden of showing that transfer of venue is warranted.  Finally, this Court should exercise its discretion not to stay this action because this action alone includes a claim under § 515 of ERISA, 29 U.S.C. §1145, and this Court may resolve both matters in their entirety.

## STATEMENT OF FACTS

On August 18, 2005, TPC executed a collective bargaining agreement ("Labor Agreement") with the IUPAT District Council No. 9 ("DC 9") covering the period May 1, 2005 through April 30, 2011. *See* Motion to Dismiss, Exhibit B. TPC also executed a Labor Agreement with IUPAT District Council 711 ("DC 711") on August 4, 2006 for the period May 1, 2006 through April 30, 2011. *See* Motion to Dismiss, Exhibit E.  TPC executed a third Labor Agreement with IUPAT District Council 15 ("DC 15") on September 27, 2006 for the period July 1, 2004 through June 30, 2007. *See* Motion to Dismiss, Exhibit D.   All the Labor Agreements executed by TPC bind TPC to the Fund's Trust Agreement ("Trust") and the International Painters and Allied Trades Industry Pension Plan ("Plan") adopted by the Fund's Trustees. *See* Motion to Dismiss, Exhibit B, p. 27 (Art. XX § 3), p. 34 (Art. XX §12(b), Exhibit

188257-3                                     2

D, p.15 (Art. 8 §1(d)), Exhibit E, p.23 (Art.10.3 §1(E)).

The Labor Agreements, Trust Agreement and Plan require TPC to submit monthly contributions to the Pension Fund on behalf of all employees in the bargaining unit. *See* Motion to Dismiss, Exhibit B, p. 28 (Art. XX § 3(a)), Exhibit D, p.14 (Art.8 §1). Contributions must be made for each hour for which any employee receives pay at the contribution rate specified in the agreement. *See* Motion to Dismiss, Exhibit B, p. 27 (Art. XX § 2(a)), Exhibit D, p.14 (Art.8 §1(a)), Exhibit E, p.24 (Art. 10.3 §1(B)).

Each of the Labor Agreements includes provisions for the resolution of grievances and disputes which arise between the parties as to the interpretation and application of the Agreement which the employer and the unions are obligated to follow. *See* Motion to Dismiss, Exhibit B, p. 17 (Art. XIII), Exhibit D, pp. 44-45 (Art. 24 §6(b)), Exhibit E, p. 31 (Art.17.3).

As part of their obligation to the Pension Fund that they administer, the Trustees are empowered to perform periodic audits on each and every signatory employer in order to ascertain the employer's compliance with the applicable collective bargaining agreement. *See* Motion to Dismiss, Exhibit B, p. 36 (Art. XXI § 1(a)), Exhibit D, p.15 (Art.8 §3).    In relevant part, the D.C. 9 Labor Agreement states:

> The Signatory Employers agree that the Trustees shall have the authority to have an independent Certified Public Accountant audit the payroll records, payroll tax returns, cash disbursement records, bank statements, vendor invoices and any and all union reports for all other trades, wages, and general ledger of any Signatory employer for the purpose of determining the accuracy of such contributions[.]

Motion to Dismiss, Exhibit B, p. 35 (Art. XXI § 1(a)).[2]    Pursuant to this power, the Fund conducted an audit for the period September 1, 2005 through December 31, 2006 which revealed

---

[2] A similar provision is set forth in the DC 15 collective bargaining agreement, *see* Motion to Dismiss, Exhibit D, p. (Art. 8 §3) ("All contributions shall be made at such time and in such manner as the trustees require; and the trustee may at any time conduct an audit in accordance with Article V Section 6 of the said Agreement and Declaration of Trust.").

a delinquency in the amount of $527,587.35.    On May 30, 2007, counsel for the Fund sent a letter to TPC advising it of the delinquency and allowing TPC the opportunity to pay or dispute the audit findings within ten (10) days. *See* Motion to Dismiss, Exhibit A. The letter also clearly advised TPC that the Fund would file suit if the claim was not promptly resolved. *Id.* ("Absent my hearing from you and our reaching agreement on a procedure for resolving this delinquency, the Funds will have no alternative but to commence an appropriate collection action in the United States District Court for the District of Columbia.").

Four days after the expiration of the ten-day period, on June 14, 2007, the Fund filed this action under 29 U.S.C. §§1132 and 1145 to recover TPC delinquencies.    In the meantime, prior to the end of the ten-day period, and with knowledge and notice that the Fund intended to file an action against it, TPC filed a Complaint for Declaratory Judgment in the United States District Court for the Southern District of Ohio Eastern Division, seeking to raise defenses that it also will raise in this action. *See* Motion to Dismiss, Exhibit F. On August 15, 2007, TPC filed an Amended Complaint for Declaratory Judgment and Damages in the Ohio Action. *See* Motion to Dismiss, Exhibit G.    On August 18, 2007, the Fund filed a Motion to Dismiss for Lack of Jurisdiction and a Motion to Transfer in the Ohio Action.[3]

Shortly thereafter, on September 10, 2007, TPC moved to dismiss the ERISA claims and to dismiss, transfer or stay any remaining claims in this action.    On September 17, 2007, Plaintiffs filed an Amended Complaint which added Mr. Meyers as a plaintiff and dropped the claims under § 301 of the LMRA.    On September 27, 2007, TPC moved to dismiss the Amended Complaint, or in the alternative, transfer or stay the proceedings.

The Plaintiffs seek the Court's denial of the Defendant's Motion to Dismiss Amended

---

[3] Copies of this Motion to Dismiss and Motion to Transfer are attached for the Court's convenient reference.

188257-3                                                          4

Complaint or, In the Alternative, Transfer or Stay the Proceedings.

## ARGUMENT

I.     **Defendant's Motion to Dismiss Should be Denied Because the First To File Rule Has Been Rejected Where the First Filed Action Was Anticipatory in Nature And Was a Tactical Maneuver to Obtain a More Favorable Forum**

Defendant's attempt to seek dismissal of this action under the "first-to-file" rule is misplaced. Numerous federal courts have refused to apply the first-to-file rule where the first filed action is anticipatory in nature. *See e.g., Ven-Fuel, Inc. v. Department of the Treasury,* 673 F.2d 1194, 1195 (11th Cir.1982) (first-filing not controlling when it was made "in apparent anticipation of imminent judicial proceedings" by opposing party); *Thomas & Betts Corp., v. Hayes,* 222 F.Supp.2d 994, 996 (W.D.Tenn.2002) ("Courts have been willing to reject the first-to-file rule and dismiss a declaratory judgment action, if that action was filed for the purpose of anticipating a trial of the same issue in a court of coordinate jurisdiction.") (citations omitted). [4]

This Court is no exception. On numerous occasions this Court has refused to apply the first-to-file rule where the first filed action is a declaratory judgment action filed in anticipation of litigation by the other party. *See Federation Internationale De Football Ass'n. v. Nike Inc.,*

---

[4] Moreover, "a second-filing party may have a strong case that the initial filing is improper if the first-filing party initiated its suit within the response period provided in a recent [letter threatening litigation]." *FMC Corp. v. AMVAC Chemical Corp.,* 379 F.Supp.2d 733, 744 (E.D.Pa. 2005) (citing *Eui Seob Kim v. Su Heon Kim,* 324 F.Supp.2d 628, 636 (E.D.Pa.2004). *See also, Factors, Etc. v. Pro Arts, Inc.,* 579 F.2d 215, 219 (2d Cir.1978) (exception to the first-filed rule where declaratory judgment action was triggered by a notice letter and filed in anticipation of a coercive suit); *Z-Line Designs, Inc. v. Bell'O International LLC,* 218 F.R.D. 663, 667 (N.D.Cal.2003) ("where as here a declaratory judgment action has been triggered by a cease and desist letter, equity militates in favor of allowing the second-filed action to proceed to judgment rather than the first"); *Chicago Ins. Co. v. Holzer,* 2000 WL 777907 at *2 (S.D.N.Y.2000) (filing of declaratory judgment action triggered by a notice letter is a "persuasive indicator of anticipatory conduct"); *Charles Schwab & Co., Inc. v. Duffy,* 1998 WL 879659 at *1 (N.D.Cal. Dec. 8, 1998) (applying the first-filed rule in cases of anticipatory suits "would thwart settlement negotiations, as intellectual property holders would feel compelled to file suit rather than communicate with an alleged infringer"); *Hanson PLC v. Metro-Goldwyn-Mayer, Inc.,* 932 F.Supp. 104, 107 (S.D.N.Y.1996) ("Where the first-filed case is a declaratory judgment action precipitated by a demand letter and filed in anticipation of the later action, the second-filed action will be allowed to go forward in plaintiff's chosen forum"); *NSI Corp. v. Showco, Inc.,* 843 F.Supp. 642, 645 (D.Or.1994) ("first-filed" rule does not apply where "the party seeking declaratory judgment unfairly took advantage of the other in a race to the courthouse"); *Bausch & Lomb Inc. v. Alcide Corp.,* 684 F.Supp. 1155, 1159-60 (W.D.N.Y.1987) (the court declined to enjoin second-filed action and accordingly transferred first-filed action where the first-filed action was anticipatory and unnecessarily "raised the sword of litigation").

188257-3                                              5

285 F.Supp.2d. 64 (D.D.C., 2003)(denying motion to transfer case to forum where declaratory judgment action pending because "first-filing plaintiff has launched a 'preemptive strike' declaratory judgment action in the face of an impending … suit".)(hereinafter *"FIFA"*); *Thayer/Patricof Education Funding L.L.C., et al. v. Pryor Resources, Inc. et al.*, 196 F.Supp.2d 21, 30-31 (D.D.C., 2002)(denying motion to transfer and emphasizing that preemptive and declaratory nature of defendants' declaratory judgment action was "strong factor … counseling against rigid application of the first-filed rule."); *Lewis v. National Football League, et al.*, 813 F.Supp. 1 (D.D.C., 1992)(first-to-file rule should not be applied mechanically particularly if an action is filed as a preemptive strike to establish preferred forum).   Here, the Ohio Action was clearly filed as a preemptive strike to gain a favorable forum in anticipation of this litigation. Accordingly, equitable considerations require this Court to deny TPC's motion to dismiss.

Where "it appears that the declaratory judgment action was filed in anticipation of litigation by the other party[,][citation omitted] Courts have held that such a preemptive strike should be disregarded[.]"    *Lewis*, 813 F.Supp. at 4 (citing *State Farm Fire and Cas. Co. v. Taylor*, 118 F.R.D. 426 (M.D.N.C. 1988); *Yoder v. Heinold Commodities, Inc.*, 630 F.Supp. 756 (E.D.Va. 1986); *Consolidated Rail Corp. v. Grand Truck Western R. Co.*, 592 F.Supp. 562 (C.D.Pa. 1984)).   In *Lewis*, football players filed an antitrust action against the National Football League ("NFL") in the D.C. District Court.  The NFL filed a motion to dismiss, transfer or stay in light of a pending declaratory judgment action in the District Court for Minnesota which had been filed two days before the anticipated antitrust litigation.  This Court denied the NFL's motion, concluding: "[T]here appears to be a race to the courthouse, and the interest of justice, the touchstone of 28 U.S.C. § 1404(a), demands that defendants' victory in that race not prejudice the valid claims of the plaintiffs." *Id.* at 6.

Similarly, in *FIFA* the court denied the defendant's motion to transfer or stay because "there can be little doubt that [defendant] filed its [declaratory judgment action] in immediate anticipation of being sued by [plaintiff]." *FIFA*, 285 F.Supp.2d at 68.  In *FIFA* the plaintiff, a soccer tournament organizer, sent Nike, the team sponsor, a cease-and-desist letter accusing Nike of trademark infringement.  Following a flurry of correspondence between the two parties, FIFA's counsel sent Nike a final letter warning that it intended to file litigation unless it received certain information from Nike within twenty-four (24) hours.  The next day, Nike filed a declaratory judgment action in New York.  Two (2) days later, FIFA filed the threatened trademark infringement litigation.  The D.C. District court concluded the declaratory judgment action "plainly appears to have been a 'preemptive strike'" in light of FIFA's deadline to avoid litigation and denied the defendant's motion.  *Id.*

The rationale and conclusions of *FIFA* and *Lewis* apply precisely to the present case because the Ohio Action has all the makings of a preemptive strike.  On May 30, 2007, the Fund sent a letter demanding payment of employer delinquencies found due under an audit.  *See* Motion to Dismiss, Exhibit F; Motion to Dismiss, Exhibit A.[5]  The letter gave TPC ten (10) days to pay the delinquency or notify the Fund of its intent to dispute the audit. Motion to Dismiss, Exhibit A.  It further stated that unless TPC contacted the Fund within the ten-day period and made arrangements to resolve the delinquency, the Fund would file a collection action in the United Stated District Court for the District of Columbia.  *Id.*  Nine (9) days later, on June 8, 2007, TPC filed the declaratory judgment action in Ohio.  *See* Motion to Dismiss, Exhibit F. Thus, the Ohio Action is nothing more than Defendant's attempted preemptive strike and the first-to-file rule must not be employed to endorse such procedural jousting and forum shopping.

