**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND, et al., | ) ) ) ) | |
| Plaintiffs, | ) ) | Case: 1:07-cv-01070 |
| v. | ) ) | Urbina, Ricardo M. |
| THE PAINTING COMPANY, | ) ) | |
| Defendant. | ) ) ) | |

<u>**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION**</u>
<u>**TO DISMISS AMENDED COMPLAINT OR, IN THE ALTERNATIVE,**</u>
<u>**TRANSFER OR STAY THE PROCEEDINGS**</u>

## I.    INTRODUCTION

The Court should dismiss, transfer, or stay this lawsuit.  First, Painting Co. engaged in no bad faith conduct which would justify a departure from the first-to-file rule.  Second, ERISA cases, like all cases, are subject to transfer under 28 U.S.C. § 1404(a) and the factors the Court must consider overwhelmingly support a transfer.  Third, a stay would only promote the efficient and convenient resolution of this dispute between multiple parties and the Pension Fund has not articulated how it would be prejudiced in any way by a stay.  Finally, the Court should defer its ruling on this Motion until the Southern District of Ohio decides the competing motion to transfer filed by the Pension Fund in the first-filed action.

## II.    THIS COURT SHOULD EXERCISE ITS EQUITABLE DISCRETION UNDER THE FIRST-TO-FILE RULE TO DISMISS THIS LAWSUIT IN FAVOR OF THE OHIO ACTION.

The Pension Fund appears to try to disprove something which Painting Co. never contended  – that this Court is legally bound to dismiss this case under a rigid application of the

first-to-file rule without enquiring into the facts and circumstances of this case. (Memorandum, at 5-8). Painting Co. did not make such an argument in its Memorandum. Rather, Painting Co. acknowledged that equitable considerations should guide a court's discretion when deciding which case to allow to proceed. *See Columbia Plaza Corp. v. Security Nat'l Bank*, 173 U.S. App. D.C. 403, 525 F.2d 620, 628 (D.C. Cir. 1975) (in deciding which case will proceed, district courts should focus on "equitable considerations genuinely relevant to the ends of justice"); *British Telecomms. plc v. McDonnell Douglas Corp.*, No. C-93-0677, 1993 U.S. Dist. LEXIS 6345 (N.D. Cal. May 3, 1993) ("the filing of an action for declaratory relief in response to a demand letter is only one of the 'equitable considerations [that] may be a factor'... in a decision that ultimately rests within the discretion of the district court"). As Painting Co. stated in its Memorandum, those equitable considerations favor dismissing this action in favor of the first-filed Ohio Action.

While the Pension Fund is correct that some courts have declined to apply the first-to-file rule where the first-filed suit is a declaratory action, the converse is also true. Many other courts have applied the rule and allowed the first-filed declaratory action to proceed. The key is the underlying facts and circumstances of each case which guide the courts in their equitable consideration of whether to apply the rule. Refusing to apply the first-to-file rule simply because the court finds the declaratory action to be anticipatory in nature is an abuse of discretion. *Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1348 (Fed. Cir. 2005) (finding the district court's order dismissing the declaratory suit as "anticipatory and contrary to the purposes of the Declaratory Judgment Act" an abuse of discretion because "precedent . . . favor[ed] the first-to-file rule in the absence of circumstances making it 'unjust or inefficient' to continue the first-filed action"). Even if a court finds that the first filed declaratory lawsuit is anticipatory in

nature, it should "apply the general rule favoring the forum of the first-filed case, 'unless considerations of judicial and litigant economy, and the just and effective disposition of disputes, requires otherwise.'" *Id.*

Any suggestion by the Pension Fund that the Court may simply disregard the Ohio action because it was an anticipatory declaratory action is erroneous. Rather,

> The **considerations affecting transfer to or dismissal in favor of another forum do not change simply because the first-filed action is a declaratory action**. When the **declaratory action can resolve** the various legal relations in dispute and afford relief from the controversy that gave rise to the proceeding, and **absent sound reason for a change of forum, a first-filed declaratory action is entitled to precedence** as against a later-filed … action.

*Genentech v. Eli Lilly & Co.*, 998 F.2d 931, 938 (Fed. Cir. 1993) (emphasis supplied) (finding "[t]he general rule favors the forum of the first-filed action, whether or not it is a declaratory action.").

Considering the underlying facts and circumstances, other courts have applied the first-to-file rule despite the declaratory defendant's argument that the declaratory action was "anticipatory." For instance, the underlying facts and circumstances compelled the Western District of Michigan to decline to dismiss a first-filed declaratory judgment action that was filed in response to a pre-litigation letter. *Veteran Med. Products, Inc. v. Bionix Dev. Corp.*, No. 1:05-CV-655, 2006 U.S. Dist. LEXIS 65591 (W.D. Mich. Sept. 14, 2006). The Court explained,

> While the filing of a declaratory action in a forum convenient to the filing party in anticipation of an infringement action being brought against that party is not a sufficient "sound reason" for a district court not to exercise jurisdiction over a first-filed suit, courts have recognized that a district court may permit a second-filed suit to continue over a first-filed suit where the first-filer's conduct was in bad faith or where the first-filer otherwise engaged in inequitable conduct. For instance, a court may permit a second-filed action to proceed "where the plaintiff in the first-

3

> filed action was able to file first only because it had misled the filer of the
> second-filed action as to its intentions regarding filing suit in order to gain
> the advantages of filing first."

*Id.* at *11. The *Veteran Med. Products* court noted that "there is no indication that Plaintiffs

misled Defendants about their intentions regarding filing suit in order to gain the advantages of

filing first. Indeed, it does not appear that Plaintiffs in any way assured Defendants that they

would not file suit first." *Id.* at *12-*13.

