UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND *et al.*, | : : : : | | |
| Plaintiffs, | : : | Civil Action No.: | 07-1070 (RMU) |
| v. | : : | Document Nos.: | 7, 8 |
| THE PAINTING COMPANY, | : : : | | |
| Defendant. | : | | |

### MEMORANDUM OPINION

DENYING THE DEFENDANT'S MOTION TO DISMISS;
DENYING THE DEFENDANT'S MOTION TO TRANSFER;
GRANTING THE DEFENDANT'S MOTION TO STAY PROCEEDINGS

### I. INTRODUCTION

This case comes before the court on the defendant's motion to dismiss or, in the alternative, to transfer or stay the proceedings. International Painters and Allied Trades Industry Pension Fund ("the Fund") and Gary J. Meyers, Administrator of the Fund, (collectively "the plaintiffs") bring suit against the defendant, The Painting Company, under the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132 and 1145, alleging that the defendant failed to make contributions to the Fund pursuant to independent trade agreements between the defendant and three local unions affiliated with the Fund. The defendant moves to dismiss based on the first-to-file rule because it filed a suit for declaratory judgment in the United States District Court for the Southern District of Ohio prior to the institution of this action. Because the equitable considerations do not justify dismissal under the first-to-file rule, the court denies the defendant's motion. Furthermore, because the defendant fails to overcome the extra deference given to the plaintiffs' choice of forum in ERISA suits, the court denies the

defendant's motion to transfer. Finally, because allowing the District Court for the Southern District of Ohio to discern the defendant's contractual obligations before this court proceeds conserves judicial resources, the court stays these proceedings.

## II.  FACTUAL & PROCEDURAL BACKGROUND

The facts of this case are undisputed. Beginning in August 2005, the defendant entered into contracts with three local unions – one in New York (IUPAT District Council No. 9), one in New Jersey (IUPAT District Council No. 711) and one in Nevada (IUPAT District Council No. 15) – to complete painting work at three flagship Abercrombie & Fitch stores in each of the respective states. Def.'s Mot. at 2-4; Pls.' Opp'n at 2. For each store, the defendant signed standard independent form agreements with each union. Def.'s Mot. at 2-4. As part of these agreements, the defendant contributed to the local union employees' pension funds. *Id.* at 4. Sometime before May 2007, the defendant concluded its work at the three stores and with the three local unions. *Id.*

On May 30, 2007, following an audit conducted by the Fund, the plaintiffs' letter notified the defendant that it was in arrears $527,587.35. *Id.* at 6. The plaintiffs also requested $142,044.47 "for liquidated damages, interest, attorney's fees, and audit costs." *Id.* In the notification letter, the plaintiffs informed the defendant that it had ten days to either pay the amount or challenge the plaintiffs' findings, or the plaintiffs would file a collection action in the District Court for the District of Columbia. Pls.' Opp'n at 4.

Nine days after receipt of the letter, on June 8, 2007, the defendant instituted a declaratory judgment action in the Southern District of Ohio. Def.'s Mot. at 7. The suit, naming the Fund, the local unions and "four funds for which the Fund claims to be the collection agent"

as defendants, *id.*, seeks a declaration of the rights and obligations of all the parties, specifically regarding responsibilities under the independent form agreements, *id.* at 8. Six days later, on June 14, 2007, the plaintiffs filed this action to recover the delinquent contributions. *Id.* at 8. This suit, naming the defendant as the only other party, is strictly an ERISA collection action. Since these filings, both parties have filed amended complaints in their respective actions. *Id.* at 7, 9. Additionally, both parties have brought motions to dismiss or to transfer in response to the other's action. Pls.' Opp'n at 4. The court now turns to the defendant's motions.