---

[5] While Defendant neglects to mention in its Motion to Dismiss that the Ohio Action was filed after the Fund served notice of an intent to sue, it conceded the fact in its original complaint. *See* Motion to Dismiss, Exhibit F, ¶47.

In addition, Defendant concedes that equitable considerations should guide a court's discretion when deciding which case to allow to proceed. *Columbia Plaza Corp. v. Security Nat'l Bank*, 525 F.2d 620 (D.C.Cir. 1975), the D.C. Circuit case upon which TPC relies for the premise that equities weigh in its favor, explicitly rejects Defendant's claim that the "first-to-file" rule determines the proper forum. In *Columbia*, the Court of Appeals reversed the District Court's refusal to enjoin the prosecution of a second action in the Southern District of New York. It held that the solution to the problem of whether to enjoin duplicative litigation "requires a balancing not of empty priorities but of equitable considerations genuinely relevant to the ends of justice." *Columbia*, 525 F.2d at 628. Here, equity requires this Court to disregard the first-to-file rule in this case because while Defendant won the race to the court house and filed its action first, it did so in anticipation of the present litigation and this Court should not endorse such tactical maneuvers.

**II.   The Fund's Choice of Venue is Entitled to Deference Because the Venue Provision Of ERISA Reflects a Congressional Intent That Pension Fund Collection Efforts Be Efficient For the Fund.**

The Plaintiff Fund is administered in the District of Columbia. *See* Declaration of Thomas C. Montemore, Assistant to the Fund Administrator, ¶2 ("Montemore Declaration").[6] ERISA's applicable venue provision thus directly confers venue on this Court to hear this action to collect employer delinquencies:

> Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found.

29 U.S.C. § 1132 (e) (2) (emphasis added). This provision is not mere surplusage, to be ignored whenever an employer happens to reside or operate in another district. Rather, it reflects a

---

[6] The Montemore Declaration is attached as Exhibit 1.
188257-3

Congressional intent to foster the continued viability of employee benefit plans and to promote the efficient collection of employer obligations by permitting a fund to choose the appropriate forum and to litigate all legal actions in one central location:

> The enforcement provisions have been designed specifically to provide both the Secretary and participants and beneficiaries with broad remedies for redressing or preventing violation of the Act. The intent of the Committee is to provide the full range of legal and equitable remedies available in both state and federal courts and to remove jurisdictional and procedural obstacles which in the past appear to have hampered effective enforcement of fiduciary responsibilities under state law for recovery of benefits due to participants.

H.R. Rep. No. 533, 93d Cong., 1st Sess. (1973), *reprinted in* 1974 U.S. Code Cong. & Admin. News 4639, 4655;[7] *see also, International Brotherhood of Painters and Allied Trades Union v. Best Painting And Sandblasting Co., Inc.*, 621 F. Supp. 906, 907 (D.D.C. 1985) ("Congress has enacted a special venue provision to allow multiemployer pension plans to more efficiently collect delinquent contributions"); *Employees Savings Plan of Mobil Oil Corp. v. Vickery*, 99 F.R.D. 138, 144 (S.D.N.Y. 1983) ("one relevant factor" in the decision "whether to transfer a case on the basis of convenience" is " the goal of efficient administration of ERISA plans").

These policy goals are clearly implicated in the instant case. The Fund has approximately three thousand five hundred (3,500) employers that make contributions to it each year. *See* Montemore Declaration ¶9. In 2006, approximately three thousand (3,000) Pension Fund employers located throughout the country were delinquent at some time during the year. *Id.* The Funds referred approximately one hundred (100) delinquencies to Fund counsel for collection in 2006, forty three (43) of which resulted in litigation. *Id.* If the administrator of the

---

[7] Congress reiterated its intent when it amended the statute in 1980 to enhance the funds' ability to recoup delinquent contributions. Congress was concerned that the collection <u>enforcement</u> provisions "should have teeth," because of the "serious problem" created by employers that fail to "make promised contribution[s] in a timely fashion, "thus imposing a variety of costs'" on plans. *Carpenters Amended & Restated Health Benefit Fund v. John W. Ryan Constr. Co.*, 767 F. 2d 1170, 1173-74 (5th Cir. 1985) (citations omitted) (quoting Staff of Senate Comm. on Labor and Human Resources, 96[th] Cong.

Funds, indeed of every national pension plan, were compelled to travel across the country to testify at each trial or hearing for every delinquency case, the collection process so carefully crafted by Congress would be brought to a standstill. Moreover, if each of the approximately 3,000 employers who received a letter from the Fund regarding their delinquencies during 2006 filed a declaratory judgment action, the courts would be inundated with needless litigation.

Recognizing the important policy goals at stake, the overwhelming majority of courts faced with employer motions to transfer ERISA collection cases from the fund's home forum have refused to grant such transfers. *See, e.g., International Painters and Allied Trades Industry Pension Fund v. Tri-State Interiors, Inc.*, 357 F.Supp. 2d 54, 56 (D.D.C. 2004) (recognizing "special circumstances surrounding ERISA litigation"); *International Brotherhood of Painters v. Johnson Bros. Corp.*, No. 94-0806, 1994 WL 808069, at *2 (D.D.C. Aug. 18, 1994) (relying on ERISA's "special venue provision"); *Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) Pension Fund v. Brotherhood Labor Leasing*, No. 93 C 1803, 1993 WL 385133, at *2 (N.D. Ill. Sept. 27, 1993) ("in the context of an ERISA case, the [fund's] choice of forum is especially significant"); *Southeast and Southwest Areas Health and Welfare Fund v. Pathology Laboratories*, No. 92 C. 4141, 1992 WL 396294 at *1 (N.D. Ill. Dec. 24, 1992) (noting special deference owed to the fund's choice of forum); *Trustees of Hotel Employees v. Amivest Corp.*, 733 F. Supp. 1180, 1182 (N.D. Ill. 1990) ("The ERISA venue provision is to be liberally interpreted; Congress intended to expand, rather than restrict, the ERISA [fund's] choice of forum."); *Dugan v. M & W Dozing & Trucking, Inc.*, 727 F. Supp. 417, 419 (N.D. Ill. 1989) (To force fund to litigate in employer's chosen forum would "undermine the Congressional intent to protect the financial integrity of employee benefit plans. If the trustees were forced to litigate everywhere where an employer resided, this would result in undue

hardship and expense to the funds.").[8]

In fact, this Court recently recognized that, "members of this court have cited ERISA's special venue provision in rejecting virtually every attempt to transfer ERISA actions under § 1401(a)." *Flynn et al. v. Veazey Construction Corp.*, 310 F. Supp. 2d 186, 193 (D.D.C. 2004)(citing seven (7) slip opinions from the D.D.C.). In *Flynn*, this Court denied the employer Defendant's motion to transfer an ERISA collection action brought by the Plaintiff trust funds. In doing so, the Court emphasized that "[i]n the ERISA context, a defendant seeking a transfer of venue has the additional burden of surmounting ERISA's special venue provision." *Id.* at 193. It further recognized that "[f]orcing ERISA plaintiffs to litigate claims where each employer resides … would undermine the financial integrity of the funds, defeating the goal of efficient administration of ERISA plans." *Id.* at 194.

Based on the overwhelming authority affording deference to a fund's choice of forum under ERISA, the court should deny Defendant's motion to dismiss, transfer or stay.

### III.    Defendant Has Not Bourne Its Burden of Showing That Transfer of Venue is Warranted.

Given the specific venue provision applicable to ERISA delinquency collection cases, the Court need not address the criteria of the general federal transfer provision. *See Flynn*, 310 F.Supp.2d at 193 ("Because of the special weight ERISA accords a plaintiff's choice of forum, the court need not engage in a lengthy analysis to determine that transfer is not warranted."). However, even under that general provision (28 U.S.C. § 1404 (a)), Plaintiffs will show that "the

---

[8] *See also Board of Trustees, Sheet Metal Workers' Nat'l Fund v. Baylor Heating & Air Conditioning, Inc.*, 702 F. Supp. 1253, 1256 (E.D. Va. 1988) (noting "policy rationale" for granting fund's venue selection deference); *Trustees of Nat'l Asbestos Workers Pension Fund and Medical Fund v. Lake Erie Insulation Co.*, 688 F. Supp. 1059, 1060 (D. Md. 1988) (noting "policy of Congress… to facilitate enforcement of ERISA and minimize the expense to the Trustees and the fund in collecting delinquent payments"); *Trustees of Nat'l Automatic Sprinkler Industry Pension Fund v. Best Automatic Fire Protection, Inc.*, 578 F. Supp. 94, 95 (D. Md. 1983) (relying on Congress' intent "to provide ERISA participants and beneficiaries…ready "to provide ERISA participants and beneficiaries… ready access to the Federal courts" (citation omitted).

balance of considerations tilts strongly in [their] favor." *Kansas City Bricklayers Employees Pension Fund v. Jerry Bennett Masonry Contractor, Inc.*, 703 F. Supp. 883, 884 (D. Kan. 1988).

TPC's request for change of venue is premised on 28 U.S.C. § 1404(a). *See* Motion to Dismiss, p. 10. Application for a transfer of venue under § 1404(a) is permissible where the venue is proper in the transferor forum, and where the proposed transferee forum is one where the suit might have been brought. 28 U.S.C. §1404(a); *Mitchell v. Gundlach*, 136 F. Supp. 169 (D.C.Md.1955); *Solomon v. Continental American Life Ins. Co.*, 472 F.2d 1043, 1045 (3d Cir.1973). Here, as discussed above, venue is proper in this Court, as this is where the Fund is administered.

It is the Defendant's burden to persuade the Court that a transfer is necessary under the circumstances. *Chung v. Chrysler Corp.*, 903 F. Supp. 160 (D.D.C.1995) (burden is on party moving to transfer venue of action to demonstrate that balance of proper interests weighs strongly in favor of the transfer). Specifically, this Court has held:

> [T]o prevail on a motion to transfer venue in an ERISA action filed in the plaintiff's home district, the defendant must convince the court that the particularly strong deference given to the plaintiff's choice of forum is outweighed by either (1) the convenience of the parties, (2) the convenience of the witnesses, or (3) the interests of justice.

*Tri-State Interiors, Inc.*, 357 F.Supp.2d at 56 (citing *Flynn*, 310 F.Supp.2d at 193-94). In *Best Painting*, this Court denied the employer's transfer motion, finding that the pension fund's "choice of forum is due substantial deference and, unless the balance of convenience is strongly in favor of the [employers], should rarely be disturbed." 621 F. Supp. at 907; *see also, Amivest*, 733 F. Supp. at 1183 ("A district court considering a motion to transfer an ERISA case should be sensitive to the congressional intent to protect the financial integrity of employee benefit plans and the well being of participants and beneficiaries. Unless it is clearly outweighed by other

factors, the Trustees' choice of forum is entitled to deference." (citations omitted)). Here, TPC has failed to meet its burden and as a result Defendant's motion to transfer should be denied.

### a. Convenience Of The Parties

While the parties relative convenience is a pertinent transfer factor, "when plaintiffs file suit in their home forum, convenience to parties rarely, if ever, operates to justify transfer." *Baylor*, 702 F.Supp. at 1259. When plaintiffs initiate suit in their home forum, it is assumed that plaintiffs have filed suit in the forum most convenient for them. *Id.* Of course, TPC may be inconvenienced by litigating in the Fund's home forum, but this alone does not justify transfer because transfer "would likely serve only to shift the balance of inconvenience from defendant to plaintiff." *Id.* (internal quotations omitted).

As the *Baylor* court noted, the convenience of the parties factor "is chiefly operative in cases where the plaintiff chooses a forum away from its home." *Baylor*, 702 F.Supp. at 1259. Here, the Fund has brought this action in the venue in which it is administered; in other words, at home. Curiously, Defendant relies solely on *Lupiani v. Wal-Mart Stores, Inc.*, 2003 WL 22416414 (N.D.Cal)(No. C-03-2614 SC), for the assertion that ERISA actions have been transferred under 28 U.S.C. §1404(a). In *Lupiani* the only connection of the case to the original forum was the location of the plaintiffs' counsel. *Lupiani*, 2003 WL 22416414 at *3. For that reason the court granted the defendant's motion to transfer. *Id.* The present action is highly distinguishable as the Fund is located in the District of Columbia where this action has been brought and, as explained above, this Court recognizes that Plaintiff's choice of forum in this action is entitled to significant weight under ERISA. Here, TPC's claim of inconvenience is not a sufficient basis upon which to transfer venue, because such a transfer only shifts the balance of inconvenience from the defendant to the plaintiff.