The *Veteran Med. Products* court went on to find that "[w]hile Plaintiffs' suit was filed in

anticipation of [the declaratory defendant's] suit in Ohio, considerations of judicial and litigant

economy ... do not favor dismissing Plaintiffs' first-filed suit." *Id.* at *16. Specially, it found

that "[a]nother factor to be considered in determining whether to exercise jurisdiction over a

first-filed suit is the existence of 'jurisdiction over all necessary or desirable parties.'" *Id.* at *17

(citing *Genentech*). Ultimately, because the declaratory judgment plaintiff did not mislead the

declaratory defendant or engage in other bad faith conduct and the declaratory forum was more

convenient for the witnesses and had jurisdiction over third parties involved in the dispute, the

court allowed the first filed declaratory action to proceed. *Id.* at *12-17.

Other courts are in accord. *See Holmes Group, Inc. v. Hamilton Beach/Proctor Silex,*

*Inc.*, 249 F.Supp. 2d 12, 16-17 (D. Mass. 2002) (applying the first-to-file rule and holding that no

special circumstances existed to overcome the presumption in favor of the first-filed declaratory

judgment action because (1) the declaratory plaintiff's response to a cease and desist letter was

simply a denial of liability and therefore, the declaratory defendant did not "rely on any

assurances that its claims would be resolved short of litigation"; (2) the declaratory plaintiff "did

not 'react[] to notice of imminent filing by literally sprinting to the courthouse that same day'";

(3) the parties had not engaged in negotiations prior to filing of the declaratory judgment action,

and, therefore, the declaratory defendant "had not forgone suit in reliance on good faith negotiations only to lose the race to the courthouse ... [and thus the parties] stood on equal footing at the time [the declaratory plaintiff] filed its declaratory judgment action"; and (4) the declaratory defendant failed to show that its forum was substantially more convenient than the declaratory plaintiff's forum); *Buddyusa, Inc. v. Recording Indus. Ass'n of Am., Inc.*, 21 Fed. Appx. 52 (2d Cir. 2001) (upholding the district court's decision enjoining a second-filed coercive action based on the first-filed rule where both parties "made a persuasive case in support of their interpretation of events" concerning the anticipatory nature of the declaratory suit and finding that the district court "applied the correct rule of law, properly considering the totality of the events rather than employing any bright line rule"); *Nw. Airlines, Inc. v. Am. Airlines, Inc.*, 989 F.2d 1002 (8th Cir. 1993) (holding that the district court "did not abuse its discretion in its application of the first-filed rule" in spite of the declaratory defendant's letter putting the declaratory plaintiff on notice that the declaratory defendant was at least considering filing suit against the declaratory plaintiff); *Rexam, Inc. v. United Steelworks of Am.*, No. 03-2998 ADM/AJB, 2003 U.S. Dist. LEXIS 19495 (D. Minn. Oct. 30, 2003) (applying the first-to-file rule despite notice to the declaratory plaintiffs that litigation was a possibility).

Given the above authority, it is abundantly clear that filing a declaratory judgment action in anticipation of litigation is not, in and of itself, bad faith conduct that justifies a departure from the first-to-file rule. Rather, courts look to whether the declaratory defendant engaged in affirmative conduct to prevent or delay the coercive suit and whether the equities of the specific case justify a departure from the first-to-file rule. *Thomas & Betts Corp. v. Hayes*, 222 F. Supp. 2d 994 (W.D. Tenn. 2002), a case cited by the Pension Fund for the proposition that "[n]umerous federal courts have refused to apply the first-to-file rule where the first action is anticipatory in

nature," proves that point.  (Memorandum, at 5).  The *Thomas & Betts* Court acknowledged that

some courts have departed from the rule but it, in fact, found that "no reason exist[ed] to reject

the application of the first-to-file rule." *Id.* at 997.  The court reasoned:

> It does not appear that the filing of the action in Massachusetts [the first-
> filed action] was a bad faith filing.  Allegedly, Mintz made repeated
> requests for the payment of approximately $650,000 in legal fees.  T & B
> refused to pay, and instead, initiated an investigation into the incident to
> determine whether to file a suit for malpractice.  There is no indication
> that Mintz coaxed T&B into delaying its action in order to file first and
> choose the forum.

*Id.* at 996.

The equitable considerations of this case clearly favor applying the first-to-file rule and

dismissing this lawsuit.  First and foremost, Painting Co. never made any representation or

engaged in any express or implied conduct that could possibly be construed as lulling the

Pension Fund to sleep or preventing it from filing.  It did not make settlement overtures and,

indeed, did not respond to the Pension Fund's letter at all.  The fact that it chose to exercise its

rights under the declaratory judgment act rather than pay in accordance with a demand letter or

be sued in an inconvenient and inequitable forum does not justify a departure from the first-to-

file rule.

Additionally, the equities of this dispute clearly favor its resolution in Ohio.  The Pension

Fund is trying to proceed with a collection action against Painting Co., with the only issues being

damages, while not affording Painting Co. a meaningful opportunity to contest liability.  The

driving force behind the Pension Fund's letter, its filing of this lawsuit after the Ohio Action was

filed, and  its resisting Painting Co.'s request that its contractual liability be adjudicated in Ohio

is to create procedural hurdles and practical inconveniences for Painting Co.'s substantive

defenses to liability.  The Pension Fund's letter illustrated its intent to engage in that improper

tactical action and Painting Co. was forced to file a declaratory action where it could be assured that it would have an opportunity to contest alleged contractual liability without those procedural hurdles and practical inconveniences.  Thus, contrary to the Pension Fund's characterization, Painting Co. filed the Ohio Action for very legitimate purposes and not procedural fencing.