### III. ANALYSIS
#### A. The Defendant's Motion to Dismiss
#### 1. Legal Standard for the First-to-File Rule

"For more than [five] decades the rule in this circuit has been that '(w)here two cases between the same parties on the same cause of action are commenced in two different Federal courts, the one which is commenced first is to be allowed to proceed to its conclusion first.'" *Wash. Metro. Area Transit Auth. v. Ragonese*, 617 F.2d 828, 830 (D.C. Cir. 1980) (second alteration in original) (citing *Speed Prod. Co. v. Tinnerman*, 171 F.2d 727, 729 (D.C. Cir. 1948)). But, the first-to-file rule "should be ignored under some circumstances," *Columbia Plaza Corp. v. Sec. Nat'l Bank*, 525 F.2d 620, 627 (D.C. Cir. 1975); *Lewis v. Nat'l Football League*, 813 F. Supp. 1, 4 (D.D.C. 1992) (opposing a mechanical application of the first-to-file rule) (citing *Columbia Plaza Corp.*, 525 F.2d at 627), and a court should be guided by the equities of a particular case in making its decision, *Fed'n Internationale de Football Ass'n v. Nike, Inc.*, 285 F. Supp. 2d 64, 67-68 (D.D.C. 2003) (noting that courts should analyze various equitable factors when considering an exception to the first-to-file rule). One equitable consideration is whether

3

"the first-filing plaintiff has launched a 'preemptive strike' declaratory judgment action in the face of an impending . . . suit." *Nike,* 285 F. Supp. 2d at 67; *accord Thayer/Patricof Educ. Funding, L.L.C. v. Pryor Res., Inc.*, 196 F. Supp. 2d 21, 30 (D.D.C. 2002). Additional considerations may include whether "the first action was filed in the midst of good faith settlement discussions[; whether] the two suits were filed closely together in time[; whether the cases have] progressed very far," *Nike*, 285 F. Supp. 2d at 67-68; and whether "full, fair, and complete adjudication of all issues may be had before [the present] court," *Lewis*, 813 F. Supp. at 5.

### 2. The Court Denies the Defendant's Motion to Dismiss

The defendant requests that the court dismiss this action under the first-to-file rule. Def.'s Mot. at 9. It argues that, because it filed the Ohio action prior to the D.C. action, and because the Ohio action "seeks a ruling on the underlying contractual obligations" that the D.C. action "assumes," the court should dismiss the case based on the inequity of trying this action prior to a determination of those obligations. *Id.* at 10. The plaintiffs counter that, because the Ohio action "is a declaratory judgment action filed in anticipation of litigation by the other party," the court should deny the defendant's motion to dismiss. Pls.' Opp'n at 5-7.

Although the defendant did file its action first, the court must consider whether the equities support applying the first-to-file rule. *Nike*, 285 F. Supp. 2d at 67-68 (stating a court should consider whether the equities justify an exception to the application of the first-to-file rule). Turning first to the preemptive strike question, the court notes that the defendant filed its declaratory judgment action in Ohio on June 8, 2007, nine days after receiving the letter demanding payment from the plaintiffs. Def.'s Mot. at 7. In the letter, the plaintiffs informed the defendant that it had ten days "to pay or dispute the audit findings" and that, if the parties

4

reached no resolution, the plaintiffs would file a collection action in the United States District Court for the District of Columbia. Pls.' Opp'n at 4. So, instead of paying the damages or disputing the Fund's calculations, the defendant filed the Ohio action with full knowledge of the plaintiffs' intention to file suit, specifically in the United States District Court for the District of Columbia, if the defendant did not respond within ten days. Therefore, the court concludes that the defendant filed its declaratory judgment action as a preemptive strike in anticipation of the plaintiffs' action. *See Chi. Ins. Co. v. Holzer*, 2000 WL 777907, at *3 (S.D.N.Y. June 16, 2000) (concluding that a suit was preemptive when filed following a notice letter and before the expiration of a grace period); *cf. J. Lyons & Co. Ltd. v. Republic of Tea, Inc.*, 892 F. Supp. 486, 491 (S.D.N.Y. 1995) (reasoning that a suit was not anticipatory because letters provided no notice of litigation).