188257-3                                        13

### b. Convenience Of The Witnesses

Convenience of witness is also an important consideration however,

> [T]he influence of this factor cannot be assessed in the absence of reliable information identifying the witnesses involved and specifically describing their testimony. This type of particularized information, typically submitted in affidavit form, is necessary to enable the court to ascertain how much weight to give a claim of inconvenience.

*Baylor*, 702 F.Supp. at 1258.    Here, TPC fails to provide the necessary information and thus fails to prove transfer is warranted.    Moreover, courts have concluded that where there is inconvenience on both sides, the fund's choice of forum prevails.

Defendant claims two (2) of its witnesses reside in the Southern District of Ohio.    It also claims generally that "any other necessary Company witnesses" reside in the Southern District of Ohio. This is merely a conclusory statement that witnesses located in the proposed transferee forum will be inconvenienced if the case were to go forward in the original forum.    Where the defendant fails to describe its witnesses' testimony with the "requisite particularity", the effort has been rejected as "wholly inadequate"  *Id.*  at 1258-59.[9]

Furthermore, Defendant's Motion and Exhibits identify *potential* witnesses, the majority of which are the Union defendants in the Ohio Action and are not party to this action.    The Defendant cannot claim inconvenience to witnesses who are not representatives of TPC but who are representatives of the Union defendants in the Ohio Action and/or witnesses who are not necessary to determining the underlying claims in this action.    An analogous argument was rejected by this court in *Best Painting*.

In *Best Painting*, the plaintiff benefit funds sued an employer to recover unpaid pension contributions.    The defendants filed a motion to dismiss or transfer the action because a

---

[9] The two affidavits submitted by Defendant do not address with particularity the testimony of the two witnesses.

declaratory judgment action was pending in the United States District Court for the Southern District of Alabama.  In support of its motion to transfer, the defendants' submitted an affidavit alleging that testimony from witnesses would be necessary to show that the local union breached its collective bargaining agreement with the employer. The court dismissed this argument stating, "[s]uch a defense … is irrelevant to a suit by the Pension Fund.  Federal labor policy dictates that defenses available against a union are generally not available against third-party beneficiaries of collective bargaining agreements such as pension funds." *Best Painting*, 621 F.Supp. at 907 (citations omitted).  In denying the defendants' motion to dismiss or transfer the case, the court emphasized, "This Court will not permit the defendants' tactical maneuver to prevent the Pension Fund from exercising in the jurisdiction of its choice the rights that Congress has specifically bestowed upon it."  *Id.* at 908.   TPC's assertion that this action should be transferred to the Southern District of Ohio is nothing more than the same tactical maneuvering rejected by this Court in *Best Painting.*

In fact, Plaintiffs represent that all of the labor unions who are party to the Ohio Action (which include labor unions in New York, New Jersey and Las Vegas, Nevada) would not object to proceeding in this forum in the event that they are joined in this action.  Plaintiffs are prepared to present affidavits from each of those labor unions stating that the District of Columbia would be the more efficient and convenient forum for them.

Furthermore, this Court has held on numerous occasions that where a transfer of venue would result in a mere shifting of inconvenience from defendant's witnesses to plaintiff's witnesses, the defendant's arguments are "inadequate to outweigh the 'special deference accorded ERISA plaintiffs.'" *Tri-State Interiors, Inc.*, 357 F.Supp.2d at 57 (citing *Hanley v. Omarc*, 6 F.Supp.2d 770, 775 (N.D.Ill. 1998)(finding that "either party can easily bring to the

district those documents that are not there already."); *see also Flynn*, 310 F.Supp.2d at 194.

In *Flynn*, the defendants claimed that the parties entered the collective bargaining agreement in Texas, the alleged breach of the agreement occurred in Texas, the defendants business and offices were in Texas and nearly all potential witnesses resided in Texas. *Flynn*, 3310 F.Supp.2d at 193.   This court rejected the defendants' argument, explaining that, "[f]orcing ERISA plaintiffs to litigate claims where each employer resides … would undermine the financial integrity of the funds, defeating the goal of efficient administration of ERISA." *Id.* at 194.   The court concluded, "in light of the special deference accorded ERISA plaintiffs, the convenience of parties and witnesses and the interest of justice does not favor transfer." *Id.* The same reasoning applies here.   In light of the substantial deference given to the Fund's choice of venue, TPC's general claim that two (2) witnesses will be inconvenienced by having to testify in D.C. is unpersuasive.

Moreover, when there is inconvenience on each side, the fund's choice of forum prevails. While TPC claims that its witnesses reside in Ohio, the Fund asserts a similar position with respect to its witnesses. *See* Montemore Declaration ¶¶8, 9.   When there is inconvenience on each side, the courts have ruled in favor of the fund's choice of forum:

> The majority of the Trustees, their witnesses and their documentary evidence are located in this district.   If these were the only factors to be weighed, the scale would be virtually balanced.   However, the congressional intent in favor of the financial integrity of employee benefit plans tips the scale radically in favor of the Trustees.   If forced to litigate in [a distant forum], the pension funds would be burdened with significant additional expense and managerial hardship.   This, in turn, could threaten the well being of the participants and their beneficiaries.   The ERISA venue provision was intended to prevent this type of burden.

*Amivest*, 733 F. Supp. at 1183 (emphasis added); *see also, Tri-State Interiors Inc.*, 357 F.Supp.2d at 57; *Best Painting*, 621 F. Supp. at 908.

Here, the underlying facts regarding the delinquency of TPC will be documented through

a substantial volume of Fund records, including reports which TPC submitted to the Fund and the audit conducted on behalf of the Fund, which are located in the District of Columbia. *See* Montemore Declaration ¶8. Also located in the District of Columbia are numerous Trustees of the Fund, the members of the Fund staff involved in calculating the delinquencies and the Fund auditor, who will testify to the issues central to the case. *Id.* Further, Mr. Meyers, the Administrator of the Fund, which has over seventy-four thousand (74,000) participants and serves over twenty-four thousand (24,200) retirees and beneficiaries, would be greatly inconvenienced if required to testify in Ohio. *Id.* ¶9. Indeed, if TPC's arguments were accepted, Mr. Meyers would have time for nothing other than attending to the numerous (43 in 2006) Fund litigations scattered around the country. *Id.* ¶9.

Therefore, Defendant's motion should be denied because Defendant fails to show that inconvenience to its witnesses outweighs the special deference accorded ERISA plaintiffs and that transfer of this action would do nothing more than shift the inconvenience from Defendant to Plaintiff.

### c. The Interest of Justice

TPC cannot make any persuasive argument and, indeed, has not, that transferring venue in this matter will have any beneficial effect on the interest of justice. In fact, transfer in this case would have a detrimental effect on the interest of justice for three primary reasons.

First, to transfer venue from the forum in which it is properly situated will undercut the federal policy of simplifying and expediting the Fund's litigation for delinquent contributions. *See Central Pa. Teamsters Pension Fund v. McCormick Dray*, 85 F.3d 1098, 1102 (3rd Cir. 1996); *see also Daily Express, Inc. v. Northern Neck Transfer Corp.*, 483 F. Supp. 916 (M.D. Pa. 1979) (defendant requesting transfer of entire case for convenience of parties and witnesses

failed to establish that the parties or witnesses would suffer any significant inconvenience if venue was retained and thus it was in the interest of justice to deny request).

Second, "under ERISA, funds have a fiduciary duty to conserve their assets for their beneficiaries. This goal would be undercut if pension funds ... were forced ... to pursue their claims for delinquent employer contributions in faraway transferee forums." *Baylor Heating*, 702 F.Supp. at 1261; *see also Johnson Bros.*, No. 94-0806, 1994 WL 808069 at *2 (determining fund would be frustrated in carrying out fiduciary duty if forced to pursue claims for delinquent employer contributions in far away forums.).   This Court has recognized that the Fund "is not acting as a for-profit corporation, but rather as a fiduciary, entrusted to conserve resources for its beneficiaries." *Tri-State Interiors*, 357 F.Supp. at 57 (citing 28 U.S.C. § 186(c)(5)).  If venue transfers were routinely granted in similar delinquency cases against employers, the funds would "be forced to incur enormous, if not prohibitively high, expenses to collect unpaid monies -- a situation Congress explicitly sought to prevent when it enacted ERISA's special venue provisions." *Id.* at 57-58.

Third, "the interest of justice suggests that this matter remain in the District of Columbia for adjudication because subjecting pension funds to uniform interpretation of the complex ERISA laws is vital to the efficient administration of such funds." *Id.* at 58.  This important interest is undermined if the Fund is forced to litigate in multiple venues across the country. *See Baylor Heating*, 702 F.Supp. at 1261 (citing *Employees Sav. Plan of Mobil Oil Corp. v. Vickery*, 99 F.R.D. 138, 144 (S.D.N.Y. 1983)(denying defendant's motion to transfer due to pension fund's interest in uniform application of ERISA and the convenience of parties.)).

TPC asserts that transferring this case to Ohio would serve the purposes of judicial economy since the Ohio Action is pending in that forum. The pendency of a related action in the

transferee forum is a favorable factor only where it would be "both feasible and beneficial to consolidate the actions." *Baylor Heating*, 702 F.Supp. at 1261. Here, it is highly unlikely the actions will be consolidated in the Southern District of Ohio because the "causes of action and the parties are not precisely the same." *Id.* Although the claims in both cases each arise from Defendant's failure to pay contractually required contributions, the facts and issues involved in the Ohio Action are distinguishable, a fact TPC concedes in its Motion to Dismiss. *See* Motion to Dismiss, pp. 8, 12, 14-15. The Ohio Action does not include a claim under § 515 of ERISA, 29 U.S.C. §1145, whereas the Fund's § 515 claim is the nucleus of this action. Additionally, the Ohio Action includes three local unions as defendants whereas no unions are party to this action. If TPC chooses to do so it may attempt to bring in the other entities it has named as defendants in the Ohio Action and make its arguments against them in this court.[10]     Accordingly, it is not in the interest of justice to transfer this case to the Southern District of Ohio.

## IV.     A Stay Would Only Serve to Postpone An Inevitable Resolution of This Case

There is no reason for the court to stay this case. As explained above, the Ohio Action was brought in anticipation of this litigation, yet only the present action involves a claim under § 515 of ERISA. The Ohio Action is, in essence, Defendant's attempt to circumvent ERISA by raising defenses to this action in a more favorable forum. It is a "tactical maneuver to prevent the Pension Fund from exercising in the jurisdiction of its choice the rights that Congress has specifically bestowed upon it." *Best Painting*, 621 F.Supp. at 908. It simply does not make sense to stay this action and allow TPC's defenses to be litigated in another venue when this Court may resolve this matter in its entirety. "Thus, a stay would only serve to postpone, potentially to [the Fund's] detriment, an inevitable resolution of this case." *Lewis*, 813 F.Supp. at 6. Moreover,

---

[10] Plaintiffs do not concede the merit of any attempts to join such parties. Rather, Plaintiffs recognize the mechanisms to do so are available to Defendant.

188257-3

19

nothing prevents Defendant from raising these same defenses, if meritorious, in this case.

It is clear that Defendant's filing of the Ohio Action and its motion to dismiss, transfer or stay is a blatant attempt at forum-shopping, designed to defeat the Fund's statutorily-favored venue.  To dismiss, transfer or stay this action would not only be in contravention of clear Congressional policy favoring the Fund's choice of venue, but it would reward the Defendant for playing a procedural game in order to secure a more favorable forum.

## CONCLUSION

Given the ERISA venue statute, the great weight traditionally afforded to a fund's choice of forum and the inconvenience to the Funds of litigating in Ohio, the Defendant's motion should be denied.

Respectfully submitted,

JENNINGS SIGMOND, P.C.

BY:  /s/ Richard B. Sigmond
RICHARD B. SIGMOND
Bar No. 446969
SANFORD G. ROSENTHAL
Bar No. 478737
ELIZABETH A. COLEMAN*
The Penn Mutual Towers, 16th Floor
510 Walnut Street, Independence Square
Philadelphia, PA 19106-3683
(215) 351-0609/0611/0644
Date: October 25, 2007                   Attorneys for the Fund


*Application for Pro Hac Admission of Elizabeth A. Coleman shall be made at the appropriate time.