In its demand letter, Complaint, and legal memoranda, the Pension Fund has repeatedly acted as though this dispute is a garden variety ERISA § 515 collection matter between two parties and that the only relevant issues, evidence, and witnesses concern the amount of the alleged delinquent payments.  The Pension Fund further maintains that Painting Co.'s defenses to contractual liability are irrelevant as to it because it may take free of any union fraudulent inducement.   Nothing could be further from the truth.  As the Pension Fund knows very well, before it can recover under ERISA § 515, it must demonstrate that Painting Co. was contractually obligated to pay under the underlying Agreements.  As Painting Co. has repeatedly made clear both here and in the Ohio Action, this is not an undisputed liability case and the contract dispute with Local Unions must be resolved before any court can determine whether Painting Co. is liable for any further pension fund contributions.

Painting Co. does not believe that the Agreements' language requires it  to contribute to the Pension Fund for work performed outside the relevant jurisdiction by non-unionized employees (such as Painting Co.'s employees in Ohio).  At the very least, the relevant language in the Agreements is ambiguous and would require extrinsic evidence from Painting Co. and the Local Unions as to the parties' intent on that issue.  As Painting Co. representatives have stated in their affidavits, statements made to them by members of the Local Unions bolstered their belief that the Agreements do not require fund contributions for work performed by non-union employees outside the relevant jurisdictions.  Painting Co. testimony regarding those statements

will serve as extrinsic evidence as to what both parties intended the Agreements to mean. These issues ("the contract dispute") must be decided before the Pension Fund can lawfully collect any contributions under ERISA. By filing here, the Pension Fund is attempting to construct procedural hurdles and practical inconveniences to the full and fair litigation of those issues.

This litigation will have two distinct parts. Part one, the contract dispute, will determine whether the language of the Agreements entered into between Painting Co. and the Local Unions create an obligation on Painting Co.'s part to make pension fund contributions. In that inquiry, in the event the Ohio Court finds that the Agreements were ambiguous, it must then consider extrinsic evidence from Painting Co. and the Local Unions regarding their beliefs as to what they were signing and any representations that were made which lead them to such beliefs. No court will need to proceed to part two (the "collection dispute") unless the contract dispute is resolved against Painting Co.

As an example of the ambiguity, the New Jersey Agreement provides that the signatory employer shall "[c]omply with lawful clauses of the collective bargaining agreement in effect in the other jurisdiction." (*See* Ex. E to Painting Co.'s Motion, at § 1.7). That begs the question of what "in effect" means. Does it refer to, as the Pension Fund apparently believes, any agreement outside New Jersey executed by any non-party painting employer? Conversely, as Painting Co. contends, does it mean an agreement that Painting Co. has executed in those jurisdictions? The face of the Agreement may not shed light on these questions. Painting Co. is prepared to present evidence that the parties understood that the latter interpretation would govern. Such evidence will be admissible if the Court finds that one or more of the Agreements are ambiguous.

The Pension Fund will have no involvement in the contract dispute, other than making legal arguments, because it was not involved in any of the discussions or representations that

took place prior to the Agreements' execution. The Pension Fund does not have any witnesses relevant to the question of what the parties believed they were agreeing to or what representations were made to the parties. Its only input in that dispute will be legal briefing or legal arguments made at oral hearings. Thus, the Pension Fund cannot articulate any way in which it would be prejudiced by having the contract dispute litigated in Ohio, other than the possible inconvenience of its counsel. Therefore, any suggestion that litigating the contract dispute in Ohio would inconvenience the Pension Fund is without merit.

By contrast, litigating the contract dispute in the District of Columbia would **severely inconvenience** and potentially **prejudice** Painting Co. Painting Co. entered into each Independent Trade Agreement while in Ohio and did not have any contact with the District of Columbia. The only witnesses who could possibly offer relevant evidence in the contract dispute reside in Ohio and the three states of the Local Unions (New York, Nevada, and New Jersey). Any documentary evidence regarding the intent of the parties or records of conversations would be located in Ohio or the states of the Local Unions, not the District of Columbia. (*See generally* Affidavit of Jeffrey Asman, attached as Exhibit A to Painting Co.'s Motion).

Adjudicating the contract dispute in the District of Columbia could also prejudice Painting Co. in another way. Because each Local Union dealt with Painting Co. in Ohio, Painting Co. knew that the only jurisdiction in which each union could undoubtedly have been sued in one proceeding is Ohio. Painting Co. has severe doubts as to whether each Local Union would have the relevant contacts with the jurisdictions of the other Local Unions to be amenable to suit in those jurisdictions. Furthermore, Painting Co. is unaware of any contacts the Local Unions have in the District of Columbia which would make them amenable to suit or compulsory process. Thus, if Painting Co. wanted to ensure a forum where all issues between all

parties may be litigated, it had to sue in Ohio. Neither the Local Unions nor the Pension Funds have challenged personal jurisdiction or statutory venue in Ohio because they both undoubtedly exist in Ohio.

Allowing this suit to go forward at this time creates the significant risk that Painting Co. will be forced to litigate this dispute without the Local Unions as parties or even their compulsory attendance as witnesses. Such a prospect could render Painting Co. unable to set forth a complete defense and saddle it with liability for which it will have to institute a secondary lawsuit against the Local Unions for indemnification. That is exactly what the Pension Fund wants - to proceed with collection without affording Painting Co. a meaningful opportunity to demonstrate that it has no underlying liability. Thus, it cannot be argued the Painting Co. is trying to secure an unnatural litigation advantage. What is really happening is that Painting Co. is trying to avoid a preposterously unfair disadvantage which litigation in this District would cause.