The defendant correctly asserts that a preemptive filing is not dispositive, s*ee Elecs. for Imaging, Inc. v. Coyle*, 394 F.2d 1341, 1348 (Fed. Cir. 2005), but other equitable considerations weigh in favor of the plaintiffs' position. For example, both actions are at their earliest stages, with motions to dismiss or transfer pending before each court. Pls.' Opp'n at 4; *see Nike*, 285 F. Supp. 2d at 68 (refusing to dismiss secondary action because first-filed action was "in its earliest stages"). Also, the defendant's contention that it is unable to fully try its case before this court is unconvincing. Def.'s Reply at 9. The defendant can obviously challenge the plaintiffs' audit findings in this court. *See Bd. of Trs. of Hotel and Rest. Employees Local 25 v. JPR, Inc.*, 146 F.3d 794, 797 (D.C. Cir. 1998) (noting that the defendant challenged the plaintiff's collection action by asserting the audit findings were incorrect). Moreover, "[n]othing prevents [the defendant] from attempting to join [the local unions] in [this] action through the use of Federal Rules of Civil Procedure 19 and 20." *British Telecomm. PLC v. McDonnell Douglas Corp.*,

5

1993 WL 149860, at *4 (N.D. Cal. May 3, 1993).  In fact, the plaintiffs state that they "are prepared to present affidavits from each of the[] labor unions stating that the District of Columbia would be the more efficient and convenient forum for them."  Pls.' Opp'n at 15.  The defendant disputes the meaningfulness of this assertion, Def.'s Reply at 10-11, but the court can consider the plaintiffs' statement in weighing the equities, *see Thayer*, 196 F. Supp. 2d at 32 (recognizing the importance of a statement from the plaintiff that a third party witness willingly volunteered to participate in the inconvenient forum).  Because the equitable considerations do not justify dismissal under the first-to-file rule, the court denies the defendant's motion.

### B.  The Defendant's Motion to Transfer

### 1.  Legal Standard for a Motion to Transfer Venue in an ERISA Case

A district court may transfer venue "[f]or the convenience of the parties and witnesses, in the interests of justice."  28 U.S.C. § 1404(a).  A strong presumption exists, however, in favor of the plaintiff's choice of forum.  *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981).  The moving party can overcome this presumption only by demonstrating that private and public factors clearly favor a trial in an alternative forum.

In an ERISA case, a defendant seeking a transfer of venue has the additional burden of surmounting ERISA's special venue provision.  29 U.S.C. § 1132(e)(2); *Flynn v. Daly & Zilch Mason Contractors, Inc.*, No. 00-3027, slip op. at 1-2 (D.D.C. June 6, 2001).  This provision states that:

> [W]here an action under this subchapter is brought in a district court of the United States, it may be brought in the district court where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found.

29 U.S.C. § 1132(e)(2). By allowing the action to occur in the district where the plan is administered, the special venue provision makes collection efforts efficient, economical and inexpensive for ERISA Funds. *Int'l Bhd. of Painters & Allied Trades Union v. Best Painting & Sandblasting Co.*, 621 F. Supp. 906, 907 (D.D.C. 1985). This result reflects Congress's intent to protect the financial integrity of such funds. *Id.*; *Dugan v. M & W Dozing Trucking, Inc.*, 727 F. Supp. 417, 419 (N.D. Ill. 1989). Accordingly, courts give special weight to the plaintiff's choice of forum in ERISA cases. *Flynn v. Ravare Masonry, Inc.*, No. 01-1236, slip op. at 1-2 (D.D.C. Jan. 3, 2002); *Joyce v. E. Concrete Paving Co.*, 1996 WL 762323, at *1 (D.D.C. Sept. 5, 1996).

"Because of the special weight ERISA accords a plaintiff's choice of forum, the court need not engage in a lengthy analysis to determine that transfer is not warranted." *Flynn v. Veazey Const. Corp.*, 310 F. Supp. 2d 186, 193 (D.D.C. 2004). "[T]he defendant must convince the court that . . . the plaintiff's choice of forum is outweighed by either (1) the convenience of the parties, (2) the convenience of the witnesses, or (3) the interest of justice." *Int'l Painters & Allied Trades Ind. Pension Fund v. Tri-State Interiors, Inc.*, 357 F. Supp. 2d 54, 56 (D.D.C. 2004); *accord Veazey Const. Corp.*, 310 F. Supp. 2d at 193-94.