## CERTIFICATE OF SERVICE

I state under penalty or perjury that a copy of the foregoing, Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss Amended Complaint Or, In the Alternative, Transfer or Stay the Proceedings, was served electronically via the CM/ECF System and/or first class mail, postage prepaid or acceptable substitute service by electronic mail or fax on the date set forth below addressed to:

Tess J. Ferrera
Thompson Hine, LLP
1920 N Street, N.W., Suite 800
Washington, DC  20036

William R. Case
Thompson Hine, LLP
10 W. Broad Street, Ste. 700
Columbus, OH  43215

Attorneys for The Painting Company


/s/ Richard B. Sigmond
RICHARD B. SIGMOND

Date: October 25, 2007

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

INTERNATIONAL PAINTERS AND ALLIED        )
TRADES INDUSTRY PENSION FUND, *et al.*    )
                                          )
                      Plaintiffs,         )        CIVIL ACTION
            v.                            )        NO. 07-01070(RMU)
                                          )
THE PAINTING COMPANY                      )
                                          )
                      Defendant.          )

## ORDER

Upon consideration of Defendant's Motion to Dismiss Amended Complaint or, In the Alternative, Transfer or Stay the Proceedings, and Plaintiffs' Memorandum of Law In Opposition to Defendant's Motion, and due consideration by the Court, it is ORDERED:

Defendant's Motion to Dismiss Amended Complaint or, In the Alternative, Transfer or Stay the Proceedings is denied.

Date: _____

                                      _____
                                      RICARDO M. URBINA         J.
                                      United States District Court

189586-1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND, *et al.* | ) ) ) | |
| Plaintiffs, | ) | CIVIL ACTION |
| v. | ) | NO. 07-01070(RMU) |
| | ) | |
| THE PAINTING COMPANY | ) | |
| | ) | |
| Defendant. | ) | |

**DECLARATION OF THOMAS C. MONTEMORE**

THOMAS MONTEMORE states and declares the following:

1.     My name is Thomas C. Montemore and I am the Assistant to the Fund Administrator of the International Painters and Allied Trades Union and Industry Pension Fund ("Pension Fund", "Fund" or "Plaintiff"). I have held that position since February 1, 2000. I served as Delinquency Controller from 1988 through October 31, 2000 and I have served as the Delinquency Coordinator from 1986 to 1988, and before that, acted as Agreement Clerk from 1982 to 1986, and File Clerk beginning in 1979.

2.     The Pension Fund is an "employee benefit pension plan" as defined in Section 3(2)(A)(i) of ERISA, as amended, 29 U.S.C. §1002(A)(i), established by the International Union of Painters and Allied Trades, AFL-CIO-CFL ("Union"), and employers in private industry whose employees are members of or otherwise represented by the Union and its district councils and local unions, for the purpose of providing retirement income to the employees. The Pension



Fund is administered in the District of Columbia from its and my principal place of business at 1750 New York Avenue, N.W., Washington, D.C. 20006.

3.    I have personal knowledge of the contents of the collective bargaining agreements, the Agreement and Declaration of Trust ("Trust Agreement") and the International Painters and Allied Trades Industry Pension Plan ("Plan") referenced in this Motion.

4.    The Pension Fund, as part of its normal operating procedure, maintains files containing copies of the collective bargaining agreements signed by each employer and copies of the remittance reports submitted by each contributing employer. The Pension Fund also maintains, as part of its normal operating procedures, a record of all contributions which are paid to the Pension Fund by each contributing employer, including copies of checks submitted directly from employers as payment for contributions due.

5.    My review of the regular business records maintained by the Pension Fund reveals that the defendant, The Painting Company ("Defendant" or "Company"), was a contributing employer of the Pension Fund and entered into collective bargaining agreements ("Labor Agreements") with IUPAT District Council 711 ("DC 711"), IUPAT District Council 9 ("DC 9") and IPUAT District Council 15 ("DC 15").   Under the terms of the Labor Agreements, Company is bound to the Trust Agreement and Plan.

6.    The Labor Agreements require Defendant to submit monthly contributions to the Pension Fund on behalf of all employees in the bargaining units, and sets forth the rate of contribution and the method for calculating the total amount of contributions due the Pension Fund. Contributions must be made for each hour for which employees receive pay at the contribution rate specified in the agreements. Failure to make the required contributions, or to

189126-1                                   2

submit both incorrect or late remittance reports and contributions, results in a delinquency to the Pension Fund.

7.    An audit covering the period September 1, 2005 through December 31, 2006, showed that Company had failed to pay required contributions on its employees in the amount of $527,587.35. According to the Pension Fund's records, the entire balance due under the audit remains unpaid.

8.    The underlying facts regarding the delinquency of Company will be documented through a substantial volume of Fund records including reports which Company submitted to the Fund and the audit conducted on behalf of the Fund, which are located in the District of Columbia. Also located in the District of Columbia are numerous Trustees of the Fund, the members of the Fund staff involved in calculating the delinquencies and the Fund auditor, who will testify to the issues central to this case.

9.    Additionally, Gary Meyers, the Fund Administrator, would be greatly inconvenienced if required to testify in Ohio on this matter. The Fund currently has over seventy-four thousand (74,000) participants and serves over twenty-four thousand (24,200) retirees and beneficiaries who receive benefits. There are currently approximately three thousand five hundred (3,500) employers nationwide who make contributions to the Pension Fund. In 2006, approximately three thousand (3,000) of the contributing employers located through out the country were delinquent at some time during the year. In 2006, the Fund referred approximately one hundred (100) delinquencies to Fund counsel for collection. Of those, forty-three (43) resulted in litigation. If required to travel to testify in venues outside the District of Columbia,

Mr. Meyers would hardly have time for anything other than attending to the numerous Fund litigations scattered around the country.

10.    I have executed this Declaration in support of Plaintiff's Memorandum of Law In Opposition to Defendant's Motion to Dismiss Amended Complaint Or, In the Alternative, Transfer or Stay the Proceedings and request that this Court consider the same as proof in support of the allegations contained in the Plaintiff's Memorandum of Law in Opposition and other facts stated in this Declaration.

Pursuant to 28 U.S.C. §1746, I declare under Penalty of perjury that the foregoing is true and correct.

Executed on: ___10/24/07___

_____
THOMAS C. MONTEMORE

189126-1                                          4

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| THE PAINTING COMPANY | ) | |
| | ) | CIVIL ACTION |
| Plaintiff, | ) | |
| | ) | No. 2:07-cv-550 |
| vs. | ) | |
| | ) | Judge Graham |
| DISTRICT COUNCIL NO. 9, INTERNATIONAL | ) | |
| UNION OF PAINTERS ANDALLIED TRADES, | ) | Magistrate Judge Kemp |
| A.F.L.-C.I.O., *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

**MOTION TO TRANSFER PLAINTIFF'S COMPLAINT FOR DECLARATORY
JUDGMENT BY INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY
PENSION FUND, ALLIED TRADE LABOR MANAGEMENT COOPERATION FUND,
POLITICAL ACTION TOGETHERNESS FUND AND
THE FINISHING TRADES INSTITUTE FUND**

Defendants, International Painters and Allied Trades Industry Pension Fund, Allied Trade

Labor Management Cooperation Fund, Political Action Togetherness Fund and Finishing Trades

Institute Fund (together referred to as "Defendants") by and through their undersigned counsel,

hereby move the Court pursuant to 29 U.S.C. §1404(a) to transfer Plaintiff's Complaint for

Declaratory Judgment to the United Stated District Court for the District of Columbia. The bases

for this Motion are further set forth in the accompanying Memorandum of Law which is

incorporated as if set forth at length herein.

WHEREFORE, the Court should transfer the Complaint For Declaratory Judgment

against Defendants.

Respectfully submitted,

JENNINGS SIGMOND, P.C.

BY: /s/ Richard B. Sigmond
    RICHARD B. SIGMOND
    admitted *Pro Hac Vice*
    SANFORD G. ROSENTHAL
    admitted *Pro Hac Vice*
    The Penn Mutual Towers, 16th Floor
    510 Walnut Street, Independence Square
    Philadelphia, PA 19106-3683
    Tel. (215) 351-0609/0611
    Fax. (215) 922-3524
    Attorneys for the Funds

BY: /s/ Joseph J. Allotta
    Joseph J. Allotta
    jallotta@afwlaw.com
    ALLOTTA, FARLEY & WIDMAN CO., L.P.A.
    2222 Centennial Road
    Toledo, OH 43617
    Tel. (419) 535-0075
    Fax: (419) 535-1935
    Attorney for All Defendants

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| THE PAINTING COMPANY | ) | |
| | ) | CIVIL ACTION |
| Plaintiff, | ) | |
| | ) | No. 2:07-cv-550 |
| vs. | ) | |
| | ) | Judge Graham |
| DISTRICT COUNCIL NO. 9, INTERNATIONAL | ) | |
| UNION OF PAINTERS ANDALLIED TRADES, | ) | Magistrate Judge Kemp |
| A.F.L.-C.I.O., *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER VENUE BY INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND, ALLLIED TRADES LABOR MANAGEMENT COOPERATION FUND, POLITICAL ACTION TOGETHERNESS FUND AND THE FINISHING TRADES INSTITUTE FUND**

**INTRODUCTION**

This declaratory judgment action has been instituted by The Painting Company ("TPC" or "Plaintiff") against various Painters funds ("Funds" or "Defendants") and unions ("Unions") under the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 301, and the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1132(e)(2), in an apparent effort to end run an ERISA collection action filed by the defendant Funds against Plaintiff in the District of Columbia ("D.C. Action"). The Defendants hereby move for the matter to be transferred to the United States District Court for the District of Columbia.

This action should be transferred because under ERISA, the Funds' choice of forum is entitled to substantial deference in view of Congressional intent that collection efforts be efficient and convenient for the Fund. Additionally, the standard factors governing discretionary

187760-2                                        1

transfer demonstrate that venue is most appropriate in the District of Columbia. Finally, Plaintiff is using this declaratory action to circumvent ERISA; and, as we shall demonstrate, when employers have utilized the "tactical maneuver" of a declaratory action that effort has been rejected by the court. *See*, *AmSouth Bank v. Dale*, 386 F.3d 763 (6th Cir. 2004).

## STATEMENT OF FACTS

On August 18, 2005, The Painting Company ("TPC" or "Plaintiff") executed a collective bargaining agreement ("Labor Agreement") with the IUPAT District Council No. 9 ("DC 9") covering the period May 1, 2005 through April 30, 2011. *See* Amended Complaint, Exhibit A. TPC also executed a Labor Agreement with IUPAT District Council 711 ("DC 711") on August 4, 2006 for the period May 1, 2006 through April 30, 2011. *See* Amended Complaint, Exhibit C. TPC executed a third Labor Agreement with IUPAT District Council 15 ("DC 15") on September 27, 2006 for the period July 1, 2004 through June 30, 2007. *See* Amended Complaint, Exhibit B. All the Labor Agreements executed by TPC bind TPC to the Fund's Trust Agreement ("Trust") and the International Painters and Allied Trades Industry Pension Plan ("Plan") adopted by the Fund's Trustees. *See* Amended Complaint, Exhibit A, p. 27 (Art. XX § 3), p. 34 (Art. XX §12(b), Exhibit B, p.15 (Art. 8 §1(d)), Exhibit C, p.23 (Art.10.3 §1(E)).

The Labor Agreements, Trust Agreement and Plan require TPC to submit monthly contributions to the Pension Fund on behalf of all employees in the bargaining unit. *See* Amended Complaint, Exhibit A, p. 28 (Art. XX § 3(a)), Exhibit B, p.14 (Art.8 §1). Contributions must be made for each hour for which any employee receives pay at the contribution rate specified in the agreement. *See* Amended Complaint, Exhibit A, p. 27 (Art. XX § 2(a)), Exhibit B, p.14 (Art.8 §1(a)), Exhibit C, p.24 (Art. 10.3 §1(B)).

187760-2                                2

Each of the Labor Agreements includes provisions for the resolution of grievances and disputes which arise between the parties as to the interpretation and application of the Agreement which the employer and the union are obligated to follow. *See* Amended Complaint, Exhibit A, p. 17 (Art. XIII), Exhibit B, pp. 44-45 (Art. 24 §6(b)), Exhibit C, p. 31 (Art.17.3).

As part of their obligation to the Pension Fund that they administer, the Trustees are empowered to perform periodic audits on each and every signatory employer in order to ascertain the employer's compliance with the applicable collective bargaining agreement. *See* Amended Complaint, Exhibit A, p. 36 (Art. XXI § 1(a)), Exhibit B, p.15 (Art.8 §3).    In relevant part, the D.C. 9 Labor Agreement states:

> The Signatory Employers agree that the Trustees shall have the authority to have an independent Certified Public Accountant audit the payroll records, payroll tax returns, cash disbursement records, bank statements, vendor invoices and any and all union reports for all other trades, wages, and general ledger of any Signatory employer for the purpose of determining the accuracy of such contributions[.]