The Pension Fund's contention that the Local Unions "would not object to proceeding in this forum in the event they are joined in this action" rings hollow. (Memorandum, at 15). First, it insults this Court's intelligence because, as this Court and the Pension Fund are aware, a representation made by a party to an action cannot be binding on a non-party to that action. Second, the Pension Fund later goes on to clarify that while Painting Co. may attempt to bring the Local Unions into this action, it "do[es] not concede the merit of any attempts to join such parties." Thus, the Pension Fund is doing exactly what Painting Co. anticipated and what necessitated Painting Co.'s filing of the Ohio Action. It is setting itself up to challenge any Local Union joinder or participation in this forum.

The Court should take the Pension's Fund's statements regarding the Local Union's litigation decisions for what they are – meaningless. Instead, the Court should look to the Local Unions' actions. They, like the Pension Fund, were sued in Ohio. They, like the Pension Fund, moved to dismiss the Complaint. However, unlike the Pension Fund, the Local Unions did not file a motion to transfer the Ohio Action to this Court. If the Local Unions were as willing to submit to this Court's jurisdiction as the Pension Fund would like to have this Court believe, then they should have stepped up to the plate and joined the Pension Fund in moving to transfer the Ohio case here. The Local Unions did not do so and their actions are a clear indication of the position they will take should the contract dispute not be litigated in Ohio.

One of the policies of the first-to-file rule is "to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result." *Sutter Corp. v. P & P Indus., Inc.*, 125 F.3d 914, 917 (5th Cir. 1997). That policy will be jeopardized if Painting Co. is forced to litigate here since the contractual issues it must raise against the Pension Fund here are the same issues it must raise against the Local Unions in Ohio. If this Court proceeds, duplicative judicial effort and possible inconsistent results would be at hand.

## III.    THE COURT SHOULD TRANSFER THIS CASE TO OHIO UNDER 28 U.S.C. § 1404(a).

### A.    While some courts acknowledge a plaintiff's status as a benefit fund or plan as a factor weighing against transfer, it is clear that 28 U.S.C. § 1404(a) applies to these plaintiffs, like all plaintiffs, and numerous federal courts have transferred such cases to an employer's home jurisdiction where, as here, the application of the § 1404(a) factors clearly supports a transfer.

Contrary to the Pension Fund's allegation that a fund's choice of venue may not be disturbed, courts must still perform a § 1404(a) analysis and transfer the proceedings if the

factors analyzed thereunder suggest a transfer. Indeed, this Court has specifically held that 29 U.S.C. 1132(e)(2) "does not preclude transfer under the general venue statute of 28 U.S.C. § 1404(a)." *International Brotherhood of Painters & Allied Trades Union v. Rose Bros. Home Decorating Center, Inc.*, No. 91-1699, 1992 U.S. Dist. LEXIS 1321, *4 (D.D.C. January 14, 1992). This Court has also transferred collection actions brought by pension funds administered in the District of Columbia under similar facts. *See e.g.*, *Rose Bros.*, 1992 U.S. Dist. LEXIS 1321; *International Brotherhood of Painters and Allied Trades Union and Industry Pension Fund v. Dan's Painting Decorating*, C.A. No. 91-0729, slip op. (D.D.C. May 28, 1991) (attached as Exhibit A); *Campbell v. Consolidated Building Specialties*, 683 F. Supp. 271 (D.D.C. 1987).

This case is analogous to *Dan's Painting*. In *Dan's Painting*, the Pension Fund in this case sued another painting employer who had previously filed a declaratory judgment action in another district court in response to the Pension Fund's threat of filing an action in the District of Columbia. *Id.* Upon the employer's motion, this Court transferred the case to the Northern District of Indiana. *Id.* In doing so, this Court determined that: (1) the interpretation of the contract would require testimony and documents from various locations in Indiana, (2) a full trial in the District of Columbia would "place an undue financial burden on the defense and be unduly burdensome on defendants," and (3) the D.C. docket was too congested. *Id.*

In *Campbell*, despite acknowledging a heavy burden in transferring an ERISA case, the Court still transferred the action to Oklahoma. *Id.* at 273. In deciding to transfer the action, the Court noted that the defendant would incur much greater costs defending the case in D.C. than in Oklahoma. *Id.* Additionally, the defendant had identified several material witnesses who were located in Oklahoma. *Id.* Thus, this Court concluded that venue in Oklahoma would "best serve the convenience of the parties and witnesses, and the interests of justice." *Id.*

Other courts that have squarely decided this issue have clearly and consistently held that "**[t]he Court is not bound by the Plan's choice of its home venue.**" *Dist. 65 Pension Plan v. De Marco Cal. Fabrics, Inc.*, No. 07-1232, 2007 U.S. Dist. LEXIS 50994, *4-5 (D.N.J. July 13, 2007) (emphasis added). In *De Marco*, the fund brought suit in its home forum of New Jersey, but New York was: (a) the place of employer's incorporation and principal place of business; (b) the location of the financial records at issue; and (c) the place where the alleged failure to abide by the agreement at issue took place, and therefore the place of breach. Thus, the court transferred the case to the employer's home forum under a § 1404 analysis.