### 2. The Court Denies the Defendant's Motion to Transfer

The defendant first argues that the Southern District of Ohio is a more convenient forum because the defendant has its headquarters and principal place of business in Plain City, Ohio. Def.'s Mot. at 1. In addition, the defendant's employees are in Ohio, and it alleges that any breach would have occurred there. *Id.* at 10-11. Convenience for the defendant, therefore, clearly favors the Southern District of Ohio. *Bd. of Trs., Sheet Metal Workers Nat'l Fund v. Baylor Heating & Air Conditioning, Inc.*, 702 F. Supp. 1253, 1257 (E.D. Va. 1988) (noting that convenience favored the defendant's proposed forum because the locus of the defendant's

7

business and employees as well as the important events occurred in that forum). The plaintiffs, on the other hand, are located in Washington, D.C. where they administer the Fund. Am. Compl. ¶¶ 5-6. Thus, "transferring the action . . . would merely 'shift the balance of inconvenience from Defendant to Plaintiff.'" *Tri-State Interiors, Inc.*, 357 F. Supp. 2d at 57 (quoting *Trs. of the Hotel Employees & Rest. Employees Int'l Union Welfare Pension Fund v. Amivest Corp.*, 733 F. Supp. 1180, 1183 (N.D. Ill. 1990)).

The defendant maintains that the court must also consider the local unions that were parties to the independent form agreements and play an integral role in the plaintiffs' delinquent contribution claims. Def.'s Mot. at 14. The defendant argues that because it and the unions made the agreements in Ohio, Ohio is "materially more convenient." *Id.* The plaintiffs, on the other hand, assert that those unions are willing to submit affidavits stating their preference for the District of Columbia forum. Pls.' Opp'n at 15. Located in New York, New Jersey and Nevada, neither the Southern District of Ohio nor the District of Columbia is a particularly convenient forum for any of the unions. Because the record fails to show that the local unions would not submit to this forum, this factor does not weigh in the defendant's favor. *See Thayer*, 196 F. Supp. 2d at 32 (relying on the plaintiff's claim that a third-party witness agreed to testify voluntarily in the inconvenient forum in denying transfer).

Next, the defendant argues that the District of Columbia is an inconvenient forum for its "primary witnesses, Jeffrey and David Asman, as well as any other necessary Company witnesses [who] all reside in the Southern District of Ohio." Def.'s Mot. at 13. But, the plaintiffs assert the same inconvenience, noting that its principal witness, Meyers, "would be greatly inconvenienced if required to testify in Ohio." Pls.' Opp'n at 17. Thus, again,

8

transferring the case to the Southern District of Ohio would only shift the inconvenience from one party to the other. *Tri-State Interiors, Inc.*, 357 F. Supp. 2d at 57.

      The defendant also points to the location of the evidence as a factor weighing in its favor. Def.'s Mot. at 13. It contends that all of the relevant documentation, including the disputed independent form agreements, is in Ohio. *Id.* Traditionally, the "ease of access to sources of proof" is an important factor in determining whether to transfer a case. *Armco Steel Co., L.P. v. CSX Corp.*, 790 F. Supp. 311, 323 (D.D.C. 1991) (quoting *Sec. & Exch. Comm'n v. Page Airways, Inc.*, 464 F. Supp. 461, 463 (D.D.C. 1978)). But, the defendant already submitted many of the important documents in this case, such as the "time records, personnel files, and other documents reflecting the identity of potential beneficiaries and the amount of time they worked (necessary evidence in an action for delinquent contributions)," Def.'s Mot. at 13, to the Fund's offices in D.C. so that the Fund could complete its audit, Pls.' Opp'n at 17. Thus, the location of evidence in this case does not necessarily justify transfer. *See Tri-State Interiors, Inc.*, 357 F. Supp. 2d at 57 (noting that "inconvenience is lessened" when "much of the evidence pertinent to th[e] matter takes the form of time cards, bank accounts, and other documents" which "either party can easily bring to the district court . . . that are not there already" (citing *Hanley v. Omarc*, 6 F. Supp. 2d 770, 775 (N.D. Ill. 1998))). Furthermore, the plaintiffs assert that "the underlying facts regarding the delinquency . . . will be documented through a substantial volume of Fund records . . . located in the District of Columbia." Pls.' Opp'n at 17. Because the inconvenience is once again offsetting, the location of the evidence does not favor transfer. *Tri-State Interiors, Inc.*, 357 F. Supp. 2d at 57.

      Finally, the defendant contends that the interests of justice weigh in its favor. First, the court considers the congestion of its own docket. *Starnes v. McGuire*, 512 F.2d 918, 932 (D.C.