Amended Complaint, Exhibit A, p. 35 (Art. XXI § 1(a)).[1]    Pursuant to this power, the Fund conducted an audit for the period September 1, 2005 through December 31, 2006 which revealed a delinquency in the amount of $527,587.35.    On May 30, 2007, counsel for the Fund sent a letter on behalf of itself and the other Fund defendants to TPC advising it of the delinquency and allowing TPC the opportunity to pay or dispute the audit findings within ten (10) days. *See* Amended Complaint, Exhibit D.  The letter also clearly advised TPC that the Fund would file suit if the claim was not promptly resolved. *Id.* ("Absent my hearing from you and our reaching agreement on a procedure for resolving this delinquency, the Funds will have no alternative but

---

[1] A similar provision is set forth in the DC 15 collective bargaining agreement, *see* Amended Complaint, Exhibit B, p. (Art. 8 §3) ("All contributions shall be made at such time and in such manner as the trustees require; and the trustee may at any time conduct an audit in accordance with Article V Section 6 of the said Agreement and Declaration of Trust.").

187760-2                              3

to commence an appropriate collection action in the United States District Court for the District of Columbia.").

Four days after the expiration of the ten-day period, on June 14, 2007, Defendant, International Painters and Allied Trades Industry Pension Fund ("Fund") filed an action, on behalf of itself and the other Fund Defendants, under 29 U.S.C. §§ 1132 and 1145 to recover TPC delinquencies, *see*, International Painters and Allied Trades Industry Pension Fund v. The Painting Company, Civil Action No 1:07-cv-1070 (DDC) (hereinafter "D.C. Action").[2]   In the meantime, prior to the end of the ten-day period, and with full knowledge and notice that the Fund intended to file an action against it, TPC filed a Complaint for Declaratory Judgment in this Court seeking to raise, in this Court, defenses that it also will raise in the D.C. Action.   On August 15, 2007, TPC filed an Amended Complaint for Declaratory Judgment and Damages. *See* Amended Complaint. The Defendants now seek transfer of TPC's Amended Complaint.

## ARGUMENT

I.     **The Funds' Choice of Venue is Entitled to Deference Because the Venue Provision Of ERISA Reflects a Congressional Intent That Pension Fund Collection Efforts Be Efficient For the Fund.**

The Defendant Funds are administered in the District of Columbia. *See* Declaration of Thomas C. Montemore, Assistant to the Fund Administrator, ¶2 ("Montemore Declaration").[3] ERISA's applicable venue provision thus directly confers venue on the United States District Court for the District of Columbia to hear this action to collect employer delinquencies:

> Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found.

---

2 A copy of this Complaint is attached to the Fund Defendants Motion to Dismiss.
3 The Montemore Declaration is attached as Exhibit 1.

187760-2                                         4

29 U.S.C. § 1132 (e) (2) (emphasis added).   This provision is not mere surplusage, to be ignored whenever an employer happens to reside or operate in another district.   Rather, it reflects a Congressional intent to foster the continued viability of employee benefit plans and to promote the efficient collection of employer obligations by permitting a fund to choose the appropriate forum and to litigate all legal actions in one central location:

> The enforcement provisions have been designed specifically to provide both the Secretary and participants and beneficiaries with broad remedies for redressing or preventing violation of the Act.  The intent of the Committee is to provide the full range of legal and equitable remedies available in both state and federal courts and to remove jurisdictional and procedural obstacles which in the past appear to have hampered effective enforcement of fiduciary responsibilities under state law for recovery of benefits due to participants.

H.R. Rep. No. 533, 93d Cong., 1st Sess. (1973), *reprinted in* 1974 U.S. Code Cong. & Admin. News 4639, 4655;[4] *see also, International Brotherhood of Painters and Allied Trades Union v. Best Painting And Sandblasting Co., Inc.*, 621 F. Supp. 906, 907 (D.D.C. 1985) ("Congress has enacted a special venue provision to allow multiemployer pension plans to more efficiently collect delinquent contributions"); *Employees Savings Plan of Mobil Oil Corp. v. Vickery*, 99 F.R.D. 138, 144 (S.D.N.Y. 1983) ("one relevant factor" in the decision "whether to transfer a case on the basis of convenience" is " the goal of efficient administration of ERISA plans").

These policy goals are clearly implicated in the instant case.   The Fund has approximately three thousand five hundred (3,500) employers that make contributions to it each

---

4 Congress reiterated its intent when it amended the statute in 1980 to enhance the funds' ability to recoup delinquent contributions.  Congress was concerned that the collection enforcement provisions "should have teeth," because of the "serious problem" created by employers that fail to "make promised contribution[s] in a timely fashion, "thus imposing a variety of costs'" on plans. *Carpenters Amended & Restated Health Benefit Fund v. John W. Ryan Constr. Co.*, 767 F. 2d 1170, 1173-74 (5th Cir. 1985) (citations omitted) (quoting Staff of Senate Comm. on Labor and Human Resources, 96th Cong.

187760-2                                    5

year. *See* Montemore Declaration ¶9. In 2006, approximately 3,000 Pension Fund employers located throughout the country were delinquent at some time during the year. *Id.* The Funds referred approximately one hundred (100) delinquencies to Fund counsel for collection in 2006, forty three (43) of which resulted in litigation. *Id.* If the administrator of the Funds, indeed of every national pension plan, were compelled to travel across the country to testify at each trial or hearing for every delinquency case, the collection process so carefully crafted by Congress would be brought to a standstill. Moreover, if each of the approximately 3,000 employers who received a letter from the Fund regarding their delinquencies during 2006 filed a declaratory judgment action, the courts would be inundated with needless litigation.

Recognizing the important policy goals at stake, the overwhelming majority of courts faced with employer motions to transfer ERISA collection cases from the fund's home forum have refused to grant such transfers. *See, e.g., International Painters and Allied Trades Industry Pension Fund v. Tri-State Interiors, Inc.*, 357 F.Supp. 2d 54, 56 (D.D.C. 2004) (recognizing "special circumstances surrounding ERISA litigation"); *International Brotherhood of Painters v. Johnson Bros. Corp.*, No. 94-08061994 WL 808069, at *2 (D.D.C. Aug. 18, 1994) (relying on ERISA's "special venue provision"); *Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) Pension Fund v. Brotherhood Labor Leasing*, No. 93 C 1803, 1993 WL 385133, at *2 (N.D. Ill. Sept. 27, 1993) ("in the context of an ERISA case, the [fund's] choice of forum is especially significant"); *Southeast and Southwest Areas Health and Welfare Fund v. Pathology Laboratories*, No. 92 C. 4141, 1992 WL 396294 at *1 (N.D. Ill. Dec. 24, 1992) (noting special deference owed to the fund's choice of forum); *Trustees of Hotel Employees v. Amivest Corp.*, 733 F. Supp. 1180, 1182 (N.D. Ill. 1990) ("The ERISA venue provision is to be

liberally interpreted; Congress intended to expand, rather than restrict, the ERISA [fund's] choice of forum."); *Dugan v. M & W Dozing & Trucking, Inc.*, 727 F. Supp. 417, 419 (N.D. Ill. 1989) (To force fund to litigate in employer's chosen forum would "undermine the Congressional intent to protect the financial integrity of employee benefit plans. If the trustees were forced to litigate everywhere where an employer resided, this would result in undue hardship and expense to the funds.")[5]

Courts have applied the same rationale in cases interpreting the venue provision for ERISA withdrawal liability actions, 29 U.S.C. § 1451 (d), containing the identical pertinent language. *See, e.g., Combs v. Adkins & Adkins Coal Co.*, 597 F. Supp. 122, 125 (D.D.C. 1984) (finding it makes "good sense" for case to remain where the plans are administered); *Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc.*, No. 94 C. 811, 1994 WL 374245 at *2 (N.D. Ill. July 14, 1994) ("Congress aimed to reduce pension funds' litigation expenses").[6]

Based on the overwhelming authority affording deference to a fund's choice of forum under ERISA, the court should grant Defendants' motion to transfer.

---

5 *See also Board of Trustees, Sheet Metal Workers' Nat'l Fund v. Baylor Heating & Air Conditioning, Inc.*, 702 F. Supp. 1253, 1256 (E.D. Va. 1988) (noting "policy rationale" for granting fund's venue selection deference); *Trustees of Nat'l Asbestos Workers Pension Fund and Medical Fund v. Lake Erie Insulation Co.*, 688 F. Supp. 1059, 1060 (D. Md. 1988) (noting "policy of Congress... to facilitate enforcement of ERISA and minimize the expense to the Trustees and the fund in collecting delinquent payments"); *Trustees of Nat'l Automatic Sprinkler Industry Pension Fund v. Best Automatic Fire Protection, Inc.*, 578 F. Supp. 94, 95 (D. Md. 1983) (relying on Congress' intent "to provide ERISA participants and beneficiaries...ready "to provide ERISA participants and beneficiaries... ready access to the Federal courts" (citation omitted).
6 *See also Vartanian v. Monsanto Co.*, 880 F. Supp. 63, 73 (D. Mass. 1995) ("Congress' intent in drafting ERISA's liberal venue provision was to expand an ERISA [fund's] choice of forum and limit the forum choice of corporate fiduciaries").

II.    **The Standard Factors Governing Discretionary Transfer Demonstrate That Venue is Most Appropriate in the District of Columbia.**

Given the specific venue provision applicable to ERISA delinquency collection cases, the Court need not address the criteria of the general federal transfer provision. However, even under that general provision (28 U.S.C. § 1404 (a)), Defendants will show that "the balance of considerations tilts strongly in [their] favor." *Kansas City Bricklayers Employees Pension Fund v. Jerry Bennett Masonry Contractor, Inc.*, 703 F. Supp. 883, 884 (D. Kan. 1988).

a.    **The Funds' Choice of Forum Is Entitled to Great Weight**

Plaintiff's choice of forum in this declaratory judgment action is entitled to no weight; rather, it is the Funds' choice of forum that is significant under ERISA. In *Best Painting*, the court denied the employer's transfer motion, finding that the pension fund's "choice of forum is due substantial deference and, unless the balance of convenience is strongly in favor of the [employers], should rarely be disturbed." 621 F. Supp. at 907; *see also, Amivest*, 733 F. Supp. at 1183 ("A district court considering a motion to transfer an ERISA case should be sensitive to the congressional intent to protect the financial integrity of employee benefit plans and the well being of participants and beneficiaries. Unless it is clearly outweighed by other factors, the Trustees' choice of forum is entitled to deference." (citations omitted)).

Additionally, since the daily administration of the Funds takes place in the District of Columbia, and the Funds have no offices elsewhere, "a [fund's] choice of his home forum for venue purposes is given greater weight that [an employer's] choice of the foreign forum." *Board of Trustees of Sheetmetal Workers National Fund v. Baylor Heating & Air Conditioning*, 702 F. Supp. 1253, 1256 (E.D.Va 1988).[7]

---

7 *See also Dugan*, 727 F. Supp. at 419.

**b. When There is Inconvenience on Each Side, The Funds' Choice of Forum Prevails.**

While TPC will no doubt claim that its witnesses reside in Ohio, the Funds assert a similar position with respect to their witnesses. *See* Montemore Declaration ¶¶8, 9. When there is inconvenience on each side, the courts have ruled in favor of the fund's choice of forum:

> The majority of the Trustees, their witnesses and their documentary evidence are located in this district. If these were the only factors to be weighed, the scale would be virtually balanced. However, the congressional intent in favor of the financial integrity of employee benefit plans tips the scale radically in favor of the Trustees. If forced to litigate in [a distant forum], the pension funds would be burdened with significant additional expense and managerial hardship. This, in turn, could threaten the well being of the participants and their beneficiaries. The ERISA venue provision was intended to prevent this type of burden.

*Amivest*, 733 F. Supp. at 1183; *see also, Best Painting*, 621 F. Supp. at 908.

Here, the underlying facts regarding the delinquency of TPC will be documented through reports which it submitted to the Funds and the audit conducted on behalf of the Funds, which are located in the District of Columbia. *See* Montemore Declaration ¶8. Also located in the District of Columbia are the members of the Funds staff involved in calculating the delinquencies, who will testify to the issues central to the case. *Id.* Further, the Administrator of the Funds, which have over seventy-four thousand (74,000) participants and serve over twenty-four thousand (24,200) retirees and beneficiaries, would be greatly inconvenienced if required to testify in Ohio. *Id.* ¶9. Indeed, if TPC's arguments were accepted, the Fund Administrator would have time for nothing other than attending to the numerous (43 in 2006) Fund litigations scattered around the country. *Id.* ¶9.

**III.    Plaintiff's Declaratory Action is Nothing More Than a Tactical Maneuver in an Attempt to Circumvent ERISA.**

The declaratory judgment statute does not confer on Plaintiff any greater right of action than Plaintiff otherwise would have had under ERISA or the LMRA.    Under ERISA this employer has no standing to bring an action pertaining to the collection of delinquent employer contributions. 29 U.S.C. §1132.    Furthermore, under the LMRA subject matter jurisdiction is lacking because the Funds are not a party that may be sued under section 301(a).    Thus it becomes clear that this action is nothing more than "procedural jousting" which is strongly disfavored by the courts.