Likewise, the fund in *United Foods v. Schaufler*, No. 88 C 3176, 1988 U.S. Dist. LEXIS 12894 (N.D. Ill. November 15, 1988) brought suit in the Northern District of Illinois and the employer filed a motion to transfer to the Southern District of Illinois under 28 U.S.C. § 1404(a). *Id.* at *1. The Northern District granted the employer's motion "because that is where the key witnesses and the evidentiary documents [were] located, making that District the more convenient forum." *Id.* The fund then asked the Northern District to amend and certify its order to permit an interlocutory appeal. *Id.* In response to the fund's argument that 29 U.S.C. § 1132 provides a special venue provision for ERISA plaintiffs, the very same argument that the Pension Fund asserts here, the court stated that "**[t]he fact that the statute sets out three places where suit may be brought does not mean that the suit once brought in any of these three locations chosen by the plaintiff must thereafter in any case remain there.**" *Id.* at *2-3 (emphasis added). Furthermore, "[i]t is too well settled that **this court, when considering a motion to transfer under section 1404(a), is not inescapably bound by plaintiff's preference**, but may nevertheless consider among other things, the convenience of witnesses, and the availability of the courts." *Id.* at *3 (emphasis added). Finally, the Court noted that **there is no**

"**authority to suggest that the principles which usually govern what we refer to as 'a practical and convenient choice of forum' may not be considered by the court in an ERISA action**." *Id.* at *3 (emphasis added). Accordingly, the fund's request was denied and the transfer was upheld. *Id.*

The court rejected a similar argument in *Hanley v. Omarc, Inc.*, 6 F. Supp. 2d 778, 780 (N.D. Ill. 1998). The Court stated that there is a strong interest in protecting the financial integrity of employee benefit plans but "that is not the only interest at stake when making a § 1404(a) transfer determination. The court must also consider the convenience of the parties and witnesses and the interest of justice." *Id.* at 779. The court denied the motion to vacate the order transferring the case away from the funds' chosen venue, concluding:

> it is clear that § 1404(a) applies to ERISA actions. If there ever is a case where an ERISA case should be transferred pursuant to § 1404(a), this is the case. Finding that a transfer is not warranted in this case would be tantamount to a finding that an ERISA case may never be transferred under § 1404(a) if it is brought in the forum where the plan is administered. That is simply not the law.

*Id.* at 780.

Other courts are in accord. *Mincey v. Overhead Door Co.*, NO. 93-1912, 1993 U.S. Dist. LEXIS 13678 (E.D. La. Sept. 30, 1993) (granting motion to transfer to employer's home venue of Oklahoma, even though plaintiff plan was based in Louisiana where employer "is a relatively small company" and "the interests of justice, and the convenience of the parties and witnesses would best be served by" litigating the dispute in the employer's chosen forum); *UAW v. C.F. Gomma, U.S.A., Inc.*, No. 05-CV-71633, 2005 U.S. Dist. LEXIS 41772, *12-13 (E.D. Mich. July 29, 2005) (emphasis supplied) (**although plaintiff's "choice of venue [have] received 'accentuated' emphasis in ERISA litigation, the facts of this case make a change of venue practical and fair**."); *International Brotherhood of Painters & Allied Trades Union v. Rose*

*Bros. Home Decorating Center, Inc.*, No. 91-1699, 1992 U.S. Dist. LEXIS 1321 (D.D.C. January 14, 1992) (granting motion to transfer under Section 1404(a) to defendant employer's home venue of Indiana in an action by funds to recover allegedly delinquent contributions and noting that the ERISA venue provision "does not preclude transfer under the general venue statue of 28 U.S.C. § 1404(a)").

In short, None of the Pension Fund's cases stand for the proposition that any deference to ERISA venue renders this Court unable to transfer this case under 28 U.S.C. § 1404(a). For example, the court in *Board of Trustees v. Baylor Heating & Air Conditioning, Inc.*, 702 F. Supp. 1253 (E.D. Va. 1988) performed an exhaustive § 1404(a) analysis. There, the court expressly stated that "**contrary to plaintiffs' suggestion here, ERISA's special venue provisions do not operate to preclude transfer.**" *Id.* at 1257 n.13 (emphasis supplied).

In short, any suggestion that a court must defer to a fund's chosen forum is clearly erroneous.

**B.    The 28 U.S.C. § 1404(a) factors overwhelmingly support a transfer in this case and failure to do so would create an improper de facto rule that no case filed in the District of Columbia by a benefit fund or plan can be transferred.**

Contrary to the Pension Funds' characterization, this Court in *Flynn v. Veazey Constr. Corp.*, 310 F. Supp. 2d 186, 193 (D.D.C. 2004) did not automatically defer to the fund's chosen forum or hold, explicitly or implicitly, that a case filed by an ERISA fund may not be transferred. To be sure, the Court did give special weight to the fund's chosen forum. However, that weight was not dispositive. The Court noted that neither party in that case gave an exact account of the witnesses or records that reside in either locale. *Id.* at n.3. The Court also found that witnesses and records were present in both jurisdictions. *Id.* at 194. Given that background and deference the Court afforded ERISA plaintiffs, the Court determined that "the convenience of parties and witnesses and the interest of justice does not favor transfer." *Id.* *Flynn* does not stand for the

proposition that a court may eschew the Section 1404(a) factors and deny all motions to transfer cases filed by pension funds. It merely stands for the proposition that the Court gives special weight to a plaintiff's chosen forum in an ERISA case and the showing made by the defendant in that case was not enough to overcome that weight.

Painting Co. has made a much greater case for transfer than the defendant in *Flynn*. First Painting Co has identified its witnesses and the subject matter of their testimony. It also advised the Court that several local union witnesses will testify in the contract dispute and no such witness resides in the District of Columbia. It established that the Pension Fund has no witnesses on the contract dispute. The Pension Fund rebutted none of those facts.

Second, Painting Co. established that all of its documentary evidence, including payroll records and personnel files, which are necessary evidence in the Pension Fund's action, are all located in Ohio. The Pension Fund, by contrast, only points to an audit it generated after reviewing Painting Co. records in Ohio and reports that Painting Co. gave to the Pension Fund. (Memorandum, at 17). Moreover, as the Pension Fund alleges in its Complaint, the results of its audit is incomplete and another audit must be conducted. That information is contained in Ohio and the Pension Fund purports to have this Court oversee it instead of the Court where the documents are located. In short, the sparse documentary evidence the Pension Fund has is duplicative of or derived from Painting Co.'s records contained in Ohio and the Pension Fund must rely on Painting Co. records located in Ohio to prove its case.