Cir. 1974) (noting that docket congestion is a factor to consider in transfer analysis). But, the defendant offers no evidence that this court's docket cannot accommodate this case. Also, the defendant's argument that "[t]he Southern District of Ohio has an interest in deciding this controversy" fails to counter the argument that the District of Columbia has a similar interest due to the plaintiffs' presence in the District. Def.'s Mot. at 16; *see Flynn v. Thibodeaux Masonry, Inc.*, 2002 WL 315203564, at *2 (D.D.C. Oct. 28, 2002) (emphasizing that the District of Columbia is "a more suitable forum" because "the funds are administered in the District of Columbia"). Furthermore, this court has recognized that "[i]f allegedly delinquent pension fund contributors . . . were regularly granted venue transfers, pension funds . . . would be forced to incur enormous, if not prohibitively high, expenses to collect unpaid monies – a situation Congress explicitly sought to prevent when it enacted ERISA's special venue provisions." *Tri-State Interiors, Inc.*, 357 F. Supp. 2d at 57-58; *see also Baylor Heating & Air Conditioning, Inc.*, 702 F. Supp. at 1356. Moreover, "the interest of justice suggests that this matter remain in the District of Columbia because subjecting pension funds to uniform interpretation of the complex ERISA laws is vital to the efficient administration of such funds." *Tri-State Interiors, Inc.*, 357 F. Supp. 2d at 58; *see also Baylor Heating & Air Conditioning, Inc.*, 702 F. Supp. at 1261. Therefore, the interests of justice do not weigh in the defendant's favor. Given the totality of the circumstances, the defendant fails to overcome the special deference given ERISA plaintiffs' choice of forum, and the court denies the defendant's motion for transfer.

### C. The Defendant's Motion for a Stay

### 1. Legal Standard

A trial court has broad discretion to stay all proceedings in an action pending the resolution of independent proceedings elsewhere. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254

(1936). "The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Airline Pilots Ass'n v. Miller*, 523 U.S. 866, 879 n.6 (1998) (quoting *Landis*, 299 U.S. at 254-55). Indeed, "[a] trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Levya v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979).

### 2. The Court Grants the Defendant's Motion to Stay

The defendant argues that the court should stay this proceeding until the Ohio court determines whether a contractual obligation exists. Def.'s Mot. at 18. The defendant contends that "[a] stay will conserve judicial resources" because "[i]f . . . the Ohio court ultimately finds contractual liability, then a stay will allow this Court to rule upon and oversee the collection component of this dispute," but, "if the Ohio Court ultimately finds no contractual liability, then this action would be moot and a stay would have prevented the Court and the litigants from wasting their time in the interim." *Id.* The plaintiffs counter that "a stay would only serve to postpone . . . an inevitable resolution of this case." Pls.' Opp'n at 19.

The underlying contractual obligations are the bases for the defendant's suit in Ohio, and as the defendant correctly notes, the plaintiffs can only collect delinquent contributions under 29 U.S.C. § 1145 if the employer "is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement." 29 U.S.C. § 1145. Therefore, the Ohio court's decision is a necessary prerequisite to determine whether the plaintiffs in this case can collect contributions from the defendant. *See Tri-State Interiors, Inc.*, 702 F. Supp. at 1261 (holding that the court would "be bound by the [independent court's]

determination on the [contractual obligations] issue"); *Lewis*, 813 F. Supp. at 6 (stating that "collateral estoppel applies to [a party] regardless of the forum").  This is especially important because it is possible that the defendant may not be able to argue that it did not have a contractual obligation to make contributions in this action.  *See Best Painting*, 621 F. Supp. at 907 (stating that pension funds are not always subject to the same breach of contract and obligation defenses that may be utilized against a union) (collecting cases).  Therefore, the court grants the defendant's motion to stay these proceedings so that the District Court for the Southern District of Ohio can first determine the defendant's contractual obligations.

### IV.  CONCLUSION

For the foregoing reasons, the court denies the defendant's motions to dismiss and transfer, but grants the defendant's motion to stay the proceedings.  An order consistent with Memorandum Opinion is separately and contemporaneously issued this 5th day of August, 2008.

                RICARDO M. URBINA
                United States District Judge