Under section 1132(e) of ERISA, employers are not among the specifically enumerated parties who may bring an action regarding delinquency claims of benefit plans.    29 U.S.C. §1132(e) (limiting claims to be brought by "the Secretary", a "participant", "beneficiary" or "fiduciary"); *see e.g. Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272 (6th Cir. 1991). Furthermore, Congress designed section 515 of ERISA to permit trustees of employee benefit plans to recover contributions efficaciously. *See, Agathos v. Starlite Motel*, 977 F.2d 1500, 1505 (3d Cir. 1992) *citing* 126 Cong.Rec. 23039 (1980) (remarks of Rep. Thompson). Thus, it is clear that Plaintiff lacks standing to bring this action against the Funds under ERISA.

Plaintiff cannot sue the Funds under 301(a) of the LMRA because the Fund is not a "labor organization" within the plain meaning of the statute.    Section 301(a) provides for "suits for violations of contracts between an employer and a labor organization." 29 U.S.C. §185(a). The term "labor organization" is defined as follows:

> [A]ny organization of any kind, or any agency or employee representation committee or plan, in which employees participate and <u>which exists for the</u>

> <u>purpose, in whole or in part, of dealing with employers concerning grievances,</u>
> <u>labor disputes, wages, rates of pay, hours of employment, or conditions of work.</u>

29 U.S.C. § 152(5) (*emphasis added*). The Funds do not fit this definition as the Supreme Court

concluded in *NLRB v. Amax Coal Corp.*, 453 U.S. 322 (1981). *See also McCafferty v. Rex*

*Motor Transp. Inc.*, 672 F.2d 246 (1st Cir. 1982).

In addition, Plaintiff cannot sue the Funds under § 301(a) of the LMRA because the

Funds are a third party beneficiary to the underlying contract. Section 301(a) actions may only

be brought <u>against parties</u> to the underlying collective bargaining agreement. *Loss v.*

*Blankenship*, 673 F. 2d 942 (7th Cir. 1982). The Supreme Court in *Schneider v. Moving &*

*Storage Co. v. Robbins et al.*, 466 U.S. 364 (1984), held that the trustees of a multiemployer

benefit fund were not bound by the arbitration clauses in the collective bargaining agreement

because they were third-party beneficiaries. *Schneider*, 466 U.S. at 370, 373-374, 376. Here,

TPC's attempt to force the Funds into litigating this "contract" action must fail just as the attempt

to force the arbitration in *Schneider* failed.

In *Smith v. Evening News Association*, 371 U.S. 195, 200 (1962), the Supreme Court

recognized the rights of employees, who were third party beneficiaries of the collective

bargaining agreement, to sue their employer to enforce the terms of the contract because they

were the intended beneficiaries. However, there is no concomitant right for an employer to sue a

non-party or third party beneficiary such as the Funds under the LMRA. *See Loss*, 673 F.2d at

947 n.3. Application of this limitation to this case is reasonable since the Funds have no

obligation running to TPC which they could, or did, breach. Since the federal courts are courts

of limited jurisdiction, the rules set out in *Smith* and *Loss* make it clear that Plaintiff lacks

subject matter jurisdiction under the LMRA.

187760-2                                        11

It is clear that Plaintiff's filing of this action was a blatant attempt at forum-shopping, designed to defeat the Funds statutorily-favored venue. To keep this action in this Court would not only be in contravention of clear Congressional policy favoring the Funds' choice of venue, but it would reward the Plaintiff for playing a procedural game in order to secure a more favorable forum. *See, Best Painting*, 621 F.Supp. at 908 (denying motion to transfer ERISA collection action despite pendency of earlier filed declaratory judgment action.).

## CONCLUSION

Given the ERISA venue statute, the great weight traditionally afforded to a fund's choice of forum, the inconvenience to the Funds of litigating in Ohio, the Plaintiff's lack of standing to bring this action under ERISA, and the lack of subject matter jurisdiction under the LMRA this action should be transferred to the District of Columbia.

Respectfully submitted,
JENNINGS SIGMOND, P.C.

BY: /s/ Richard B. Sigmond
RICHARD B. SIGMOND
admitted *Pro Hac Vice*
SANFORD G. ROSENTHAL
admitted *Pro Hac Vice*
The Penn Mutual Towers, 16th Floor
510 Walnut Street, Independence Square
Philadelphia, PA 19106-3683
Tel. (215) 351-0609/0611
Fax. (215) 922-3524
Attorneys for the Funds

BY: /s/ Joseph J. Allotta
JOSEPH J. ALLOTTA
jallotta@afwlaw.com
ALLOTTA, FARLEY & WIDMAN CO., L.P.A.
2222 Centennial Road

Toledo, OH  43617
Tel. (419) 535-0075
Fax: (419) 535-1935
Attorney for All Defendants

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| THE PAINTING COMPANY | ) | |
| | ) | CIVIL ACTION |
| Plaintiff, | ) | |
| | ) | No. 2:07-cv-550 |
| vs. | ) | |
| | ) | Judge Graham |
| DISTRICT COUNCIL NO. 9, INTERNATIONAL | ) | |
| UNION OF PAINTERS AND ALLIED TRADES, | ) | Magistrate Judge Kemp |
| A.F.L.-C.I.O., *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR DECLARATORY
JUDGMENT BY INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY
PENSION FUND, ALLIED TRADE LABOR MANAGEMENT COOPERATION FUND,
POLITICAL ACTION TOGETHERNESS FUND AND THE FINISHING TRADES
INSTITUTE FUND PURSUANT TO FED. R. CIV. P. 12(b)(1) and (6)

Defendants, International Painters and Allied Trades Industry Pension Fund, Allied Trade

Labor Management Cooperation Fund, Political Action Togetherness Fund and Finishing Trades

Institute Fund (together referred to as "Defendants") by and through their undersigned counsel,

hereby move the Court pursuant to Fed. Civ. P. 12(b)(1) and (6) to dismiss Plaintiff's

Complaint for Declaratory Judgment because the Court lacks jurisdiction over the claims set

forth in the Complaint and because the Plaintiff's Complaint otherwise fails to state a claim upon

which relief can be granted. The bases for this Motion are further set forth in the accompanying

Memorandum of Law which is incorporated as if set forth at length herein.

WHEREFORE, the Court should dismiss the Complaint For Declaratory Judgment against Defendants, with prejudice with costs and reasonable attorneys' fees assessed against the Plaintiff.

Respectfully submitted,

JENNINGS SIGMOND, P.C.

BY: /s/ Richard B. Sigmond
RICHARD B. SIGMOND
admitted *Pro Hac Vice*
SANFORD G. ROSENTHAL
admitted *Pro Hac Vice*
The Penn Mutual Towers, 16th Floor
510 Walnut Street, Independence Square
Philadelphia, PA 19106-3683
Tel. (215) 351-0609/0611
Fax. (215) 922-3524
Attorneys for the Funds

BY: /s/ Joseph J. Allota
JOSEPH J. ALLOTTA
jallotta@afwlaw.com
ALLOTTA, FARLEY & WIDMAN CO., L.P.A.
2222 Centennial Road
Toledo, OH 43617
Tel. (419) 535-0075
Fax: (419) 535-1935
Attorney for All Defendants

187599-1

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| THE PAINTING COMPANY | ) | |
| | ) | CIVIL ACTION |
| Plaintiff, | ) | |
| | ) | No. 2:07-cv-550 |
| vs. | ) | |
| | ) | Judge Graham |
| DISTRICT COUNCIL NO. 9, INTERNATIONAL | ) | |
| UNION OF PAINTERS AND ALLIED TRADES, | ) | Magistrate Judge Kemp |
| A.F.L.-C.I.O., *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS BY INTERNATIONAL
PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND, ALLIED TRADES
LABOR MANAGEMENT COOPERATION FUND, POLITICAL ACTION
TOGETHERNESS FUND AND THE FINISHING TRADES INSTITUTE FUND**

**INTRODUCTION**

This declaratory judgment action has been instituted by The Painting Company ("TPC"

or "Plaintiff") against various Painters funds ("Funds" or "Defendants") and unions ("Unions")

under the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 301 in an apparent effort to

end run an ERISA collection action filed by the defendant Funds against Plaintiff in the United

States District Court for the District of Columbia ("D.C. Action"). In this case, TPC seeks,

inappropriately, to litigate its "defenses" to the D.C. Action in this Court while the same

arguments along with other important issues are pending in the District of Columbia.

This action should be dismissed because the declaratory judgment statute does not confer

on Plaintiff any greater right of action than Plaintiff otherwise would have had under the LMRA

or ERISA. Under the LMRA, subject matter jurisdiction is lacking in this Court because the

188063-1                                       1

Funds are not a party that may be sued under section 301(a). Additionally, under ERISA, this employer has no standing to bring an action (declaratory or otherwise) pertaining to the collection of delinquent employer contributions. 29 U.S.C. § 1132. Moreover, as we shall demonstrate, when employers have utilized the "tactical maneuver" of a declaratory action, that effort has been rejected by the court. *See, AmSouth Bank v. Dale*, 386 F.3d 763 (6th Cir. 2004).

## STATEMENT OF FACTS

On August 18, 2005, The Painting Company ("TPC" or "Plaintiff") executed a collective bargaining agreement ("Labor Agreement") with the IUPAT District Council No. 9 ("DC 9") covering the period May 1, 2005 through April 30, 2011. *See* Amended Complaint, Exhibit A. TPC also executed a Labor Agreement with IUPAT District Council 711 ("DC 711") on August 4, 2006 for the period May 1, 2006 through April 30, 2011. *See* Amended Complaint, Exhibit C. TPC executed a third Labor Agreement with IUPAT District Council 15 ("DC 15") on September 27, 2006 for the period July 1, 2004 through June 30, 2007. *See* Amended Complaint, Exhibit B. All the Labor Agreements executed by TPC bind TPC to the Fund's Trust Agreement ("Trust") and the International Painters and Allied Trades Industry Pension Plan ("Plan") adopted by the Fund's Trustees. *See* Amended Complaint, Exhibit A, p. 27 (Art. XX § 3), p. 34 (Art. XX §12(b), Exhibit B, p.15 (Art. 8 §1(d)), Exhibit C, p.23 (Art.10.3 §1(E)).

The Labor Agreements, Trust Agreement and Plan require TPC to submit monthly contributions to the Pension Fund on behalf of all employees in the bargaining unit. *See* Amended Complaint, Exhibit A, p. 28 (Art. XX § 3(a)), Exhibit B, p.14 (Art.8 §1). Contributions must be made for each hour for which any employee receives pay at the

contribution rate specified in the agreement. *See* Amended Complaint, Exhibit A, p. 27 (Art. XX § 2(a)), Exhibit B, p.14 (Art.8 §1(a)), Exhibit C, p.24 (Art. 10.3 §1(B)).

Each of the Labor Agreements includes provisions for the resolution of grievances and disputes which arise between the parties as to the interpretation and application of the Agreement which the employer and the unions are obligated to follow. *See* Amended Complaint, Exhibit A, p. 17 (Art. XIII), Exhibit B, pp. 44-45 (Art. 24 §6(b)), Exhibit C, p. 31 (Art.17.3).

As part of their obligation to the Pension Fund that they administer, the Trustees are empowered to perform periodic audits on each and every signatory employer in order to ascertain the employer's compliance with the applicable collective bargaining agreement. *See* Amended Complaint, Exhibit A, p. 36 (Art. XXI § 1(a)), Exhibit B, p.15 (Art.8 §3).   In relevant part, the D.C. 9 Labor Agreement states:

> The Signatory Employers agree that the Trustees shall have the authority to have an independent Certified Public Accountant audit the payroll records, payroll tax returns, cash disbursement records, bank statements, vendor invoices and any and all union reports fro all other trades, wages, and general ledger of any Signatory employer for the purpose of determining the accuracy of such contributions[.]

Amended Complaint, Exhibit A, p. 35 (Art. XXI § 1(a)).[1]   Pursuant to this power, the Fund conducted an audit for the period September 1, 2005 through December 31, 2006 which revealed a delinquency in the amount of $527,587.35.   On May 30, 2007, counsel for the Fund sent a letter on behalf of itself and the other Fund defendants to TPC advising it of the delinquency and allowing TPC the opportunity to pay or dispute the audit findings within ten (10) days. *See* Amended Complaint, Exhibit D. The letter also clearly advised TPC that the Fund would file suit

---

[1] A similar provision is set forth in the DC 15 collective bargaining agreement, *see* Amended Complaint, Exhibit B, p. (Art. 8 §3) ("All contributions shall be made at such time and in such manner as the trustees require; and the trustee may at any time conduct an audit in accordance with Article V Section 6 of the said Agreement and Declaration of Trust.").

if the claim was not promptly resolved. *Id.* ("Absent my hearing from you and our reaching agreement on a procedure for resolving this delinquency, the Funds will have no alternative but to commence an appropriate collection action in the United States District Court for the District of Columbia.").