The Pension Fund's weak allegations of inconvenience in this case only concern the collection dispute which may not even occur if the Ohio Court determines that Painting Co. does not have contractual liability. By contrast, that was the only dispute in *Flynn*. There is nothing

in the *Flynn* opinion to suggest that there was a contract dispute with the local unions or a concern over hailing such third parties into this Court. *Flynn* appears to have been a garden variety ERISA collection case between a fund and employer and the employer in that case did not meet its burden of establishing entitlement to a transfer. The Pension Fund's weak assertions notwithstanding, this dispute is far from being a garden variety ERISA collection action and Painting Co. has overwhelmingly established that the Section § 1404(a) factors compel a transfer.

If this case is not transferred, it would set an improper precedent. It would be difficult to imagine any case filed by a fund in this Court that could be transferred if this Motion is denied. Thus, a de facto rule against transferring cases filed by funds in this District would be created. Such a rule is contrary to the law.

> **C.    A transfer is especially warranted where a first-filed action exists or where the case involves a related dispute between the employer and the local union(s).**

Courts have transferred cases filed in a fund's chosen jurisdiction where, as here, a first-filed declaratory action exists and the facts and circumstances of the case make it more equitable for the litigation to proceed in the employer's home forum. For instance, in *Mincey v. Overhead Door Co.*, NO. 93-1912, 1993 U.S. Dist. LEXIS 13678 (E.D. La. Sept. 30, 1993), the court granted a motion to transfer to the employer's home venue of Oklahoma, even though the fund was based in Louisiana. In fact, the fund even notified the employer that if it was not permitted to conduct an audit of the employer, it would file an action in federal court on a date certain. *Id.* at *6. One day before the deadline identified in the letter, the employer filed a declaratory judgment action in its home state. *Id.* The fund later filed a coercive action and the employer moved to transfer.

Under a § 1404(a) analysis, the *Mincey* court granted the motion to transfer, finding that "the facts indicate that the burden imposed on [the employer] by compelling it to appear in the Louisiana forum is substantially greater than the burden on the Pension Fund to participate in the Oklahoma action." *Id.* at *10. Specifically, the employer was a small-business which conducted no business out of state. *Id.* The records were also located in Oklahoma, and the contracts at issue were negotiated and signed there. *Id.* Finally, witnesses might not be subject to compulsory process in Louisiana and it would be more expensive for them to appear there. *Id.* at *11.

This case is identical to *Mincey*. The Pension Fund would like this Court to believe that there are no liability issues or relevant disputes with the Local Unions. To the contrary, those issues are paramount. As in *Mincey*, justice requires that those issues be adjudicated in the employer's jurisdiction because a declaratory judgment action was first filed there and the convenience of the parties, witnesses, and court system all favor a transfer. This Court should follow the *Mincey* court's lead and transfer this action to Ohio.

Additionally, in cases such as this where a dispute between the local union(s) and employer exists and that dispute did not arise in the fund's jurisdiction, a transfer is even more warranted. For instance, in *International Brotherhood of Painters & Allied Trades Union v. Rose Bros. Home Decorating Center, Inc.*, No. 91-1699, 1992 U.S. Dist. LEXIS 1321 (D.D.C. January 14, 1992), the fund sued the defendant employer in this Court to collect allegedly delinquent contributions. *Id.* at *1-2. As in this case, the employer denied ERISA liability and alleged that a non-party union had made fraudulent misrepresentations concerning the underlying labor agreement. *Id.* at *2-3. Applying § 1404(a), this Court transferred the case to the employer's home forum in Indiana. It noted that the witnesses and records were located in the

18

employer's home forum and the fund's action would likely turn on issues of law and therefore obviate the need for the fund to call its own witnesses. *Id.* at *7.

The *Rose Bros.* court relied heavily on the existence of the third party dispute with the unions in deciding to transfer the case. It stated that "a transfer would enable all related issues in this case to be resolved more efficiently." *Rose Bros.*, 1992 U.S. Dist. LEXIS 1321 at *6. Specifically, the presence of a third-party weighed in favor of transfer because: (1) the employer represented that it would file a third-party action against the local union if the case were transferred; (2) if the court retained venue, the employer would be forced to litigate the issues of liability to the fund and indemnification to the union in separate, distant, fora, at great expense; and (3) there was another forum in which all of the issues could be tried in a single case - the employer's home venue. All of those concerns also arise in this case and the Court should follow its own decision in *Rose Bros.* and transfer this case to Ohio.

Unlike *Rose Bros.*, none of the Pension Fund's cases squarely address this issue. *International Brotherhood of Painters v. Best Painting*, 621 F. Supp. 906 (D.D.C. 1985) involved a pending declaratory judgment action where the employer argued that the unions breached the underlying labor agreements. *Id.* at 907. As the *Best Painting* court pointed out, the breach of contract defense is not available to the employer in the dispute with the fund. *Id.* While the Pension Fund analogizes that point to argue that Painting Co.'s fraudulent inducement defense similarly will not be available, there is a pivotal distinction. Painting Co. is claiming here that the Independent Trade Agreements do not on their face support the interpretation the Pension Fund is assigning to them. Nevertheless, to the extent they are ambiguous, Painting Co. will be able to introduce extrinsic evidence as to the Local Unions' representations  to establish what both parties intended the Agreements to mean. Because the Pension Fund cannot collect

contributions without underlying contractual liability, unlike the employer in *Best Painting*, Painting Co.'s defense will very much be applicable to the Pension Fund's action. It goes to the very heart of what the Agreements mean.