Four days after the expiration of the ten-day period, on June 14, 2007, Defendant, International Painters and Allied Trades Industry Pension Fund ("Fund") filed an action, on behalf of itself and the other Fund Defendants, under 29 U.S.C. §§1132 and 1145 to recover TPC delinquencies, *see* International Painters and Allied Trades Industry Pension Fund v. The Painting Company, Civil Action No 1:07-cv-1070 (DDC) (hereinafter "D.C. Action").[2]  In the meantime, prior to the end of the ten-day period, and with knowledge and notice that the Fund intended to file an action against it, TPC filed a Complaint for Declaratory Judgment in this court seeking to raise, in this Court, defenses that it also will raise in the D.C. Action.  On August 15, 2007, TPC filed an Amended Complaint for Declaratory Judgment and Damages. *See* Amended Complaint.   The Defendants seek dismissal of TPC's Amended Complaint.

## ARGUMENT

Plaintiff's action is in essence an attempt to raise and litigate in this court its defenses to the Fund's pending ERISA action in the District of Columbia.  This is a declaratory judgment action instituted pursuant to 28 U.S.C. § 2201, et seq.   It is well established that there is no independent basis for jurisdiction under the Declaratory Judgment Act ("Act"); rather a party may only bring an action under the Act if an independent basis of federal jurisdiction exists between the parties. *See, Skelly Oil Co. v. Phillips Petroleum Co.*, 330 U.S. 667 (1950); *Stanley v. Avery*, 387 F.2d 637 (6th Cir. 1968).   Plaintiff claims that an independent basis of federal

---

[2] A copy of this complaint is attached for convenient reference by the Court.

188063-1                                                    4

subject matter jurisdiction exists under section 301(a) of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a), and section 1132(e)(2) of ERISA, 29 U.S.C. §1132(e)(2). Amended Complaint, p. 4. Plaintiff's theory of subject matter jurisdiction has several fatal flaws: (1) Plaintiff is misusing the declaratory judgment act in a thinly veiled tactical attempt to circumvent ERISA under which it has no defense and, in doing so, Plaintiff is engaging in "procedural jousting" and the proverbial "rush to the courthouse" to gain a convenient forum; (2) the Funds are not a "labor organization" under § 301 of the LMRA; (3) and the Funds are not a party that may be sued under §301 of the LMRA.

I.    **The Complaint Should be Dismissed Because Plaintiff is Misusing the Declaratory Judgment Act in an Attempt to Circumvent ERISA.**

   a.  <u>Declaratory Judgment Act</u>

The Declaratory Judgment Act states that a court "*may* declare the rights and other legal relations" of a party seeking a declaratory judgment. 28 U.S.C. §2201 (emphasis added). A court is "under no compulsion" to exercise declaratory judgment jurisdiction. *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 494 (1942).

The purpose of the Act is to "afford an added remedy to one who is uncertain of his rights and who desires an early adjudication thereof without having to wait until his adversary should decide to bring suit and to act at his peril in the interim." *Shell Oil Co. v. Frusetta*, 290 F.2d 689, 692 (9th Cir. 1961). Put another way, the purpose of declaratory judgments are to "terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Eli's Chicago Finest, Inc. v. Cheesecake Factory, Inc.*, 23 F.Supp.2d 906, 907 (N.D.Ill., 1998)(quoting *Tempco Electric Heater Corp. v. Omega Engineering*, 819 F.2d 746, 749 (7th Cir.

1987)(internal citation omitted).   This case stands the unequivocal purpose of the Act on its head

and should be dismissed.

The United States Court of Appeals for the Sixth Circuit has adopted the following five

factor test that courts must consider when determining whether to exercise jurisdiction over a

declaratory judgment action:

> (A) whether the judgment would settle the controversy; (B) whether the
> declaratory judgment action would serve a useful purpose in clarifying the legal
> relations at issue; (C) whether the declaratory judgment remedy is being used
> merely for the purpose of "procedural fencing" or "to provide an arena for a race
> for *res judicata";* (D) whether the use of a declaratory action would increase
> friction between our federal and state courts and improperly encroach on state
> jurisdiction; and (E) whether there is an alternative remedy that is better or more
> effective.

*Internet Transaction Solutions Inc. v. Intel Corp.,* 2006 WL 1281654 (S.D.Ohio 2006) (citing

*AmSouth Bank v. Dale,* 386 F.3d 763, 784 (6th Cir.2004)).  When applied to the present case, the

five factor test shows that this court should not exercise jurisdiction over this matter.

First, the judgment in the case would not settle the entire controversy.   While a judgment

in this case could theoretically assist an interpretation of contract language relating to whether

TPC is obligated to make contributions to the Funds under the out-of-area clauses, the Funds'

collection rights go beyond the intent of the parties to the contract that can be determined under §

301.   *See, Lewis v. Benedict  Coal Co.,* 361 U.S. 459 (1960);  *Bakery and Confectionary Union*

*Industry Intern. Health Benefits and Pension Funds v. New Bakery Co. of Ohio,* 133 F.3d 955,

959 (6th Cir. 1998) ("Because, under section 515 [of ERISA], multiemployer plans are entitled to

rely on the literal terms of written commitments between the plan, the employer, and the union,

the actual intent of and understandings between the contracting parties are immaterial."); *Central*

*Pennsylvania Teamsters Pension Fund v. McCormick Dray Line, Inc.* 85 F.3d 1098 (3d Cir.

1996). Moreover, this action is more limited in scope than the contemporaneous ERISA action pending in the District of Columbia where the court must determine the damages due to the Funds. In addition, the same arguments that TPC seeks to make in this Court can be made in the D.C. Action as part of that court's consideration of the § 515 issues. Therefore, a judgment in this action will not settle the entire controversy.

Second, the judgment would not serve a useful purpose by clarifying the legal relations at issue. The Sixth Circuit has recognized "that the usefulness of a declaratory judgment action is significantly curtailed once a subsequent, coercive suit is filed." *Id.* at *4. (citing *AmSouth,* 386 F.3d at 788 ("where a putative defendant files a declaratory action whose only purpose is to defeat liability in a subsequent coercive suit, no real value is served by the declaratory judgment except to guarantee to the declaratory plaintiff her choice of forum--a guarantee that cannot be given consonant with the policy underlying the Declaratory Judgment Act.")). Here, the Funds have filed an action under ERISA and all issues that TPC seeks to raise here may be raised in the D.C. Action. Therefore, any usefulness the present action may have had is severely curtailed.

Third, this declaratory judgment action clearly was brought merely for the purpose of "procedural fencing" or to provide an arena for a race to the courthouse. The Sixth Circuit has rejected such procedural antics as follows:

> Courts take a dim view of declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a "natural plaintiff" and who seem to have done so for the purpose of acquiring a favorable forum. Allowing declaratory actions in these situations can deter settlement negotiations and encourage races to the courthouse, as potential plaintiffs must file before approaching defendants for settlement negotiations, under pain of a declaratory suit. . . . . . .[W]here a putative defendant files a declaratory action whose only purpose is to defeat liability in a subsequent coercive suit, no real value is served by the declaratory judgment except to guarantee to the declaratory plaintiff her choice of forum--a

> guarantee that cannot be given consonant with the policy underlying the
> Declaratory Judgment Act.

*AmSouth*, 386 F.3d at 788. As explained in *International Union, UAW v. Dana Corporation*,

1999 U.S. Dist. LEXIS 22525 (N.D.Ohio Dec. 6, 1999), "[c]ases construing the interplay

between declaratory judgment actions and suits based on the merits of underlying substantive

claims create, in practical effect, a presumption that the first filed declaratory judgment action

should be dismissed or stayed in favor of the substantive suit." *Dana Corp*, 1999 U.S. Dist.

LEXIS 22525 at *17-18.

This Court has endorsed and adopted the reasoning and conclusion in *Eli's* which is

indistinguishable on this point. *See Intel Corp.* at *5. In *Eli's*, the parties were competitors in

the cheesecake industry. The Cheesecake Factory owned registered trademarks to certain

cheesecake descriptions. It sent a cease and desist letter to the plaintiff, Eli's, threatening legal

action if Eli's did not notify the Cheesecake Factory within ten (10) days of Eli's intent to

comply with the request, *Eli's*, 23 F.Supp. at 906. Six (6) days after receiving the cease and

desist letter, Eli's filed a declaratory judgment action seeking a determination that its use of the

cheesecake descriptions did not interfere with the Defendant's trademark rights. *Id.* Five (5)

days later, the Defendant filed a trademark infringement action against Eli's which involved the

same facts and issues presented in the declaratory judgment action. The court declined to hear

the declaratory judgment action because "the purposes of the Act would be disserved by

exercising jurisdiction over the case at bar." *Eli's*, 23 F.Supp. at 907. "Where... the accused

party has not been unfairly deprived of an opportunity to adjudicate his rights, a declaratory

judgment is not necessary." *Eli's*, 23 F.Supp. at 908.

188063-1                                    8

The rationale of *Eli's* applies precisely to the present case. On May 30, 2007, Defendant sent a letter demanding payment of employer delinquencies found due under an audit. *See* Amended Complaint, Exhibit D. The letter gave Plaintiff ten (10) days to pay the delinquency or notify Defendant of Plaintiff's intent to dispute the audit. *Id.* It further stated that unless Plaintiff contacted Defendant within the ten-day period and made arrangements to resolve the delinquency, Plaintiff would file a collection action in the United States District Court for the District of Columbia. *Id.* Nine (9) days later, on June 8, 2007, Plaintiff filed this Declaratory Judgment Action.

The fourth factor does not apply to this case because both actions are filed in the federal district courts.

Fifth and finally, there exists an alternative remedy that is better and more efficient - the D.C. Action in which all proper issues between the parties may be raised and adjudicated. This court has recognized that in circumstances such as these, "[c]learly, it would be a waste of judicial resources to litigate this dispute in more than one forum. The only question is which forum is most appropriate." *Intel*, at *8. Here, the broader more comprehensive ERISA action pending in the District of Columbia provides a more effective forum for resolving this matter in its entirety. It is in the interest of preserving judicial resources to grant this motion to dismiss and allow the Plaintiff to raise its defenses in the District of Columbia forum.

### b. Plaintiff Lacks Standing to Bring An Action Against the Funds Under §1132 of ERISA

Plaintiff brought this action under the LMRA because it recognized that it has no standing to do so under ERISA. Moreover, even if it could bring a declaratory judgment action

under ERISA, Plaintiff is essentially avoiding the fact that it does not have a valid defense to the Fund's ERISA action.

Congress enacted section 515 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §1145, because the cost to plans of employer delinquencies "detract[ed] from the ability of plans to formulate or meet funding standards and adversely affect[ed] the financial health of plans" and because "[re]course available under current law for collecting delinquent contributions [was] insufficient and unnecessarily cumbersome and costly." *See Agathos v. Starlite Motel*, 977 F.2d 1500, 1505 (3rd Cir. 1992) *citing* 126 Cong.Rec. 23039 (1980) (remarks of Rep. Thompson). Section 515 was designed to permit trustees of plans to recover delinquent contributions efficaciously. *Id.*

The Supreme Court has acknowledged Congress' intent that in the context of ERISA, "a body of Federal substantive law will be developed by the courts to deal with issues involving rights and obligations under private welfare and pension plans." *Franchise Tax Board of the State of California v. Construction Laborers Vacation Trust Fund For Southern California, et al.*, 463 U.S. 1, 24 n. 26 (1983). This is exactly the type of issue Plaintiff raises. In its Amended Complaint for Declaratory Judgment, Plaintiff frames the issue in dispute as follows:

> The dispute between the parties is whether Painting Co. *is contractually obligated to make contributions to the Funds* for work performed outside the scope and jurisdiction of pre-hire agreements Painting Co. entered into with D.C. 9, D.C. 15, and D.C. 711.

*See* Amended Complaint, p. 3 (emphasis added).

Section 1132(e) of ERISA limits the parties who may initiate a civil action with regard to delinquency claims of benefit plans under ERISA to the Secretary of Labor", a "participant", "beneficiary" or "fiduciary." 29 U.S.C.A. § 1132(e). Employers are not among the group with

188063-1                                      10

standing under ERISA. *See, Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272 (6th Cir.1991); *Teagardener v. Republic-Franklin Inc. Pension Plan*, 909 F.2d 947, 951 (6th Cir. 1990); *Great Lakes Steel, Div. of National Steel Corp. v. Deggendorf*, 716 F.2d 1101, 1104 (6th Cir. 1983); *New Jersey State AFL-CIO v. New Jersey*, 747 F.2d 891, 892 (3d Cir.1984) (finding that labor unions are neither participants nor beneficiaries under 29 U.S.C. § 1132(a)(1)(B)). Thus, Plaintiff is either misinformed or mistaken to believe subject matter jurisdiction exists under §1132(e).