## IV.    AT THE VERY LEAST, THE COURT SHOULD STAY THIS PROCEEDING PENDING RESOLUTION OF THE CONTRACT DISPUTE IN OHIO.

Painting Co. submits that dismissing this lawsuit under the Court's equitable discretion under the first-to-file rule or transferring it under 28 U.S.C. § 1404(a) is proper. That being said, Painting Co. has nevertheless offered the Court a compromise should the Court be concerned with any inconvenience the Pension Fund would have in proceeding with the collection dispute – a stay pending the resolution of the contract dispute in Ohio.

Any Pension Fund objection to such a stay shows the true reasons why it filed this later-filed lawsuit and is opposing this motion – it seeks to create procedural hurdles and practical inconveniences to Painting Co.'s ability to fully and fairly litigate its defenses in the contract dispute. As is clear from the Pension Fund's Memorandum, they have no witnesses or documentary evidence that could possibly be relevant to the contract dispute. All such witnesses and documents must necessarily be located in Ohio, New York, New Jersey, and Nevada – not the District of Columbia. As aforementioned, Ohio also has all the relevant parties to that dispute and the ability of this Court to exercise jurisdiction over some of those parties is in question.

Without at least a stay, Painting Co. faces the real possibility of: (1) being forced to litigate the contract dispute in a inconvenient forum that has no connection to the dispute; (2) attempting to join the local unions and subjecting this Court to another round of venue related motions (something which can no longer occur in Ohio); (3) being without a meaningful

opportunity to defend the contract dispute without the presence of the Local Unions; and (4) being forced to sue the Local Unions in another forum and engage in duplicative litigation as to what the Agreements mean. By contrast, there will be no conceivable prejudice to the Pension Fund in litigating the contract dispute in Ohio. It will have no relevant witnesses and documentary evidence on the subject. It may make its legal arguments as to what the Agreements mean in Ohio just as easily as in the District of Columbia.

Additionally, unlike the duplicative litigation that could very easily arise should this action not be stayed, staying this action while the contract dispute goes forward can only preserve judicial resources. If Painting Co. prevails on the contract dispute, this case will become moot. If it does not, the Court will have retained jurisdiction to allow the Pension Fund to proceed with the collection dispute here in the District of Columbia and free from any inconvenience. The contract and collection disputes are entirely unique. One determines what the Agreements mean and require of the parties. The other determines the extent to which a party with payment obligations has made such payments.

The Pension Fund does not contest the Court's authority to stay this case. (Memorandum, at 19). Rather, it objects to the stay because it would only "postpone an inevitable resolution of this case." (Memorandum, at 19). Such a position assumes that the Ohio determination of contractual liability would be less swift than that determination here. This Court will likely face another round of preliminary motions pertaining to the joinder of the Local Unions if the contract dispute goes forward in the District of Columbia. Even if it does not face such motions, there is nothing to suggest that this Court will have the lighter docket, giving it the ability to decide the contract dispute more quickly than the Ohio Court.

The Pension Fund's only other objection to the stay are vague allegations of forum shopping. (Memorandum, at 19-20). It claims that the Ohio Action "is, in essence, [Painting Co.'s] attempt to circumvent ERISA by raising defenses to this action in a more favorable forum." (Memorandum, at 19). That allegation is puzzling. Painting Co. has not filed an action in Ohio state court or argued that Ohio substantive law applies to this dispute rather than ERISA. Rather, as explained above, it filed in Ohio federal court where it would be assured that all proper parties would be present, it would have full and fair opportunity to litigate the contract dispute, and it would have a convenient forum for its witnesses. Like this Court, the Ohio court will apply the federal law of ERISA to this dispute. In light of that, the Pension Fund's objection to the stay as an attempt to "circumvent ERISA" simply has no validity.

With a stay: (1) there will be no duplication of effort by the parties or the courts; (2) this action could be rendered moot and the involvement of unnecessary judicial resources would be eliminated; (3) the Court can eliminate the possibility of any prejudice to the Pension Fund because the only prejudice it can possibly allege would necessarily occur during the collection dispute; and (4) the Court can eliminate the procedural hurdles and practical inconveniences that could prevent Painting Co. from fully and fairly litigating its defenses in the contract dispute. While Painting Co. believes that dismissal or transfer are appropriate, if the Court does not agree, Painting Co. submits that a stay would be an effective compromise taking into account the equities in this dispute and the relative convenience of, and prejudice to, the parties.

## V.    THIS COURT SHOULD DEFER ITS RULING ON THIS MOTION UNTIL THE OHIO COURT HAS RULED ON THE COMPETING MOTIONS FILED BY THE PENSION FUND.

The Pension Fund has filed a Motion to Transfer the Ohio Action to this Court. It has also filed a Motion to Dismiss arguing, in part, that the Ohio court should decline jurisdiction to

hear the declaratory judgment action. While Painting Co. submits that there is no merit to those Motions, the court in the second-filed case generally stays or defers ruling upon such motions until the first-filed court has had an opportunity to rule. *British Telecomms. plc v. McDonnell Douglas Corp.*, No. C-93-0677, 1993 U.S. Dist. LEXIS 6345 (N.D. Cal. May 3, 1993) ("Should the Missouri court find it lacks jurisdiction to hear the matter or choose to exercise its discretion to dismiss the declaratory relief action as anticipatory, then this court stands ready to lift the stay and proceed."). Likewise, where competing motions to transfer are filed in federal courts, the court in the second-filed action generally stays any ruling on its motion to transfer until the court in the first-filed case has ruled on its motion to transfer. *See Cruz v. Hartford Casualty Ins. Co.*, No. 05-38S, 2005 U.S. Dist. LEXIS 9924, at *8-9 (D. R.I. May 20, 2005) (staying a decision on a motion to transfer pending resolution of the motion to transfer filed in first filed case in another district court); *Stroock & Stroock & Lavan v. Valley Systems, Inc.*, No. 95 Civ 6513, 1996 U.S. Dist LEXIS 182, at *14 (S.D. N.Y. Jan. 10, 1996) (same).