In addition, Plaintiff lacks a valid defense to the Funds' ERISA action. *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72 (1982), and its progeny, recognize only three defenses by an employer to enforcement of the terms of the agreement (1) the [fund] contributions themselves are illegal; (2) the collective bargaining agreement is void *ab initio*, as where there is fraud in the execution of the agreement; and (3) the employees have voted to decertify the union as its bargaining representative, thus prospectively voiding the union's collective bargaining agreement. *Kaiser Steel Corp*, 455 U.S. at 86; *See also Plumbers & Pipefitters Local Union No. 572 Health and Welfare Fund v. A & H Mechanical Contractors, Inc.*, 100 Fed. Appx. 396, 402 (6th Cir. 2004); *Agathos*, 977 F.2d 1500. Plaintiff raised none of these defenses.

Plaintiff's claim that it was "fraudulently induced" and as a result, the pre-hire agreements are unenforceable, *see* Amended Complaint, p.13, is not a cognizable defense to the ERISA action by the Funds. The defense of "fraud in the inducement' occurs when a party is induced "to assent to something he otherwise would not have." *Southwest Administrators, Inc. v. Rozay's Transfer*, 791 F.2d 769, 774 (9th Cir.1986). Fraud in the inducement makes the transaction merely voidable and is not a defense to a fund's claim for delinquent contributions,

*Rozay's Transfer*, 791 F.2d at 774-775, absent timely correction through an unfair labor practice charge or similar affirmative proceedings by the employer.[3]

The ERISA defense of "fraud in the execution" arises only when a party executes an agreement "with neither knowledge nor reasonable opportunity to obtain knowledge of its character or essential terms." *Connors v. Fawn Mining Corp.*, 30 F.3d 483, 491 (3d Cir. 1994), In order to assert the defense of fraud in the execution, Plaintiff would have to establish that it did not know that it was entering into a collective bargaining agreement obligating it to contribute to the Fund. *Robbins v. Lynch*, 836 F.2d 330 (7th Cir.1988). Plaintiff admits that it knew it was entering into collective bargaining agreements with D.C. 9, D.C. 15, and D.C. 711 and discussed each pre-hire agreement with a representative of each local union before entering each pre-hire agreement. Amended Complaint, pp. 5-7. It recognized that each pre-hire agreement obligated Plaintiff to make contributions to the Funds. Amended Complaint, pp. 7-8.

Accordingly, the action should be dismissed because Plaintiff is engaging in "procedural jousting" by cloaking its defenses to the Funds' ERISA action in the guise of a LMRA claim for breach of contract. If this procedural game is available to delinquent employers, benefit plans will have no incentive to negotiate a settlement, but will be compelled by litigation tactics to file the case without a warning letter to the employer. To do so, obviates the purpose of ERISA.

---

[3] A employer may file an unfair labor practice under 29 U.S.C. 158(d), 158(b)(3) to obtain execution of a written agreement conforming to the actual intent of the "parties." See, e.g., *N.L.R.B. v. Quinn Restaurant Inc.*, 14 F.3d 811, 815 (2d Cir. 1994). Recognizing the importance of quick action in these cases, Congress has set a limit of six months for filing on such claims under 29 U.S.C. §160(b). Under *Machinists Lodge* 1424 v. N.L.R.B., 362 U.S. 411, 423, 80 S.Ct. 822, 830 (1960), an arguably invalid contract becomes fully enforceable after the time to challenge it through an unfair labor practice has expired. The danger for belated collusion between the union and employer against the benefit plan in the absence of a timely change requires this policy. C.f., *Huge v. Long's Hauling*, 590 F.2d 457, 466, (3d Cir. 1978) (need for prompt correction).

II.    **The Court Lacks Subject Matter Jurisdiction Under Section 301 of the LMRA.**

An employer can not sue an employee benefit fund under section 301(a) of the LMRA

for the following reasons: (1) employee benefit plans do not come within the plain meaning of

"labor organization" under § 301(a) of the LMRA; (2) section 301(a) actions can not be brought

by an employer against a multiemployer benefit fund because, unlike an individual, an employer

is not the intended beneficiary of the statute; and (3) an employee benefit fund can not be sued

by an employer under section 301(a) of the LMRA because the benefit fund is not a party to the

underlying collective bargaining agreement.

   **a.   An Employee Benefit Fund is Not A "Labor Organization" Under Section 301 of the LMRA.**

Section 301(a) of the LMRA provides for "[s]uits for violations of contracts between an

employer and a labor organization."  29 U.S.C. § 185(a).  The term "labor organization" is

defined as follows:

> [A]ny organization of any kind, or any agency or employee representation
> committee or plan, in which employees participate and which exists for the
> purpose, in whole or in part, of dealing with employers concerning grievances,
> labor disputes, wages, rates of pay, hours of employment, or conditions of work.

29 U.S.C. § 152(5) (*emphasis added*).

A multiemployer benefit fund does not fit the definition of a labor organization as defined

in section 152(5) because its purpose is not any of those enumerated in the statute.  In *NLRB v.*

*Amax Coal Corp.*, 453 U.S. 322 (1981), the Supreme Court concluded that a benefit plan is not a

labor organization or an agent of a labor organization.  The First Circuit recognized the same

principle in *McCafferty v. Rex Motor Transp. Inc.*, 672 F.2d 246 (1st Cir. 1982), where, citing

*Amax*, it noted that a benefit fund "does not appear to fall within the definition of a "labor

organization" set forth in 29 U.S.C. s 152(5)." *McCafferty*, 672 F.2d at 249 n.2; *See also, Wall Plastering Company, Inc. v. Trowel Trades Employees Health and Welfare Trust Fund of Dade County et al.*, 1983 WL 2040 (S.D. Fla.). In *American Cleaners and Laundry Co. Inc. v. Textile Processors, Service Trades, Health Care Professional and Technical Employees Intern. Union Local 161.*, 482 F.Supp.2d 1103 (E.D. Mo, 2007), the court likewise held that, "[t]he plain language of 29 U.S.C. [§] 185(a) supports the Fund Defendant's position [that they are not liable under [§] 301 because they are not a party to the collective bargaining agreement], as they are neither an employer nor a labor organization. Therefore they are not subject to the jurisdictional provision of that statute." *American Cleaners*, 482 F.Supp.2d at 1111.

**b. An Employee Benefit Fund Cannot Be Sued By An Employer Under LMRA Section 301(a) Because the Employee Benefit Fund Is Not a Party to The Underlying Contract.**

The Sixth Circuit Court of Appeals has held that "[a] district court does not have subject matter jurisdiction [under §301 of the LMRA] over a non-signatory to a collective bargaining agreement[.]" *United Food and Commercial Workers Local 951, AFL-CIO AND CLC v. Mulder*, 31 F.3d 365, 369 (1994). In *Mulder*, the plaintiff was a union which sought to enforce the terms of an arbitration award on non-union employees. The court rejected the union's argument that subject matter jurisdiction existed under § 301 of the LMRA stating, "[the union] has ignored the inapplicability of §301 to non-signatories to the collective bargaining agreement[.]" *Id.* at 369.

Similarly, in *Loss v. Blankenship*, 673 F. 2d 942 (7th Cir. 1982), the Seventh Circuit Court of Appeals held that section 301(a) actions may be brought only <u>against</u> parties to the underlying collective bargaining agreement. In *Loss*, the plaintiffs were employees who were members of

an employees' union and the union itself. The plaintiffs alleged that the defendant, a "labor relations expert", fostered anti-union sentiment among the employees resulting in the employees' rejection of a proposed collective bargaining agreement and thus violated § 301(a) of the LMRA. The court disagreed because the defendant was not a party to the collective bargaining agreement; he was simply an employee of the employer. *Id. at* 946 (*citing Baker v. Fleet Maintenance, Inc.*, 409 F.2d 551 (7th Cir. 1969)(action under § 301 dismissed for failure to state a claim against employer because employer was not a party to the underlying collective bargaining agreement); *See also, Ramsey v. Signal Delivery Service, Inc.*, 631 F.2d 1210 (5th Cir., 1980)(§ 301 action against employees dismissed because employees were not signatories to underlying collective bargaining agreement). In *Ramsey*, the Fifth Circuit Court of Appeals also refused to permit an action against employees under § 301 of the LMRA because "[§] 301 suits are confined to defendants who are signatories of the collective bargaining agreement under which they are brought." *Ramsey*, 631 F.2d at 1212. Indeed, "[i]t is axiomatic,..., that a [§] 301 suit may be brought only against those who are parties to the contract at issue." *Fabian v. Freight Drivers and Helpers Local No. 557 et al.*, 448 F.Supp. 835, 838 (D.C.Md. 1978)(citations omitted).

Here, the Funds are analogous to the employees in *Mulder*, to the labor relation expert in *Loss*, to the non-participating employer in *Baker* and to the employees in *Ramsey*, because they are not a party to the underlying contract; rather they are merely a third party beneficiary. *See Schneider v. Moving & Storage Co. v. Robbins et al.*, 466 U.S. 364 (1984); *Trustees of Plumbers & Steamfitters Union Local 10 Health & Welfare Fund v. Cook Mechanical*, No. 3:05cv571,

2006 WL 120345 (E.D.Va. Jan. 17, 2006) (citing *Schneder* for same). As a third party beneficiary, the Fund may sue, but may not be sued, under § 301 of the LMRA.

In *Schneider* the Court addressed whether the trustees of a multiemployer trust fund could seek judicial enforcement of the trust terms against a participating employer without first submitting to arbitration an underlying dispute over a term in the collective bargaining agreement. The Court held that they could, rejecting the petitioner employers' argument that the trustees, as third-party beneficiaries, were bound by the arbitration clauses to the same extent as was the Union. *Schneider*, 466 U.S. at 370, 373-374, 376. The Court explained:

> [T]he general rule that the promisor may assert against the beneficiary any defense that he could assert against the promisee if the promisee were suing on the contract . . . is merely a rule of construction useful in determining contractual intent. It should not be applied so inflexibly as to defeat the intent of the parties.

*Schneider*, 466 U.S. at 370-371. Here, the Plaintiff's "contract" action is indistinguishable from the employer's effort to force a benefit plan to arbitrate its delinquency claims that was rejected in *Schneider*. The Funds are not a party to the underlying collective bargaining agreement and cannot be forced into a § 301 contract action by Plaintiff. This "contract" action does not have any more force than the attempted forced arbitration in *Schneider*.

The limited exceptions recognized by courts for non-parties to collective bargaining agreements to sue and be sued under § 301 do not apply here. In *Smith v. Evening News Association*, 371 U.S. 195 (1962) the Supreme Court held that employees, who were third party beneficiaries to the collective bargaining agreement, may sue an employer under § 301 to enforce the terms of the agreement because they are the intended beneficiaries. As the intended beneficiaries they should be able to sue under § 301(a) to enforce their rights. *Smith*, 371 U.S. at 200. "There is, however, no concomitant justification for asserting jurisdiction over suits

against non-parties [to the underlying contract] under the LMRA." *Loss*, 673 F.2d at 947 n.3. In *Loss* the court emphasized that, "a non-party to the original instrument ... is entitled to press for performance of obligations undertaken for his benefit. Thus, these decisions [where courts have allowed suits against non-parties to a contract] can fairly be limited to one owing a 'fiduciary duty' to the plaintiff." *Loss*, 673 F.2d at 948 (quotations omitted).   Here, TPC is an employer not a third party beneficiary; and as such, TPC cannot assert a right to enforce the underlying contract as an intended beneficiary because the Funds do not owe a "fiduciary duty" to TPC.

## CONCLUSION

Given the lack of subject matter jurisdiction under the LMRA, the Plaintiff's lack of standing under ERISA, and the Plaintiff's utilization of the Declaratory Judgment Act as a thinly veiled "tactical maneuver" to circumvent ERISA, this action should be dismissed with costs and reasonable attorneys fees assessed against the Plaintiff.

Respectfully submitted,

JENNINGS SIGMOND, P.C.

BY: /s/ Richard B. Sigmond
RICHARD B. SIGMOND
admitted *Pro Hac Vice*
SANFORD G. ROSENTHAL
admitted *Pro Hac Vice*
The Penn Mutual Towers, 16th Floor
510 Walnut Street, Independence Square
Philadelphia, PA 19106-3683
Tel. (215) 351-0609/0611
Fax. (215) 922-3524
Attorneys for the Funds

188063-1                                     17

BY: /s/ Joseph J. Allotta
JOSEPH J.ALLOTTA
jallotta@afwlaw.com
ALLOTTA, FARLEY & WIDMAN CO., L.P.A.
2222 Centennial Road
Toledo, OH  43617
Tel. (419) 535-0075
Fax: (419) 535-1935
Attorney for All Defendants