Painting Co. suggests that the Court follow this procedure in this case and stay its ruling pending the Ohio court's decision on the competing motions or at least withhold ruling until those motions have been decided. Painting Co. will advise the Court when such rulings occur.

## VI.    CONCLUSION

For the foregoing reasons, Painting Co. respectfully requests that this Court dismiss this case, transfer it to the Southern District of Ohio, or stay it pending the outcome of the contract dispute in Ohio.

Respectfully submitted

THOMPSON HINE LLP

Date: November 30, 2007        By:    /s/ Teresita J. Ferrera     
Tess J. Ferrera, (D.C. 435469)
1920 N Street, N.W., Suite 800
Washington, D.C. 20036
(202) 973-2763 Direct line
(202) 478-2588 Fax

*Counsel for the Painting Company*

24

<u>CERTIFICATE OF SERVICE</u>

I state under penalty of perjury that a copy of the foregoing Reply Memorandum in

Support of Defendant's Motion to Dismiss Amended Complaint or, in the Alternative Transfer

or Stay the Proceedings was served electronically via the CM/ECF system and/or first class mail,

postage prepaid or acceptable substitute service by electronic mail or fax on the date set for

below addressed to:

Richard B. Sigmond<br>
Sanford G. Rosenthal<br>
Elizabeth A. Coleman<br>
JENNINGS SIGMOND, P.C.<br>
The Penn Mutual Towers, 16th Floor<br>
510 Walnut Street, Independence Square<br>
Philadelphia, PA  19106

Date: November 30, 2007            By:    /s/ Teresita J. Ferrera
                                   THOMPSON HINE LLP
                                   Tess J. Ferrera, (D.C. 435469)
                                   1920 N Street, N.W., Suite 800
                                   Washington, D.C. 20036
                                   (202) 973-2763 Direct line
                                   (202) 478-2588 Fax

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

**FILED** ✓

MAY 28 1991

Clerk, U.S. District Court
District of Columbia

| | |
|---|---|
| INTERNATIONAL BROTHERHOOD OF PAINTERS AND ALLIED TRADES UNION AND INDUSTRY PENSION FUND, ET AL., | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civil Action No. 91-0729 |
| DAN'S PAINTING & DECORATING, DAN W. WOJCIECHOWSKI, SR., and DAN'S PAINTING AND DECORATING SERVICE, INC., | ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM

Plaintiff Union Pension Fund and its Trustees, invoking the appropriate venue statute, 29 U.S.C. § 1131(e)(2), brought this ERISA action here where the pension fund is administered. Defendants have moved to dismiss, or in the alternative, to stay or transfer this action to the United States District Court for the Northern District of Indiana where they have previously filed a declaratory judgment action against plaintiffs involving the same issue of contract action presented by the Fund's suit in this Court.

Venue also exists in Indiana where both the breach occurred and defendants are found. The Court recognizes that Congress sought to assist enforcement of pension and similar union agreements by placing ERISA venue here where so many union agreements are administered. For this reason, priority of filing alone should not control.

Defendants have not disputed the assertion that they duped union counsel by breaching an agreement between counsel. Plaintiff Trustees, on the other hand, apparently referred to venue in the District of Columbia as a weapon threatening defendants with the expense of coming to this city if they did not pay up. Thus, neither party has entirely clean hands.

While it appears that interpretations of the underlying agreement will probably not involve a trial, application of the interpretation is likely to require consideration of witnesses' testimony and documents at various locations in Indiana. The circumstances of this case, therefore, strongly suggest that a full trial here will place an undue financial burden on the defense and be unduly burdensome on defendants. Moreover, there is no possibility a contested civil action of this type can be reached for trial in the foreseeable future in view of the inundation of the Court's docket by criminal drug cases. The interests of justice and convenience of the parties require transfer.

Accordingly, the defendants' motion to transfer pursuant to 28 U.S.C. § 1404(a) is granted and this civil action shall be transferred to the United States District Court for the Northern District of Indiana (South Bend Division). An appropriate Order is filed herewith.

UNITED STATES DISTRICT JUDGE
United States District Court
for the District of Columbia
A TRUE COPY

May 28, 1991.

NANCY MAYER-WHITTINGTON, Clerk

By

Deputy Clerk

2

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

**FILED**

MAY 28 1991 ✓

Clerk, U.S. District Court
District of Columbia

|  |  |  |
|---|---|---|
| INTERNATIONAL BROTHERHOOD OF PAINTERS AND ALLIED TRADES UNION AND INDUSTRY PENSION FUND, ET AL., | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | Civil Action No. 91-0729 |
| DAN'S PAINTING & DECORATING, DAN W. WOJCIECHOWSKI, SR., and DAN'S PAINTING AND DECORATING SERVICE, INC., | ) ) ) ) ) | |
| Defendants. | ) ) | |

<u>ORDER</u>

For reasons stated in the Court's Memorandum filed herewith, defendants' motion to transfer pursuant to 28 U.S.C. § 1404(a) is granted and this civil action is hereby transferred to the United States District Court for the Northern District of Indiana (South Bend Division).

_____
UNITED STATES DISTRICT JUDGE

May 28, 1991.

United States District Court
for the District of Columbia
A TRUE COPY

NANCY MAYER-WHITTINGTON, Clerk

By _____
Deputy Clerk

**FILED**

JUN 13 1991

RICHARD E. TIMMONS, CLERK
U.S. DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

12